# EXHIBIT A

Electronically FILED by Superior Court of California, County of Riverside on 03/25/2022 05:44 PM
Case Number CVPS2201196 0000016163761 - W. Samuel Hamrick Jr., Executive Officer/Clerk of the Court By Cynthia Chagoya, Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):* COACHILLIN HOLDINGS, LLC, a California Limited Liability Company; COACHILLIN ENERGY COMPANY, LLC, a California Limited Liability Company; ECOMASTER CORPORATION, a California Corporation; INDIAN CANYON & 18th PROPERTY OWNERS ASSOCIATION, a California nonprofit mutual benefit corporation; KENNETH DICKERSON, an Individual; WILLIAM MORELAND, an Individual; KATHERINE BENETEAU (a/k/a KATHERINE DICKERSON), an Individual; MICHAEL DICKERSON, an Individual; KIRSTEN DICKERSON, an Individual; RICKY McCORMIES, an Individual; and DOES 1 through 50, inclusive.<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>HAPPY HOURS, LLC, a California Limited Liability Company; DHS LOT 11 HOLDINGS, LLC, a Delaware Limited Liability Company; and MOON LEV INVESTMENTS, LLC, a California Limited Liability Company; | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br><br><br>GC68150(g) |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

   *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Palm Springs Courthouse<br>3255 E Tahquitz Canyon Way<br>Palm Springs, CA 92262 | CASE NUMBER: *(Número del Caso)*:<br>CVPS2201196 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Brad A. Hakala, Esq., The Hakala Law Group, P.C., One World Trade Center, Suite 1870, Long Beach, CA 90831, (562) 432-5023

| DATE:<br>*(Fecha)*   03/25/2022 | Clerk, by<br>*(Secretario)*   Cynthia M. Chagoya | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*  Coachillin Holdings, LLC, a California Limited Liability Company

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):*  LLC
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

Electronically FILED by Superior Court of California, County of Riverside on 03/25/2022 05:44 PM
Case Number CVPS2201196 0000016163758 - W. Samuel Hamrick Jr., Executive Officer/Clerk of the Court By Cynthia Chagoya, Clerk

THE HAKALA LAW GROUP, P.C.
Brad A. Hakala, CA Bar No. 236709
Ryan N. Ostrowski, CA Bar No. 305293
One World Trade Center, Suite 1870
Long Beach, California 90831
Telephone:    562.432.5023
Facsimile:    562.786.8606
Email:    bhakala@hakala-law.com
          rostrowski@hakala-law.com

Attorneys for Plaintiffs – Happy Hours, LLC, a California Limited Liability Company, DHS Lot 11 Holdings, LLC, a Delaware Limited Liability Company, and Moon Lev Investments, LLC, a California Limited Liability Company

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE – PALM SPRINGS BRANCH

| | |
|---|---|
| HAPPY HOURS, LLC, a California Limited Liability Company; DHS LOT 11 HOLDINGS, LLC, a Delaware Limited Liability Company; and MOON LEV INVESTMENTS, LLC, a California Limited Liability Company; <br><br> Plaintiffs, <br><br> v. <br><br> COACHILLIN HOLDINGS, LLC, a California Limited Liability Company; COACHILLIN ENERGY COMPANY, LLC, a California Limited Liability Company; ECOMASTER CORPORATION, a California Corporation; INDIAN CANYON & 18th PROPERTY OWNERS ASSOCIATION, a California nonprofit mutual benefit corporation; KENNETH DICKERSON, an Individual; WILLIAM MORELAND, an Individual; KATHERINE BENETEAU (a/k/a KATHERINE DICKERSON), an Individual, MICHAEL DICKERSON, an Individual; KIRSTEN DICKERSON, an Individual; RICKY McCORMIES, an Individual; and DOES 1 through 50, inclusive. | Case No.:   CVPS2201196 <br><br> UNLIMITED CIVIL MATTER <br><br> ASSIGNED FOR ALL PURPOSES TO: <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **1.  BREACH OF CONTRACT** <br><br> **2.  BREACH OF CC&RS** <br><br> **3.  BREACH OF FIDUCIARY DUTY** <br><br> **4.  BREACH OF FIDUCIARY DUTY** <br><br> **5.  FRAUD - INTENTIONAL MISREPRESENTATION** <br><br> **6.  NEGLIGENT MISREPRESENTATION** <br><br> **7.  FRAUD – CONCEALMENT** <br><br> **8.  VIOLATION OF RACKETEERING INFLUENCED AND CORRUPTION ORGANIZATION ACT ("RICO") [18 U.S.C. §1961 et seq.]** <br><br> **9.  CONSPIRACY TO VIOLATE RICO** |

1

Defendants.

**10. TRESSPASS**

**11. PRIVATE NUISANCE**

**12. REAL ESTATE SELLER'S NONDISCLOSURE OF MATERIAL FACTS**

**13. DECLARATORY RELIEF**

**14. VIOLATION OF BUS. & PROF. CODE §17200 (UNFAIR COMPETITION)**

**REQUEST FOR JURY TRIAL**

**REQUEST FOR INJUNCTIVE RELIEF**

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD HEREIN:**

Plaintiffs, HAPPY HOURS, LLC (hereinafter referred to as "HAPPY HOURS"), a California Limited Liability Company, DHS LOT 11 HOLDINGS, LLC  (hereinafter referred to as "LOT 11"), a Delaware Limited Liability Company, and MOON LEV INVESTMENTS, LLC (hereinafter referred to as "MOON LEV"), a California Limited Liability Company (HAPPY HOURS, LOT 11, and MOON LEV shall also collectively be referred to, herein, as the "PLAINTIFFS"), each complains against the above named Defendants: COACHILLIN HOLDINGS, LLC, a California Limited Liability Company (hereinafter referred to as "COACHILLIN"), COACHILLIN ENERGY COMPANY, LLC, a California Limited Liability Company (hereinafter referred to as "ENERGY"), ECOMASTER CORPORATION, a California Corporation (hereinafter referred to as "ECOMASTER"), INDIAN CANYON & 18th PROPERTY OWNERS ASSOCIATION, a California nonprofit mutual benefit corporation (hereinafter referred to as the "POA"), KENNETH DICKERSON, an Individual (hereinafter referred to as "KENNETH"), WILLIAM MORELAND, an Individual (hereinafter referred to as "WILLIAM"), KATHERINE BENETEAU (a/k/a KATHERINE DICKERSON), an Individual (hereinafter referred to as "KATHERINE"), MICHAEL DICKERSON, an Individual

2

1   (hereinafter referred to as "MICHAEL"), KIRSTEN DICKERSON, an Individual (hereinafter

2   referred to as "KIRSTEN"), and RICKY McCORMIES, an Individual (hereinafter referred to as

3   "RICKY"), (COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM,

4   KATHERINE, MICHAEL, KIRSTEN, and RICKY shall also each be referred to herein

5   individually as "DEFENDANT" and/or collectively as the "DEFENDANTS"), and all named

6   Defendants for general, compensatory, punitive, and exemplary damages, attorneys' fees, and

7   costs, and injunctive relief, resulting from DEFENDANTS' unlawful and tortious conduct, and

8   as grounds therefore alleges:

9                                   **PARTIES**

10      1.      PLAINTIFF HAPPY HOURS, LLC, is and at all times mentioned herein was, a

11   limited liability company duly organized and existing under the laws of the State of California,

12   with the capacity to sue and to be sued in California, and doing business in California, Riverside

13   County, with a principal place of business located at 18194 Blue Dream Crossing, Desert Hot

14   Springs, California 92240.

15      2.      PLAINTIFF DHS LOT 11 HOLDINGS, LLC, is and at all times mentioned herein

16   was, a limited liability company duly organized and existing under the laws of the State of

17   Delaware and qualified as a foreign entity within the State of California, with the capacity to sue

18   and to be sued in California, and doing business in California, Riverside County, with a principal

19   place of business located at 18268 Blue Dream Crossing, Desert Hot Springs, California 92240.

20      3.      PLAINTIFF MOON LEV INVESTMENTS, LLC, is and at all times mentioned

21   herein was, a limited liability company duly organized and existing under the laws of the State

22   of California, with the capacity to sue and to be sued in California, and doing business in

23   California, Riverside County, with a principal place of business located at 18342 Blue Dream

24   Crossing, Desert Hot Springs, California 92240.

25      4.      PLAINTIFFS are informed and believe and thereon allege that DEFENDANT

26   COACHILLIN HOLDINGS, LLC is, and at all times mentioned herein was, a limited liability

27   company duly organized and existing under the laws of the State of California, with the capacity

28   to sue and to be sued in California, and doing business in California, Riverside County, with a

1  principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California

2  92270.  PLAINTIFFS are informed and believe and thereon allege that Defendant COACHILLIN

3  is, and at all relevant times has participated in the theft of monies from PLAINTIFFS, and in the

4  management and operation of the RICO enterprise alleged herein.

5       5.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT

6  COACHILLIN is, and at all times herein mentioned was, wholly owned by DEFENDANTS

7  KENNETH, WILLIAM, and additional family members of WILLIAM.

8       6.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT

9  COACHILLIN ENERGY COMPANY, LLC is, and at all times mentioned herein was, a limited

10  liability company duly organized and existing under the laws of the State of California, with the

11  capacity to sue and to be sued in California, and doing business in California, Riverside County,

12  with a principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage,

13  California 92270.  PLAINTIFFS are informed and believe and thereon allege that Defendant

14  ENERGY is, and at all relevant times has participated in the theft of monies from PLAINTIFFS,

15  and in the management and operation of the RICO enterprise alleged herein.

16       7.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT

17  ENERGY is, and at all times herein mentioned was, wholly owned by DEFENDANTS

18  KENNETH, WILLIAM, and additional family members of WILLIAM.

19       8.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT

20  ECOMASTER CORPORATION is, and at all times mentioned herein was, a corporation duly

21  organized and existing under the laws of the State of California, with the capacity to sue and to

22  be sued in California, and doing business in California, Riverside County, with a principal place

23  of business located at 71713 Highway 111, Suite 103, Rancho Mirage, California 92270.

24  PLAINTIFFS are informed and believe and thereon allege that Defendant ECOMASTER is, and

25  at all relevant times has participated in the theft of monies from PLAINTIFFS, and in the

26  management and operation of the RICO enterprise alleged herein.

27  ///

28  ///

4

9.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT ECOMASTER is, and at all times herein mentioned was, wholly owned by DEFENDANT KENNETH.

10.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT INDIAN CANYON & 18th PROPERTY OWNERS ASSOCIATION is, and at all times mentioned herein was, a nonprofit mutual benefit corporation duly organized and existing under the laws of the State of California, with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with a principal place of business located at 71713 Highway 111, Suite 104, Rancho Mirage, California 92270.  PLAINTIFFS are informed and believe and thereon allege that Defendant POA, by and through the unlawful conduct of the other individually named DEFENDANTS, as alleged herein, is, and at all relevant times has participated in the theft of monies from PLAINTIFFS, and in the management and operation of the RICO enterprise alleged herein.

11.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT KENNETH DICKERSON is, and at all times mentioned herein was, an individual with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with his principal address located at 78895 Zenith Way, La Quinta, California 92253. PLAINTIFFS are informed and believe and thereon allege that Defendant KENNETH is, and at all relevant times has participated in the theft of monies from PLAINTIFFS, and in the management and operation of the RICO enterprise alleged herein.

12.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT WILLIAM MORELAND is, and at all times mentioned herein was, an individual with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with his principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270.  PLAINTIFFS are informed and believe and thereon allege that Defendant WILLIAM is, and at all relevant times has participated in the theft of monies from PLAINTIFFS, and in the management and operation of the RICO enterprise alleged herein.

///

5

13.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT KATHERINE BENETEAU, (a/k/a KATHERINE DICKERSON) is, and at all times mentioned herein was, an individual with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with her principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270.  PLAINTIFFS are informed and believe and thereon allege that Defendant KATHERINE is, and at all relevant times has participated in the theft of monies from PLAINTIFFS, and in the management and operation of the RICO enterprise alleged herein.

14.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT MICHAEL DICKERSON is, and at all times mentioned herein was, an individual with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with his principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270.  PLAINTIFFS are informed and believe and thereon allege that Defendant MICHAEL is, and at all relevant times has participated in the theft of monies from PLAINTIFFS, and in the management and operation of the RICO enterprise alleged herein.

15.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT KIRSTEN DICKERSON is, and at all times mentioned herein was, an individual with the capacity to sue and to be sued in California, and doing business in California, Riverside County, with her principal place of business located at 71713 Highway 111, Suite 100, Rancho Mirage, California 92270.  PLAINTIFFS are informed and believe and thereon allege that Defendant KIRSTEN is, and at all relevant times has participated in the theft of monies from PLAINTIFFS, and in the management and operation of the RICO enterprise alleged herein.

16.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANT RICKY McCORMIES is, and at all times mentioned herein was, an individual with the capacity to sue and to be sued in California, and doing business in California, Riverside County.

17.     PLAINTIFFS are currently unaware of the true names and capacities, whether corporate, associate, individual, or otherwise, of Defendants sued herein as DOES 1 through 50, Inclusive, and therefore sues said DEFENDANTS, and each of them, by such fictitious names.

COMPLAINT FOR DAMAGES                    Exh. A  Page 14

PLAINTIFF will seek leave of Court to amend this Complaint to assert the true names and capacities of the fictitiously named DEFENDANTS when the same have been ascertained. PLAINTIFFS are informed and believe, and thereon allege, that each Defendant designated as a "DOE" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages, and liabilities hereinafter alleged and caused injuries and damages proximately caused thereby to the PLAINTIFFS, as hereinafter alleged.

18.     PLAINTIFFS are informed and believe and thereon allege, that at all times relevant herein, DEFENDANTS, and each of them, including DOES 1 through 50, inclusive, were an owner, co-owner, agent, representative, partner, joint venture, director, manager, officer, controller, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining DEFENDANT and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner, joint venture, director, manager, officer, controller, and/or alter ego of its co-defendants, and at all times herein mentioned, working in concert with his, her, and/or its co-defendants and was acting with the advance knowledge, permission, consent of, acquiescence, and ratification, in concert with, and in conspiracy with, each and every one of the remaining DEFENDANTS.

19.     PLAINTIFFS are informed and believe and thereon allege that at all relevant times herein, DEFENDANTS were agents of the remaining DEFENDANTS, and in doing the acts and/or failing to act, as alleged herein, the DEFENDANTS were acting within the course of scope of such agency.  DEFENDANTS ratified and/or authorized the wrongful acts of each of the other DEFENDANTS.  DEFENDANTS, and each of them, are individually sued, in part, as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this Complaint.

20.     PLAINTIFFS are informed and believe and thereon allege that at all relevant times herein, DEFENDANTS, and each of them, pursued a conspiracy, common enterprise, and common course of conduct to accomplish the wrongs complained of herein.  The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of within this Complaint was, *inter alia*, to the benefit of the DEFENDANTS personally and their

7

respective family members and all to the significant detriment of the PLAINTIFFS, and each of them, by engaging in illegal, fraudulent, and wrongful activities. The DEFENDANTS, and each of them, are a direct, necessary, and substantial participant in the conspiracy, common enterprise, and common course of conduct complained of herein, and each DEFENDANT was aware, at all relevant times herein, that his/her/its overall contribution to, and furtherance of, the conspiracy, common enterprise, and common course of conduct. The DEFENDANTS, and each of their acts of conspiracy include, *inter alia*, all of the acts that DEFENDANTS are alleged to have committed in furtherance of the wrongful conduct complained of herein.

21. PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS KIRSTEN, KATHERINE, and MICHAEL are related to DEFENDANT KENNETH, and that KIRSTEN, KATHERINE, and MICHAEL are substantially involved with the day to day management, supervision, and administration of DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, and the POA, and that DEFENDANTS KIRSTEN, KATHERINE, and MICHAEL have themselves, and in association with DEFENDANT KENNETH, engaged in self-dealing, conflicts of interest, and agreed upon, acquiesced in, and permitted DEFENDANTS KENNETH, WILLIAM, COACHILLIN, ENERGY, ECOMASTER, and the POA to engage in the unlawful and egregious conduct and criminal enterprise alleged herein unchecked and with rampant abuse. Moreover, DEFENDANTS KENNETH, KIRSTEN, KATHERINE, and MICHAEL have perpetrated this unlawful behavior, in part, by sending threatening and harassing demands, as well as invoices and requests for impermissible payments to PLAINTIFFS, and each of them, that are unlawful, fraudulent, improper, unwarranted, threatening, extorting, and harassing.

22. PLAINTIFFS are informed and believe, and thereon allege that KENNETH, WILLIAM and their respective family members, including KIRSTEN, KATHERINE, and MICHAEL, as well as similarly situated persons and their respective families fully operate, manage, dominate, and/or control COACHILLIN and ENERGY, and their respective affairs, control their respective decisions, and receive monies collected by COACHILLIN and ENERGY through their unlawful and improper assessment of fees, charges, and costs, as is set forth and

COMPLAINT FOR DAMAGES                    Exh. A  Page 16

delineated within this Complaint.   DEFENDANTS KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and each of them, treat COACHILLIN and ENERGY as their own, and completely control and dominate each and every act, omission, and all conduct of both COACHILLIN and ENERGY.   KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL'S control and actions dictating the conduct of both COACHILLIN and ENERGY is in direct contravention of California law and the various agreements and documents identified herein.  Due to KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL'S conduct, both COACHILLIN and ENERGY have each ceased being a separate entity and are each under the exclusive control and guidance of KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL, and both COACHILLIN and ENERGY are being used by such DEFENDANTS as their own bank and means to pay off debts, obligations, and liabilities owed by such DEFENDANTS.  PLAINTIFFS are informed and believe, and thereon allege that such individual DEFENDANTS knowingly, voluntarily, and willingly exchange monies between DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, and the POA, all for their personal benefit and to the detriment of the PLAINTIFFS.

23.     PLAINTIFFS are informed and believe, and thereon allege that KENNETH and his respective family members, including KIRSTEN, KATHERINE, and MICHAEL, as well as similarly situated persons and their respective families fully operate, manage, dominate, and/or control ECOMASTER and its respective affairs, control its respective decisions, and receive monies collected by ECOMASTER through its unlawful and improper assessment of fees, charges, and costs, as is set forth and delineated within this Complaint. DEFENDANTS KENNETH, KIRSTEN, KATHERINE, MICHAEL, and each of them, treat ECOMASTER as their own and completely control and dominate each and every act, omission, and all conduct of ECOMASTER.  KENNETH, KIRSTEN, KATHERINE, and MICHAEL'S control and actions dictating the conduct of ECOMASTER is in direct contravention of California law and the various agreements and documents identified herein.  Due to KENNETH, KIRSTEN, KATHERINE, and MICHAEL'S conduct, ECOMASTER has ceased being a separate entity and is under the exclusive control and guidance of KENNETH, KIRSTEN, KATHERINE, and MICHAEL, and

1   ECOMASTER is being used by such DEFENDANTS as their own bank and means to pay off

2   debts, obligations, and liabilities owed by such DEFENDANTS.  PLAINTIFFS are informed and

3   believe, and thereon allege that such individual DEFENDANTS knowingly, voluntarily, and

4   willingly exchange monies between DEFENDANTS COACHILLIN, ENERGY, ECOMASTER,

5   and the POA, all for their personal benefit and to the detriment of the PLAINTIFFS.

6        24.    PLAINTIFFS are informed and believe, and thereon allege that KENNETH,

7   WILLIAM and their respective family members, including KIRSTEN, KATHERINE, and

8   MICHAEL, as well as similarly situated persons and their respective families fully operate,

9   manage, dominate, and/or control the POA and its respective affairs, control its respective

10  decisions, make unilateral decisions in contravention of the POA's Covenants, Conditions and

11  Restrictions without requisite Board of Directors approval, and receive monies collected by the

12  POA through their unlawful and improper unilateral assessment of fees, charges, and costs, as is

13  set forth and delineated within this Complaint. DEFENDANTS KENNETH, WILLIAM,

14  KIRSTEN, KATHERINE, MICHAEL, and each of them, treat the POA as their own and often

15  attempt completely and arbitrarily control and dominate each and every act, omission, and all

16  conduct of the POA, all without requisite Board involvement and/or approval.  KENNETH,

17  WILLIAM, KIRSTEN, KATHERINE, and MICHAEL'S control and actions dictating the

18  conduct of the POA is in direct contravention of California law and the various agreements and

19  documents identified herein.    KENNETH, WILLIAM, KIRSTEN, KATHERINE, and

20  MICHAEL, by and through their conduct, as alleged within this Complaint, have unilaterally

21  attempted to cause the POA to cease being a separate entity, as is ostensibly under the exclusive

22  control and guidance of KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL as

23  the POA is being used by such DEFENDANTS not only as their own bank and means to pay off

24  debts, obligations, and liabilities owed by such DEFENDANTS, but is being used by KENNETH,

25  WILLIAM, KIRSTEN, KATHERINE, and MICHAEL as a weapon against the PLAINTIFFS to

26  achieve and further the unlawful common enterprise between such DEFENDANTS and their

27  respective entities, as is set forth herein.

28  ///

COMPLAINT FOR DAMAGES          Exh. A  Page 18

25.     PLAINTIFFS are informed and believe, and thereon allege that DEFENDANTS KIRSTEN and KATHERINE are related to KENNETH, that KIRSTEN and KATHERINE are involved with the day to day management, supervision, and administration of the POA acting in the positions of Executive Director and Secretary of the POA, respectively, that KIRSTEN and KATHERINE are involved with the day to day management, supervision, and administration of ECOMASTER, another entity owned by KENNETH, and that KIRSTEN and KATHERINE have engaged in self-dealing, conflicts of interest, and agreed upon, acquiesced in and permitted KENNETH, COACHILLIN, ECOMASTER, and ENERGY to engage in the conduct alleged herein unchecked and with rampant abuse.   Further, KIRSTEN and KATHERINE have perpetuated this fraudulent, unlawful, and improper behavior by sending invoices, demands, and requests for payment to PLAINTIFFS that are unlawful, fraudulent, improper, harassing, and unwarranted, and further threatening PLAINTIFFS with foreclosure for non-payment. Additionally, KIRSTEN and KATHERINE have permitted COACHILLIN, ENERGY, ECOMASTER and KENNETH to engage in this conduct and have shirked their duties and obligations owed to the POA and its members, including PLAINTIFFS, all to their detriment.

26.     PLAINTIFFS are informed and believe, and thereupon allege, that PLAINTIFFS' damages are actually and proximately caused by the DEFENDANTS, and each of them, jointly and severally.

27.     Wherever appearing in this Complaint, each and every reference to defendant, DEFENDANT, Defendants, DEFENDANTS and any of them, is intended to be and shall be a reference to all DEFENDANTS hereto, and to each of them, named and unnamed, including all fictitiously named DEFENDANTS, unless said reference is otherwise specifically qualified.

28.     Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each DEFENDANT acting individually, jointly, and severally.

///

///

///

COMPLAINT FOR DAMAGES                    Exh. A   Page 19

**ALTER EGO ALLEGATIONS**

29.     PLAINTIFFS are informed and believe Defendants KENNETH, WILLIAM, KATHERINE, KIRSTEN, and MICHAEL, and Defendant DOES 1 through 50, inclusive, (hereinafter collectively referred to as "Defendant Members") are, and at all times herein mentioned were, members and/or holders of ownership units or shares of stock of various business entities, including without limitation, COACHILLIN, ECOMASTER, and ENERGY (hereinafter referred to as "Defendant Companies") and/or promoters of Defendant Companies, and/or subscribers to units and/or shares therein.  Such Defendant Companies were and are mere sham and shell entities incorporated, organized, and operated as the complete and total alter ego of the Defendant Members, for their personal benefit and advantage in that the Defendant Members have, at all times herein mentioned, exercised total dominion and control over the Defendant Companies.  There exists, and at all times herein mentioned existed, a unity of interest between Defendant Members and Defendant Companies such that any individuality and separateness between Defendant Members and Defendant Companies either never existed or has ceased, and the Defendant Companies are the alter ego of one another as well as the Defendant Members as follows:

(a) PLAINTIFFS are informed and believe and thereon allege that Defendant Companies are, and at all times herein mentioned were, a mere shell and sham without sufficient capital, assets, shares, shareholders, units, members, and/or unitholders.  Said Defendant Companies were conceived, intended, and used by Defendant Members as a device to avoid individual liability and for the purpose of substituting financially insolvent business entities in the place of the Defendant Members.  PLAINTIFFS are informed and believe and thereon allege that at no time after the Defendant Companies became incorporated and/or organized were any shares of stock and/or ownership units authorized to be issued or issued nor has any permit for issuance of any shares of stock and/or ownership units been applied for with any appropriate governmental agencies.

///

COMPLAINT FOR DAMAGES          Exh. A  Page 20

(b) PLAINTIFFS are informed and believe and thereon allege that Defendant Companies are, and at all times herein mentioned were, so inadequately capitalized that, compared with the business to be done by any of the Defendant Companies and the risks of loss attendant thereto, the Defendant Companies' capitalization was illusory or trifling.

(c) PLAINTIFFS are informed and believe and thereon allege that Defendant Companies are, and at all times herein mentioned were, the alter ego of each other as well as the Defendant Members and the POA and there exists, and at all times herein mentioned existed, a unity of ownership between DEFENDANTS such that any separateness has ceased to exist in that the Defendant Members and the POA has used assets of the Defendant Companies and the POA for their personal use, caused assets of the Defendant Companies and the POA to be transferred to each other as well as themselves without adequate consideration, and withdrew funds from the Defendant Companies' and the POA's bank accounts for their personal use.

(d) PLAINTIFFS are informed and believe and thereon allege that the Defendant Companies are, and at all times mentioned herein were a mere shell, instrumentality, and conduit through which the Defendant Members carried on their business in the name of the Defendant Companies as they conducted it previous to the incorporation and/or organization of the Defendant Companies, exercising complete control and dominance of such entities to such an extent that any individuality or separateness of the Defendant Companies and the Defendant Members does not now, and at any time herein mentioned did not, exist.

(e) PLAINTIFFS are informed and believe and thereon allege that the Defendant Companies are, and at all times herein mentioned were managed, controlled, dominated, and operated by the Defendant Managers as their individual businesses and alter ego, in that the activities and business of the Defendant Companies were carried out without the holding of any Board, Shareholder, Manager, or Member meetings, no records or minutes of any company proceedings were maintained, and

13

_____

COMPLAINT FOR DAMAGES          Exh. A  Page 21

the Defendant Members entered into personal transactions with the Defendant Companies and the POA without the approval of other Board Members, Shareholders, Managers, Members, or Unitholders.

(f) PLAINTIFFS are informed and believe and thereon allege that adherence to the fiction of separate existence of the Defendant Companies as an entity or entities distinct from the Defendant Managers would permit abuse of the business entity privilege and would sanction fraud and promote injustice in that the Defendant Managers caused funds to be withdrawn from the Defendant Companies and/or the POA, and distributed said funds without any consideration to the Defendant Companies and/or the POA all for their personal benefit as well as the purpose of avoiding and preventing attachment and execution by creditors, including the PLAINTIFFS, thereby rendering the Defendant Companies insolvent and unable to adequately meet its obligations.

(g) PLAINTIFFS are informed and believe and thereon allege that, at all times relevant hereto, the Defendant Members, the Defendant Companies, and the POA, by and through the individual DEFENDANTS, improperly acted for each other, in place of each other, and in connection with the conduct hereinafter alleged, and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the others.

30.     As a result, PLAINTIFFS are further informed and believe and thereon allege that the Defendant Companies and the POA were, are, and continue to be the alter ego of the Defendant Members and that an injustice will result if the sham entities of the Defendant Companies and the POA are not disregarded, and the Defendant Members held personally liable for the indebtedness and obligations of the Defendant Companies.

///

///

///

**JURISDICTION AND VENUE**

31.     Jurisdiction is proper in the Superior Court of the State of California for the County of Riverside pursuant to *California Code of Civil Procedure* §410.10.

32.     This Court has jurisdiction over this action in that PLAINTIFFS were injured in this Court's jurisdiction and at all times have remained injured in Riverside County, California due to each of the DEFENDANTS' actions, as are set forth herein.

33.     This Court has jurisdiction over the DEFENDANTS in this action because DEFENDANTS injured the PLAINTIFFS in Riverside County, California to cause this Court to have jurisdiction over their actions in this County.

34.     This Court has jurisdiction over this action in that this action arises out of or relates to actions being engaged in by the DEFENDANTS, which include but are not limited to an unlawful conspiracy between the DEFENDANTS in which all DEFENDANTS are jointly and severally liable to the PLAINTIFFS.  PLAINTIFFS are informed and believe and thereon allege that said conspiracy: (i) was formulated in California, County of Riverside; (ii) intentionally targeted validly existing business entities in the State of California, County of Riverside; (iii) was conducted and furthered by the DEFENDANTS, in part, in the State of California, County of Riverside, as well as within other States within the United States of America; and (iv) as delineated herein, resulted in the monies and/or other assets of the PLAINTIFFS, and each of them, being unlawfully converted and/or used by the DEFENDANTS, and each of them, for their own significant personal benefit as well as to the benefit of their respective family members, in the State of California, County of Riverside.  As such, some of the unlawful actions and/or inactions taken by the DEFENDANTS, as delineated within this Complaint, were conducted within the State of California, County of Riverside.

35.     Venue is proper in this Court in accordance with California Code of Civil Procedure, §395(a) because the injuries and damages at issue in this Complaint occurred in Riverside County, California.

///

///

COMPLAINT FOR DAMAGES                    Exh. A  Page 23

**GENERAL ALLEGATIONS**

36.     PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 35, inclusive, as if the same were fully set forth herein.

37.     PLAINTIFFS are informed and believe and thereon allege that in or about 2004, KENNETH formed Palm Desert Masterbuilders, Inc., a California Corporation, whose name, on or about May 18, 2012, was later amended by KENNETH and KIRSTEN with the California Secretary of State to be Ecomaster Corporation, a DEFENDANT in this present matter.  As is set forth above, PLAINTIFFS are informed and believe and thereon allege that ECOMASTER was formed by KENNETH, and at all times relevant herein operated by KENNETH and his respective family members, including without limitation, his wife KIRSTEN, and his children, KATHERINE and MICHAEL, all for their personal benefit.  According to ECOMASTER'S website, KENNETH is "*the Class A General Engineering Contractor License Responsible Managing Officer (RMO)*" of ECOMASTER.

38.     PLAINTIFFS are informed and believe and thereon allege that in or about February 2016, KENNETH and WILLIAM discovered approximately 153 acres of vacant land located at East N. Indian Canyon, in the City of Desert Hot Springs, Riverside County, California, that would eventually become the Coachillin Industrial and Business Park Development (the "Development").

39.     PLAINTIFFS are informed and believe and thereon allege that in or about March 2016, KENNETH and WILLIAM attempted to purchase the land to use for the Development, all while initially using ECOMASTER as the Purchaser to facilitate such transaction.  PLAINTIFFS are informed and believe and thereon allege that this purchase of land for the Development was consummated by the DEFENDANTS shortly thereafter.

40.     PLAINTIFFS are informed and believe and thereon allege that on or about April 4, 2016, DEFENDANTS KENNETH, WILLIAM, and other members of WILLIAM's family organized DEFENDANT COACHILLIN for the purpose of closing on the purchase of the above-referenced land for the Development, and to also act as the master developer of the Development. It is believed by the PLAINTIFFS that promptly following the organization of COACHILLIN,

COMPLAINT FOR DAMAGES                    Exh. A  Page 24

ECOMASTER assigned to COACHILLIN, without consideration, its rights and interests in the land to be used for the Development.

41.     PLAINTIFFS are informed and believe and thereon allege that in or about April 2016, DEFENDANTS KENNETH, WILLIAM, and COACHILLIN entered into an agreement to retain Ms. Paula Turner, a local real estate agent in the Coachella Valley, and her real estate agency, Desert Pacific Properties, to act as its exclusive listing real estate agent, whereby Ms. Turner and/or Desert Pacific Properties was the only real estate agency authorized to represent KENNETH, WILLIAM, and COACHILLIN for the sale of individual parcels of land within the Development.   Ms. Turner and Desert Pacific Properties represents on their website (https://www.desertpacificproperties.com/team/), that "*Since 2015 Desert Pacific Properties, under Paula's leadership, has become a leading source of cannabis real estate with a current inventory of approximately $150 million…*"

42.     In or about 2017, each of the PLAINTIFFS first learned of the Development, which was being planned, developed, and marketed by the DEFENDANTS through their alter ego business entity, COACHILLIN.

43.     PLAINTIFFS are informed and believe and thereon allege that the Development was approved by the City of Desert Hot Springs (the "City") in or about November 2017, as an approximately 153-acre master plan industrial and business park dedicated to the operation of legalized cannabis business.

44.     According to COACHILLIN'S own website, www.coachillin.com (the "Website"), the Development at full buildout was supposed to include "*[M]ore than 3,000,000 sq. ft. of sustainable cannabis cultivation, manufacturing, processing, laboratory testing, and tours/education facilities*."   The Website further states that the Development was supposed to be "*designed to be a center of excellence & innovation, setting a new standard of sustainability for California's budding cannabis industry*."   It was often touted by the DEFENDANTS that the Development was planned to have a restaurant, brewery, dispensary, hotel, private club, bank and cash vault, amphitheater, laboratory, educational center, and on-site cannabis wastewater remediation facility (collectively referred to herein as the "Amenities"), all of which were material

17

inducements for each of the PLAINTIFFS in their decision to purchase their respective parcels of land within the Development, as is set forth herein.  According to COACHILLIN's own Website, and the materials, representations, and other information contained therein, such Amenities were supposed to have already been constructed, completed, and opened prior to the initiation of this instant action.  Despite the foregoing, as of the date of the filing of this Complaint, the Development is still under construction and not even close to completion, despite a number of promises to the contrary prior to each of the PLAINTIFFS ever purchasing their property within the Development, including repeated representations by the DEFENDANTS that the Development, the respective Amenities, and the entire infrastructure of the Development (e.g. electricity, sewage, and water) would have been long since completed by now.

45.     In her efforts to sell lots at the Development, brochures on Ms. Turner's website related to COACHILLIN represented to potential clients important information such as: (i) "*Get Your Regulatory Permit by Dec. 2017*;" (ii)  "***Substantially improved parcels include paved roads, electricity, domestic water, cultivation water well, natural gas and sewer facilities***;" (iii) "*Coachillin Brewery Tap Room **Opening Dec. 2019***;" (iv) "*Specific Plan eliminates the need for individual Conditional Use Permits (CUP'S)*;" (v) assertions within a parcel map that Lot 43 within the Development is to be used for an "*Interim Waste Facility*;" and, (vi) that "***Purchase Price includes all utilities to the site***…" (Emphasis added).  Despite all such material representations previously made and still presently being made upon Ms. Turner's website, Ms. Turner has known and continues to be informed by and though having acted in concert with the DEFENDANTS COACHILLIN, KENNETH, and WILLIAM, that such material representations are false and misleading.

46.     PLAINTIFFS are informed and believe and thereon allege that the overall buildout and management of the Development as well as the DEFENDANTS' ability and/or right to do so was and continues to be expressly conditioned upon and subject to various agreements, designs, conditions, orders, and/or plans entered into by the DEFENDANTS and approved and/or adopted by the City as well as other governmental agencies.  Specifically, without limitation, PLAINTIFFS

COMPLAINT FOR DAMAGES                    Exh. A  Page 26

are informed and believe and thereon allege that the following agreements, designs, conditions, orders, and/or plans govern the Development and the DEFENDANTS' conduct thereto:

- Conditional Use Permit 17-17, Tentative Parcel Map 37158, including the Conditions of Approval for the Coachillin' Industrial Cultivation & Ancillary Canna-Business Park, prepared by the City of Desert Hot Springs on or about October 17, 2017 (the "Conditions of Approval");

- DHS Project Specific Plan #01-17, Approved by City of Desert Hot Springs through Ordinance No. 642 on or about November 7, 2017, and thereafter adopted by the City Council of Desert Hot Springs on November 21, 2017, subject to the DEFENDANTS' written acceptance, which was executed and acknowledged by KENNETH on November 22, 2017, and thereby added as Chapter 17.200 to Title 17 "Zoning" of the City of Desert Hot Springs Municipal Code (the "Specific Plan");

- Final Parcel Map of the Development, Parcel Map No. 37158, recorded with the Riverside County Recorder on December 22, 2017 as Document No. 2017-0537543 (the "Final Parcel Map");

- The Subdivision Improvement Agreement for Parcel Map No. 37158, recorded with the County of Riverside on January 18, 2018, Document No. 2018-0020292 (the "Development Agreement");

- The Amended and Restated Declaration of Covenants, Conditions and Restrictions – Indian Canyon & 18th Property Owners Association, which was made effective as of July 8, 2019 by COACHILLIN, who referred to itself within said Covenants, Conditions and Restrictions as the "Declarant," and such Covenants, Conditions and Restrictions was recorded with the Riverside County Recorder on December 17, 2019 as Document No. 2019-0520996 (the "CC&R's");

- The Design Requirements and Guidelines, which the "Amended" version was approved by Desert Hot Springs' City Council on July 14, 2020 (the "Design Plan"); and

19

1        -    California Regional Water Quality Control Board ("CRWQCB") Order R7-2020-

2        0029, dated November 12, 2020 (the "CRWQCB Permit").

3        47.     PLAINTIFFS are informed and believe and thereon allege that for the purposes of

4  this Complaint, relevant portions of the Conditions of Approval include, without limitation, the

5  following requirements and obligations imposed upon the DEFENDANTS:

6        -    Paragraph No. 31 on Page 7 specifically states that the DEFENDANTS "***SHALL***

7        ***maintain*** *the Project Site after the start of construction and until the Project is*

8        *completed, free of weeds, debris, trash or any other offensive, unhealthy and*

9        *dangerous material.*" (Emphasis Added).

10      -    Paragraph No. 84 on Page 16 specifically states that the DEFENDANTS "***SHALL***

11      ***annex*** *to Community Facilities District No. 2010-1 for the maintenance of: (a)*

12      *Landscape/Hardscape; (b) Streetlights; (c) Drainage Basins / Storm Drainage*

13      *Facilities...*" (Emphasis Added).

14      -    Paragraph No. 93 on Page 17 specifically states that "***AT NO TIME****, shall any adjacent*

15      *streets for the project be allowed to be used for construction staging, storage, or other*

16      *such construction related activities.  Access by heavy equipment **shall be limited** to the*

17      *minimum number of trips essential to completing the construction.*" (Emphasis

18      Added).

19      -    Paragraph No. 95 on Page 18 specifically states that the DEFENDANTS "***SHALL***

20      ***comply*** *with the National Pollution Discharge Elimination System (NPDES)*

21      *requirements per the California Regional Water Quality Board...*" (Emphasis Added).

22      -    Paragraph No. 98 on Page 18 specifically states that the DEFENDANTS are

23      "***REQUIRED*** *to construct all transition and missing links between existing and*

24      *proposed improvements*" (Emphasis Added).

25      -    Paragraph No. 107 on Page 20 specifically states that "*No nuisance water shall escape*

26      *the site onto public streets*"

27

28

COMPLAINT FOR DAMAGES      Exh. A  Page 28

- Paragraph No. 115 on Page 21 specifically states that the DEFENDANTS "***SHALL enter into*** water and sanitary sewer service agreements with the Mission Springs Water District for domestic water and sanitary sewer service." (Emphasis Added).

- Paragraph No. 137 on Page 24 specifically states that the DEFENDANTS "***SHALL provide and install adequate*** water supply, sanitary sewer, natural gas, electric, telephone, and cable television lines ***to serve each separate lot***." (Emphasis Added).

- Paragraph No. 142 on Page 24-25 specifically states that the DEFENDANTS "***SHALL submit*** an owner-and contractor-signed PM10 Dust Control Implementation Plan in accordance with the standards and codes of the City and the South Coast Air Quality Management District (SCAQMD).." (Emphasis Added).

- On Page 34, under title of "Septic System" it specifically states that "*Sewer service is currently unavailable in this area.  Dry sewers will be required offsite **and onsite**.*"

- Paragraph No. 214 on Page 34 specifically states that "***MSWD requires*** submittal of proposed plumbing plan showing all connections to the septic system(s) and the size and location of the proposed disposal system(s) for the project." (Emphasis Added).

- Paragraph No. 215 on Page 34 specifically states "***All onsite, temporary septic systems*** shall be designed to be easily abated and connected to the dry sewer once the sewer is placed in service.   ***The developer shall be responsible for all abatement and connection costs.***" (Emphasis Added).

- Paragraph No. 217 on Page 35 specifically states that "*Dry sewers will be required to be installed within the project site to serve all lots within the subdivision, conforming to Mission Springs Water District Standards.*"

- Paragraph No. 222 on Page 35 specifically states that the DEFENDANTS "***SHALL complete*** an application for sewer service with payment of all applicable fees, charges and deposits at the time of application (i.e., multi-family, residential, commercial sewer connection fees per current MSWD fee schedules)." (Emphasis Added).

- Paragraph No. 225 on Page 35 specifically states that the DEFENDANTS "***Will be required to bond*** all infrastructure and be required to supply a warranty bond for the

21

1        *infrastructure.   This warranty bond will be released 1 year from the District's*
2        *acceptance of the infrastructure.*" (Emphasis Added).

3             48.      PLAINTIFFS are informed and believe and thereon allege that for the purposes of
4 this Complaint, relevant portions of the Specific Plan include, without limitation, the following
5 requirements and obligations imposed upon the DEFENDANTS:

6        -    Section No. 2 on Page 7 of 131, entitled "<u>Domestic Water and Sewer</u>," which not only
7             sets forth a comprehensive set of requisite developmental standards which needed to
8             be adhered to through the course of constructing the Development but which various
9             permits of the Development are based upon, specifically states, in pertinent part,
10            "*Interim sewer handling will be provided by an engineered septic system approved by*
11            *the Regional Water Quality Control Board (RWQCB) until MSWD [Mission Springs*
12            *Water District] builds their new Sewer Plant 0.25 mile east of the proposed project.*"
13            (sic)

14        -    On Page 43 of 131, in the Section entitled "<u>Sewer</u>," such Section specifically states, in
15             pertinent part that, "*The applicant intends to handle all waste created on site with a*
16             *temporary **onsite** wastewater septic system **located in the Southern portion of the***
17            ***project**.   The septic system will be an "interim use" until such time a MSWD plant is*
18             *constructed the Project shall install a septic system with a nitrogen element removal*
19             *element which has been approved by the California Water Board.*" (*sic*)   (Emphasis
20            Added).

21        -    On Page 82 of 131, in the Section entitled "<u>Sewer</u>," such Section specifically states, in
22             pertinent part that, "*Based upon the information presented above, the handling of the*
23            *Project's sewerage treatment and disposal can be handled as follows: **To construct***
24            ***an ON-SITE packaged wastewater treatment plant (WWTP)** to adequately treat the*
25            *Project sewer flows prior to being disposed of through **on-site** leech lines or seepage*
26            *pits....It should be noted that the temporary facilities will **NEED to be owned and***
27            ***operated by the developer AT THE DEVELOPER'S EXPENSE, including and***
28            ***future transitional facilities required.**" (*sic*) (Emphasis Added).

1    - On Page 103 of 131, in the Section entitled "<u>Financing</u>," such Section specifically

2     states, in pertinent part that, "***The developer will construct all on-site***…*improvements*

3     *including roadway improvements, parks, drainage improvements…*" (Emphasis

4     Added).

5  49.  PLAINTIFFS are informed and believe and thereon allege that for the purposes of

6 this Complaint, relevant portions of the Development Agreement include, without limitation, the

7 following requirements and obligations imposed upon the DEFENDANTS:

8    - On Page 1, Recital "A" specifically states that the DEFENDANTS "***SHALL construct***

9     *the following public improvement ("work") for the above referenced property: streets,*

10     *curbs, gutters, storm drains, <u>sewer</u>, water, walls, landscaping and any improvements*

11     *associated with this development…*" (Emphasis Added).

12    - On Page 1, Paragraph No. 1, entitled "IMPROVEMENTS," specifically states, in

13     pertinent part that, "*For valuable consideration, **DEVELOPER agrees to do, or cause***

14     ***to be done, AT DEVELOPER'S EXPENSE***…*all of the work described herein by the*

15     *date specified….Said work shall be **in strict conformity** with the plans and*

16     *specifications of the work, the standard specifications and drawings for public*

17     *improvements adopted by CITY and this agreement.*" (Emphasis Added).

18    - On Page 3, Paragraph No. 3, entitled "DEVELOPER'S LIABILITY," specifically

19     states, in pertinent part that, "***DEVELOPER shall, at DEVELOPER'S sole cost and***

20     ***expense, be solely and completely responsible for all matters*** *affecting the design,*

21     *prosecution, progress and completion of the work (both on and off the job site).*

22     *DEVELOPER shall be responsible for observing all laws.*" (Emphasis added).

23  50.  PLAINTIFFS are informed and believe and thereon allege that for the purposes of

24 this Complaint, relevant portions of the CC&R's include, without limitation, the following

25 requirements and obligations imposed upon the DEFENDANTS:

26    - On Page 1, Recital E specifically states that "*[T]he Project shall be held, improved*

27     *and conveyed subject to those certain protective covenants, conditions and restrictions*

28     *set forth herein in order to create mutually equitable servitudes upon the Site **in favor***

23

_____

COMPLAINT FOR DAMAGES

*of all* Parcels/Buildings/Businesses located therein, creating reciprocal rights and obligations between the respective Parcel Owners and creating privity of contract and estate between Owners pursuant to the California Commercial and Industrial Common Interest Development Act commencing with California Civil Code section 6500." (Emphasis Added).

- On Page 2 Recital F specifically states that the development of the Project "[S]*hall be subject to this Amended and Restated Declaration of Covenants, Conditions and Restrictions.*"

- On Page 2 Recital G specifically states that "*The Specific Plan ("SP") #01-17, and any amendments thereto, along with this Declaration shall continue to govern the use and development of the Project…*"

- Section 2, entitled "PURPOSE OF COVENANTS, CONDITIONS AND RESTRICTIONS" specifically states, in pertinent part that, "*The purpose of these covenants, conditions and restrictions includes, but is not limited to:*

    *2.1    Encouraging and ensuring the proper development and use of the Project;*

    *2.2    Protecting Declarant and any Parcel Owner of each Parcel against any improper development and use of adjacent and surrounding Parcels:*

    *2.3    Preventing the construction on the Project of structures built of improper design or materials;*

    *2.4    Encouraging the construction of attractive improvements at appropriate locations;…*

    *2.7    Enhancing and protecting the value, desirability, and attractiveness of the entire Project;*

- Within the definition of owner's "**Allocable Share**" of the Common Area Expenses, it states that such share shall be based upon the acreage owned by each lot owner (as the numerator) divided by the total acreage of all parcels (as the denominator).  As indicated in Exhibit D to the CC&R's, the Allocable Share for Parcel 10 was 2.11%, for Parcel 11 was 2.11%, and for Parcel 12 was 2.11%.

24

- Within the definition of "**Common Area Expenses**," it is specifically stated that "*Common Area Expenses, as to each Parcel Owner, **shall NOT include** (A) the costs and expenses incurred by Declarant to construct the Initial Common Infrastructure (provided, however, that the costs of initial construction of the perimeter wall surrounding the Project, cultivation water, chilled and hot water and entrance gates to the Project may be charged and assessed to one or more Parcel Owners)...*" (Emphasis Added).

- Within the definition of "**Initial Common Infrastructure**" it is specifically stated that "*the common infrastructure to serve the Project, as more particularly described on Exhibit B, the Map, Exhibit A-2, and in the SP...In the event of a conflict between the SP and the Map or this Declaration, including, without limitation, the exhibits attached hereto, then the SP shall control, but only to the extent of, and with respect to, that conflict.  As of the date of this Declaration, the Amended Specific Plan has not yet been approved by the City Council.  Notwithstanding anything to the contrary contained in this Declaration, either the Declarant or the Association may, without the consent of any Parcel Owner, execute and record an amendment to this Declaration incorporating the SP into the provisions hereof.*"   Accordingly, pursuant to the language expressly set forth within these CC&R's, COACHILLIN and its ownership, including without limitation, KENNETH and WILLIAM, were definitively required to pay for the cost to build the common infrastructure to serve the Project.   Thus, KENNETH, WILLIAM, COACHILLIN, KATHERINE, KIRSTEN, MICHAEL, and the POA were each required, and continue to be required, to comply with the Specific Plan as it was expressly part of the CC&R's, incorporated by reference therein, and ultimately approved by the City of Desert Hot Springs and codified into the City's Municipal Code.  The failure to comply with the Specific Plan constitutes a violation of the various controlling documents, the CC&R's, and the governmental approvals of the same by the City of Desert Hot Springs and others.

- Section 7.2 specifically states, in pertinent part that, *"[I]f Declarant or any affiliate of Declarant elects to furnish one or more utility service(s) to Parcel Owners, each Parcel Owner will be given the opportunity, **but will NOT be obligated**, to purchase, subscribe, and/or rent the service(s) from such service provider(s)."*  (Emphasis Added)

- Section 7.4 specifically states, in pertinent part, that *"Each Parcel owner shall discharge Domestic Waste Water into the sewage collection system operated and maintained by the Mission Springs Water District, and each Parcel Owner shall be required to collect and discharge Cannabis Cultivation Waste into a private secured collection tank system.  Said Cannabis Waste Water shall then be disposed of in an "off parcel" cannabis disposal collection site."*

- Section 9.4, entitled "SPECIAL ASSESSMENTS" specifically states, in pertinent part, that *"[S]pecial assessments may be levied by the Association at any time pursuant to this Section 9.4...:*

  *9.4.2   Special Assessments may be levied against all Parcel Owners in accordance with their respective Allocable Shares for the purpose of defraying, in whole or in part:...*

  *9.4.2.2   The cost of bringing utilities or infrastructure (**OTHER THAN the Initial Common Infrastructure**) to the Common Areas...NO SUCH **Special Assessment shall be levied** in connection with any original construction of the Initial Common Infrastructure unless said Special Assessment is used for the reconstruction or replacement of any capital improvement included in the Initial Common Infrastructure..."* (Emphasis Added).

- Section 11.1 entitled "DUTIES OF PARCEL OWNER, ASSOCIATION" specifically states, in pertinent part, that the *"Parcel Owner(s) shall not release, generate, use, store, dump, transport, handle, or dispose of any Hazardous Materials within the Project or otherwise permit the presence of any Hazardous Materials on...their respective Parcels...except in accordance with all applicable Law."*

COMPLAINT FOR DAMAGES           Exh. A  Page 34

51.     PLAINTIFFS are informed and believe and thereon allege that for the purposes of this Complaint, relevant portions of the Design Plan include, without limitation, the following requirements and obligations imposed upon the DEFENDANTS:

-     Section 11.3 states, in pertinent part that, "*The sanitary sewer system which the COACHILLIN' INDUSTRIAL CULTIVATION & ANCILLARY CANNA-BUSINESS PARK intends to use is a temporary septic at one location, and the proposed Anaerobic Digestion (AD) System, with future hookups to the new Mission Springs Water District's plant.*"

52.     PLAINTIFFS are informed and believe and thereon allege that for the purposes of this Complaint, relevant portions of the CRWQCB Permit include, without limitation, the following requirements and obligation imposed upon the DEFENDANTS:

-     The cover page of the CRWQCB Permit specifically states the following: (i) the "Discharger" is Coachillin' Holdings LLC; and (ii) the "Facility" is Coachillin' Business Park **ONSITE** Wastewater Treatment and Disposal System.

-     On Page No. 1, Finding No. 1 specifically states, in pertinent part that, "*Coachillin' Holdings LLC (Discharger) **owns and operates** the Coachillin' Business Park **Onsite Wastewater Treatment and Disposal System (Facility)**.*" (Emphasis Added).

-     On Page No. 1, Finding No. 2 specifically states, in pertinent part that, "*The Facility is located at North Indian Canyon Drive, between 18th and 19th Avenues, in Desert Hot Springs, California….The Facility location is shown in Attachment A – Vicinity Map, incorporated herein and made a part of the Order by reference.*"

-     On Page No. 2, Finding No. 7 specifically states, in pertinent part that, "*An **ONSITE** wastewater treatment and disposal (OTWS) system will provide wastewater treatment for domestic wastewater generated at the Park.*" (Emphasis added).

53.     As is previously set forth herein, in or about 2017, each of the PLAINTIFFS first learned of the Development.

54.     PLAINTIFF HAPPY HOURS is the owner and rights holder over the real property within the Development which is commonly known as "Parcel 10." On or about March 19, 2018,

27

PLAINTIFF HAPPY HOURS closed on its purchase of its respective parcel of land within the Development.

55.     HAPPY HOURS is informed and believes and thereon alleges that its members first learned of the Development from Dr. Robert Flannery, whom such individuals had a pre-existing relationship with.  At the time of learning about the Development, said members were already actively seeking to acquire real property within the State of California to conduct legalized cannabis business operations.  Upon learning of the Development, said members began to initially research the Development through various means, including online research of the Development via the Website, which contains various representations as to the supposedly intended robust and all-inclusive nature of the Development.

56.     Upon being impressed with their initial review of the Development and the fact that the Development appeared to be an all-inclusive canna-business-based park, members of HAPPY HOURS then sought to schedule a site tour of the Development and in-person meetings with the DEFENDANTS, all to learn more about the potential acquisition and construction of property within the Development, as well as additional information related to the full scope of the Development and its represented Amenities.

57.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that in furtherance of their desire to learn more about the Development, members of HAPPY HOURS and their consultants were able to conduct an in-person site visit of the Development and attend an in-person meeting with the DEFENDANTS.  Specifically, in or about February 2018, Mr. Clayton Wiedemann, an authorized representative of HAPPY HOURS and Mr. Thomas Krehbiel of Project Management Consulting Services, Inc. ("PMCS"), attended an in-person sales presentation meeting with KENNETH, KATHERINE, and DEFENDANTS' architect, Mr. Paul Anderson, who all presented on behalf of themselves and other DEFENDANTS.  During this initial in-person meeting, DEFENDANTS made several material representations concerning the overall buildout of the Development, construction of the Development's Amenities, infrastructure, and utilities, and the timelines related thereto.  Specifically, KENNETH and KATHERINE expressly represented to Mr. Wiedemann and Mr. Krehbiel during this initial meeting that: (i)

28

COMPLAINT FOR DAMAGES

electrical service for the Development was to be implemented in four (4) phases, with the first phase to include the real property more commonly known as Parcel 10, which was to have electrical service by no later than the end of the first quarter of 2018; (ii) all water infrastructure for the entirety of the Development would be completed within one (1) to two (2) months of the date of said in-person meeting (i.e., by no later than March / April 2018); (iii) the water infrastructure for the entire Development will include a built-in reverse osmosis system to be utilized by each respective parcel for purifying water to be used for the cultivation of cannabis; (iv) the Development will include well-water access, which according to the DEFENDANTS is "bulletproof" so as to ensure that each parcel will have continuous access to an unlimited water source, even in the event of significant drought conditions; (v) hot and cold "BTU's" to be provided to every parcel within the Development; (vi) the Development will feature a restaurant / brewhouse, research facility, dispensary that features parcel owner's products, cannabis-based tourism facility, and a roof-top lounge for smoking; (vii) that the Development will provide for a closed-cell anaerobic digester system, which will collect human waste and which will then be routed back to the Development for use by parcel owners as fertilizer; and (viii) KENNETH also owned a "world-class" greenhouse design and manufacturing company; namely, MgO Systems, that could provide all desired greenhouse construction components to PLAINTIFF HAPPY HOURS.  At the conclusion of this in-person meeting, the DEFENDANTS recommended that Mr. Wiedemann and Mr. Krehbiel engage in weekly telephone calls with the DEFENDANTS so that the DEFENDANTS could provide additional representations and information about the Development to them.

58.     Due to the condition of the vacant land prior to purchasing Parcel 10 within the Development, the members of PLAINTIFF HAPPY HOURS were very concerned about various details associated with the Development and its overall construction.   For example, the members of PLAINTIFF HAPPY HOURS sought specific information and factual representations from the DEFENDANTS about the Development, including, without limitation: (i) the overall ability of the DEFENDANTS to actually develop the Development; (ii) what amount of monies would be needed to complete the Development, and were all DEFENDANTS adequately equipped to

finance such development through finalization; (iii) what approvals would be needed to complete the Development; (iv) what was included in the infrastructure - including sewage, water; and electricity; (v) who would be responsible for paying for the cost of such infrastructure; and (vi) the applicable timeline that the infrastructure would be completed, as well as other related details. All of this information was highly relevant and material to PLAINTIFF HAPPY HOURS in making its determination whether or not to purchase property within the Development and was also further material to the transaction as the price of a semi-improved lot within the Development was significantly higher than the price of other vacant land in the surrounding area.  As such, these concerns caused the members of PLAINTIFF HAPPY HOURS to engage in additional due diligence efforts.

59.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that following the initial meeting between members of PLAINTIFF HAPPY HOURS, PMCS, and the aforementioned DEFENDANTS, HAPPY HOURS engaged in extensive additional due diligence efforts concerning its potential purchase of real property within the Development.  Specifically, PLAINTIFF HAPPY HOURS engaged in significant pre-purchase due diligence efforts, including the retention of a third-party expert, namely PMCS, to review and analyze all aspects of the purchase of the respective property to be acquired by HAPPY HOURS.  Such due diligence efforts commenced in or about February 2018, and continued thereafter until in or about March 2018, when HAPPY HOURS actually chose to close on the purchase of Parcel 10 within the Development.  During said interim time-period, HAPPY HOURS and its consultants requested from the DEFENDANTS all relevant information as to the Development, the parcels for sale within, as well as all agreements, designs, conditions, orders, and/or plans concerning the Development, and the related costs and timelines thereto.  In furtherance of these requests, during this time-period and prior to HAPPY HOURS' close of its purchase of its respective parcel of land within the Development, HAPPY HOURS was provided copies of various relevant documents by and/or on behalf of the DEFENDANTS concerning the Development and the DEFENDANTS' purported buildout of the related infrastructure and the Amenities.  Specifically, the following documents were provided by and/or on behalf of the DEFENDANTS to HAPPY HOURS, and

COMPLAINT FOR DAMAGES                    Exh. A  Page 38

then HAPPY HOURS and its retained consultants were able to engage in the thorough review and analysis of such documents and information in an effort to obtain all material information concerning the Development and HAPPY HOURS' then potential purchase of a parcel therein:

- Title Reports related to parcels of land within the Development;

- Various Development-related advertisements provided by and/or otherwise on behalf of DEFENDANTS, as well as provided by Ms. Turner/Desert Pacific Properties;

- Various agreements, designs, conditions, orders, and/or plans which govern the buildout of the Development and the DEFENDANTS' requisite conduct relating thereto, all which were provided by or on behalf of the DEFENDANTS to support HAPPY HOURS due diligence efforts and requests.  Such documents include, without limitation, the following: (i) the Conditions of Approval; (ii) The Specific Plan; (iii) The Final Parcel Map; (iv) the Development Agreement; (v) the prior Declaration of Covenants, Conditions and Restrictions related to the Development; and (vi) The Project Security Plan;

- The Purchaser Responsibility Breakdown, created and provided by DEFENDANTS, which expressly sets forth all specific financial obligations and responsibilities that HAPPY HOURS would be responsible for in addition to the purchase price of the land in the development and buildout of their parcel of land within the Development;

- Seller Vacant Land Questionnaire, dated August 8, 2016, as well as the PMCS-Requested updated Seller Vacant Land Questionnaire, which was requested by or on behalf of HAPPY HOURS from Ms. Turner, DEFENDANTS' exclusive real estate listing agent, on March 4, 2018, and such updated Seller Vacant Land Questionnaire was subsequently dated March 5, 2018 and executed by DEFENDANT KENNETH on behalf of the DEFENDANTS;

- Various e-mail correspondence between PMCS and the DEFENDANTS concerning HAPPY HOURS' questions regarding the Development, what is to be included, timelines of the Development, what its responsibilities would be, the responsibilities of the DEFENDANTS, the overall intended buildout of the Development, the

31

1        implementation and construction of various utilities and infrastructure relating to the

2        Development, as well as associated timelines of such;

3       -   ECOMASTER'S sales solicitations, as a general contractor, regarding the potential

4        building and construction of the Development and the parcels therein;

5       -   Appraisal Report of COACHILLIN parcel property values, dated December 12, 2017,

6        prepared by Valbridge Property Advisers on behalf of COACHILLIN and KENNETH,

7        Founder and Managing Member (the "Appraisal Report");

8       -   Streambed Alteration Agreement, between California Department of Fish and Wildlife

9        and COACHILLIN, Notification No. 1600-2016-0148-R6 Revision 2, Effective April

10        12, 2017;

11      -   Design Requirements and Guidelines for the Development, Dated August 2017,

12        prepared by A& Architects; and

13      -   Geotechnical Engineering Feasibility Reports, Conducted by Earth Systems Southwest

14        and Southern California Geotechnical, on behalf of COACHILLIN.

15        60.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that

16 pursuant to the above referenced documents, the DEFENDANTS were required to construct,

17 implement, and pay for the installation of infrastructure for the Development, including without

18 limitation, infrastructure relating to electricity, water, and sewer.

19        61.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that on

20 November 21, 2017, the DEFENDANTS provided all land purchasers a specific document entitled

21 "*Coachillin' Industrial Cultivation & Ancillary Canna-Business Park Update*" (the "11/21/2017

22 Update").   While PLAINTIFF HAPPY HOURS was not actively in escrow with the

23 DEFENDANTS at the specific time this update was issued, through HAPPY HOURS' due

24 diligence requests, the 11/21/2017 Update was provided by the DEFENDANTS to PLAINTIFF

25 HAPPY HOURS as one of the latest informational updates within the Development in an effort

26 to induce HAPPY HOURS to purchase property within the Development.  The 11/21/2017 Update

27 specifically states, in pertinent part, that: (i) all of the electrical infrastructure for Parcel 10 will be

28 completed by the first quarter of 2018; (ii) the DEFENDANTS have secured agricultural

32

electricity rates ("ag rates") for parcel owners to utilize, which were represented by DEFENDANTS as far less expensive than typical domestic rates; and (iii) the water and sewer infrastructure of the development will be completed by the DEFENDANTS within sixty (60) days of the date of the 11/21/2017 Update.  As such, the material information set forth within this 11/21/2017 Update appear to comport with those representations made by the DEFENDANTS to the representatives of PLAINTIFF HAPPY HOURS during their initial meeting with KENNETH and KATHERINE.

62.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that in addition to the 11/21/2017 Update, the DEFENDANTS also provided PLAINTIFF HAPPY HOURS with a copy of an update dated January 9, 2018 entitled "Infrastructure Update and Tentative Scheduling Status" (the "1/09/2018 Update").  Pursuant to this 1/09/2018 Update, the DEFENDANTS again expressly represented that the electrical infrastructure for Parcel 10 would be completed by March 2018 (i.e. first Quarter of 2018), and all sewer and water related infrastructure would be fully installed and complete no later than February 2018.  As such, the material information set forth within this 1/09/2018 Update yet again appear to comport with those representations made by the DEFENDANTS to the representatives of PLAINTIFF HAPPY HOURS during their initial meeting with KENNETH and KATHERINE as well as the continual representations within the above-referenced 11/21/2017 Update.

63.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that prior to the purchase of its respective parcel of land within the Development, in addition to the aforementioned due diligence efforts, HAPPY HOURS and its consultants also engaged in a number of telephonic conversations and exchange of e-mail correspondence with the DEFENDANTS in an effort to obtain absolute clarity and further assurances as to the details of the Development, the promises being made by the DEFENDANTS, and the respective obligations of each applicable party.  For example, on February 28, 2018, HAPPY HOURS' consultant sent e-mail correspondence to KATHERINE, in an effort to further confirm the timing aspects related to the buildout of the Development's electrical infrastructure.   Specifically, within such e-mail correspondence, Mr. Krehbiel of PMCS inquired of the DEFENDANTS *"FYI we have a resource*

*that deals with SCE for large solar generation project; some of which have required substation expansion scenarios.  His advice – and I am not trying to be negative - - just passing along his comments based on his experience with SCE – was it could take 18 months or more to get the paperwork and construction completed to expand.  Any comment?*"  In response, on behalf of the DEFENDANTS, KATHERINE expressly stated within her e-mail correspondence the same day back to Mr. Krehbiel "***We disagree, that is only in the case they have to follow CPUC licensing processes, which will be avoided by eliminating all other alternatives, which they have done***."  (Emphasis Added).   Thus, per KATHERINE's correspondence, she again confirmed that electricity would be immediately available to PLAINTIFF HAPPY HOURS following its purchase, should it desire to proceed.

64.    Moreover, PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that on March 4, 2018, prior to the closing of its purchase of Parcel 10 within the Development, PLAINTIFF HAPPY HOURS, through its consultant, Mr. Krehbiel, sent e-mail correspondence to KATHERINE and Ms. Turner, expressly stating: "*While reviewing the Seller related disclosure documents, I noticed the VQL is dated as of 8/8/2016.  While the Seller's responses will be the same today as back in August of last year for the majority of the questions, please coordinate updating the VQL to current project status.  There has been considerable process regarding entitlements, submittals, and site construction since August 2016 that can be included in an updated VQL for the property.  When completed please forward the update to my attention for review.  I will review for the buyer and if acceptable, forward on for the Buyer's initials and signature.*" In response, an updated Vacant Land Questionnaire ("VQL") was prepared and signed by KENNETH on behalf of the DEFENDANTS on March 5, 2018 and thereafter provided to PLAINTIFF HAPPY HOURS pursuant to such request.  Notably, pursuant to the initial VQL provided to PLAINTIFF HAPPY HOURS, dated August 8, 2016, which was also executed by KENNETH on behalf of the DEFENDANTS, the DEFENDANTS expressly assert that a Specific Plan was then being developed which would include governmental requirements affecting the Development, and further stated that infrastructure plans were previously in process.  In the updated VQL provided to PLAINTIFF HAPPY HOURS by the

34

DEFENDANTS, the DEFENDANTS expressly represent that the sewer infrastructure for the development was already installed and all other applicable infrastructure was bonded for by the DEFENDANTS.

65.    Additionally, on March 9, 2018, on behalf of the DEFENDANTS, KATHERINE sent the Appraisal Report to HAPPY HOURS, asserting what the per square foot value of the real property within the Development was approximately one year prior.  Within the Appraisal Report, it is expressly represented that the value of the parcels of land within the Development were elevated compared to neighboring comparable land outside of the Development due, in part, to infrastructure and utilities supposedly already being "*All Available*" and "*All to Site*."

66.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that in or about February 2018, DEFENDANTS provided to PLAINTIFF HAPPY HOURS a Purchaser Responsibility Breakdown, which sets forth PLAINTIFF HAPPY HOURS' total financial responsibilities, other than the purchase price of the parcel, should they desire to proceed in purchasing their respective parcel within the Development.  Specifically, for the purposes of this action, the Purchaser Responsibility Breakdown form, created by the DEFENDANTS and delivered to PLAINTIFF HAPPY HOURS expressly sets forth the requisite financial obligations of HAPPY HOURS as relates to utilities, including without limitation, those relating to "*water, sewer, irrigation, fire riser*."   As to these specific utilities, the DEFENDANTS expressly represented that the absolute additional cost to be borne by PLAINTIFF HAPPY HOURS in conjunction with their purchase of land within the Development was to be $45,000.00. Additionally, the only other financial obligation delineated to HAPPY HOURS in this regard for these specific utilities within the Purchaser Responsibility Breakdown expressly stated that HAPPY HOURS would be responsible for monthly usage bills based upon a usage meter.

67.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that in addition to all of the aforementioned representations made by the DEFENDANTS to HAPPY HOURS and/or its consultants, DEFENDANTS also made the following express representations to HAPPY HOURS prior to HAPPY HOURS' closing of its purchase of Parcel 10 within the Development:

COMPLAINT FOR DAMAGES          Exh. A  Page 43

- That DEFENDANTS had established beneficial relationships with Southern California Edison (the electricity provider) ("SCE"), Mission Springs Water District, the City of Desert Hot Springs, and the Fire Department responsible for overseeing the Development, which would thereby allow the purchasers of parcels within the Development an advantage over others outside of the Development in that they would be able to more easily navigate, streamline, and obtain requisite permits and approvals;

- Infrastructure for the Development was already well underway and would definitively be fully complete and installed well prior to the time that PLAINTIFF HAPPY HOURS would be able to develop land improvements upon their individual parcel;

- The DEFENDANTS had already negotiated and secured lower energy/electricity rates, referred to as "agriculture rates" and/or "ag rates," which would benefit parcel owners by significantly lessening the cost of electricity over that which it would otherwise usually be. More specifically, PLAINTIFF HAPPY HOURS was told by the DEFENDANTS that such savings would amount to an approximate fifty percent (50%) cost reduction when compared to typical domestic power rates; and

- DEFENDANTS acknowledged that the price per square foot of land within the development being charged by the DEFENDANTS was a "premium" when compared to other nearby developments; however, the DEFENDANTS attempted to justify charging such a premium price per square foot by representing that owners of parcels of land within the Development would save substantial sums of monies on electrical rates, costs of infrastructure installation because this was being borne by the DEFENDANTS, and overall operations due to the inclusiveness of the Development and its "one of a kind Amenities," thereby justifying the overall premium price that the DEFENDANTS were seeking.

68.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that at no time during any of PLAINTIFF HAPPY HOURS' efforts to engage in its due diligence review was it ever represented, in any manner whatsoever, to PLAINTIFF HAPPY HOURS by or on behalf of any of the DEFENDANTS that PLAINTIFF HAPPY HOURS would have any

36

responsibility for paying any of the capital expenditures related to the construction, development, and installation of the sewer and/or water infrastructure not located within the boundaries of its own parcel of property within the Development. Rather, to the contrary, pursuant to various written communications, verbal representations, development related documents, agreements between the DEFENDANTS and various governmental agencies, and the like, as set forth within this Complaint, that DEFENDANT COACHILLIN was expressly and solely responsible for the construction, development, installation, and payment for all sewer and water related infrastructure costs of the Development. Thus, based on these numerous material representations by the DEFENDANTS, it was expressly understood and relied upon by PLAINTIFF HAPPY HOURS that should they choose to purchase Parcel 10 within the Development, that HAPPY HOURS would not be required to pay or have any responsibly for payment of any undisclosed monetary amounts related to or for the construction, development, and/or installation of any common infrastructure within the Development, but rather, PLAINTIFF HAPPY HOURS would be financially responsible solely for the costs of the infrastructure specifically located within their own unique property boundaries, as is also exemplified, in part, by the Purchaser Responsibility Breakdown document created by the DEFENDANTS, as applies to Parcel 10.

69. PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that based upon all of the foregoing and in reliance thereto, on or about February 16, 2018, a written *Vacant Land Purchase Agreement and Joint Escrow Instructions* was entered into for the benefit of PLAINTIFF HAPPY HOURS and agreed upon by KENNETH on behalf of DEFENDANT COACHILLIN (the "Parcel 10 PSA"). The Parcel 10 PSA was initially entered into by SRL Investments, LLC and/or its assignee for the purchase of Parcel 17. Prior to the closing of this respective transaction, SRL Investments, LLC and DEFENDANT COACHILLIN agreed to amend the Parcel 10 PSA to thereafter be for the purchase of Parcel 10 by the assignee of SRL Investments, PLAINTIFF HAPPY HOURS. It was expressly understood by the respective parties that all terms and conditions, as well as all representations related thereto, of the Parcel 10 PSA were identical for the purchase of Parcel 10 as they were for the originally intended purchase of Parcel 17.

COMPLAINT FOR DAMAGES          Exh. A  Page 45

70.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that pursuant to the express terms of the Parcel 10 PSA, PLAINTIFF HAPPY HOURS agreed to purchase Parcel 10 of the Development for a total purchase price of One Million Two Hundred Forty Thousand Eight Hundred and Six United States Dollars and 00/100 ($1,240,806.00). Pursuant to the express language of the written Parcel 10 PSA, PLAINTIFF HAPPY HOURS and DEFENDANTS agreed, in pertinent part:

- "*The lot to be purchased by Buyer…shall have electricity, domestic water, sewer, cable, and gas stubbed in to but not on the site, and a paved road from the main entry and rough graded pad…Seller has posted Bonds for both the City of Desert Hot Springs and Mission Springs Water District sufficient to guaranty infrastructure insurity.*"

- Seller is to provide the Buyer with a copy of all requisite Bylaws, CC&R's, & Design Guidelines.

- The purchase of the property was "*subject to commercial covenants, conditions and restrictions, a property owners association, [and] shall contain common areas and shall be further subject to a Specific Plan approved by Desert Hot Springs and all applicable laws, rules, regulations of Desert Hot Springs and other governmental entities having jurisdiction thereof.*"

- The Seller "*strongly encouraged [the Buyer] to examine a Preliminary Title Report and to review Development Agreement, Bylaws, CC&R's, any easements and public right-of-ways that may affect subject property.*"

- Pursuant to Section 9.C. of the Parcel 10 PSA, that no "other costs" not expressly delineated therein would be the responsibility of PLAINTIFF HAPPY HOURS. Notably, within said Section, the Seller did not delineate any additional costs that PLAINTIFF HAPPY HOURS would be responsible for, including without limitation, the payment for any of the Development's common infrastructure capital expenditures.

- "*In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures,*"

38

*information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items.*"  Notably, in light of the foregoing, no such additional written disclosures or notices were ever provided to PLAINTIFF HAPPY HOURS by or on behalf of any of the DEFENDANTS.

- "*Seller shall…DISCLOSE KNOWN MATERIAL FACTS…affecting the Property…and make any and all disclosures required by law.*"  Notably, in light of the foregoing, no such additional disclosures were ever provided to PLAINTIFF HAPPY HOURS by or on behalf of any of the DEFENDANTS.

71.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that the aforementioned representations were consistent with the other representations made to members of PLAINTIFF HAPPY HOURS by DEFENDANTS prior to PLAINTIFF HAPPY HOURS entering into the Lot 10 PSA and closing on the purchase thereto, all as set forth herein.

72.    Presently, HAPPY HOURS is in the process of attempting to finalize all construction efforts on its respective parcel of land and has already commenced its intended business operations upon Lot 10.

73.    PLAINTIFF LOT 11 is informed and believes and thereon alleges that PLAINTIFF LOT 11 is the present owner and title holder over the real property within the Development which is commonly known as "Parcel 11."  PLAINTIFF LOT 11 is the assignee of VBHS Investments LLC, a California Limited Liability Company, who was the initial purchaser of said respective parcel of land within the Development.  PLAINTIFF LOT 11 is informed and believes and thereon alleges that VBHS Investments LLC closed on its purchase of its respective parcel of land within the Development on or about March 13, 2018, as can be evidenced by the Grant Deed which was executed by KENNETH and COACHILLIN on or about February 2, 2018 and thereafter recorded in the Official Records of the County of Riverside on or about March 13, 2018 as Document No. 2018-0093960.

74.    The ownership structure of LOT 11 is substantially similar to that of VBHS Investments LLC and the parties responsible for the management and conducting of business

within VBHS Investments LLC are also substantially similar to that of PLAINTIFF LOT 11. VBHS Investments LLC transferred and assigned all rights, title, and interests affecting the real property within the Development which is commonly known as "Parcel 11" to PLAINTIFF LOT 11 on or about May 2, 2019 as can be evidenced by the Grant Deed which was executed by Mr. Anthony Jacobson on or about February 9, 2021 and thereafter recorded in the Official Records of the County of Riverside on or about March 2, 2021 as Document No. 2021-0134889.

75.     PLAINTIFF LOT 11 is informed and believes and thereon alleges that its respective responsible parties first learned of the Development in or about 2017.  PLAINTIFF LOT 11 is informed and believes and thereon alleges that in or about November 2017, the annual Marijuana Business Conference and Cannabis Expo (hereinafter referred to as "MJBizCon") was held at the Las Vegas Convention Center located in Las Vegas, Nevada, wherein Mr. Paul Jacobson, a representative of VBHS Investments LLC and current representative of PLAINTIFF LOT 11 attended such MJBizCon event, as Mr. Jacobson already owned, managed, and/or was otherwise involved in legalized cannabis-related businesses within the State of California, including those businesses which were seeking to expand their business operations through the potential purchase, acquisition, and/or lease of real property that would provide for the beneficial opportunity of efficiently and quickly obtaining requisite state, city, and local cannabis-related licensing.

76.     PLAINTIFF LOT 11 is informed and believes and thereon alleges that KENNETH attended MJBizCon on behalf of and as the authorized representative of the other DEFENDANTS, all in an effort to "pitch" the Development to third-parties who were attending the event, such as Mr. Jacobson and/or to otherwise solicit potential purchasers of parcels of land within the Development.

77.     PLAINTIFF LOT 11 is informed and believes and thereon alleges that during the MJBizCon event, as is set forth herein, KENNETH personally met with Mr. Jacobson.  This meeting was the first meeting held between KENNETH and Mr. Jacobson concerning the Development.  PLAINTIFF LOT 11 is informed and believes and thereon alleges that during this initial meeting between KENNETH and Mr. Jacobson, KENNETH presented a "pitch" to Mr.

40

Jacobson as well as others at the event concerning the Development, all in an effort to induce Mr. Jacobson to cause one or more of his interested business entities to purchase previously unsold parcels of land within the Development.   Specifically, PLAINTIFF LOT 11 is informed and believes and thereon alleges that during this initial meeting between KENNETH and Mr. Jacobson, KENNETH expressly represented to Mr. Jacobson all of the following:

- KENNETH had extensive experience as a developer of commercial real properties within the Coachella Valley region in Southern California.  As a result of his long-standing history and experience as a developer in Southern California, KENNETH formed a beneficial relationship with the City of Desert Hot Springs that would provide owners of parcels of land within the Development a significantly advantaged opportunity to obtain and "streamline" requisite cannabis-related licenses and permits, all of which would prevent the parcel owners from facing "daunting barriers" that otherwise often affected other cannabis businesses not affiliated with the Development;

- By securing, purchasing, and commencing the build-out the Development, KENNETH boasted that he had "*accomplished something that no one ever had been able to accomplish*," which was establishing a "*master cannabis compound*" that resembled an "*embassy-like compound*."   KENNETH represented that he and the other DEFENDANTS had already obtained various pre-approved environmental clearances and also had the Development approved in a manner to ensure that any individual parcel owners would not have to obtain a Conditional Use Permit ("CUP") for the use of their land in connection with cannabis-related businesses;

- The Development would not only allow for the building of a cannabis-related operation, but it was planned to have additional Amenities constructed therein for the use, benefit, and enjoyment of the parcel owners, including without limitation, a restaurant / brewery, dispensary, hotel, private club, bank and cash vault, laboratory, educational center, and a cannabis wastewater remediation facility;

COMPLAINT FOR DAMAGES                    Exh. A  Page 49

- Purchasers of parcels of land within the Development could utilize temporary "containers" that could be used to commence legalized cannabis operations immediately upon purchase of their respective parcel, so as to ensure immediate licensing and cash flow opportunities;

- DEFENDANTS had procured and installed an overall water system at the Development that was "the best" that anyone would be able to find.  Specifically, that they had access to the largest aquifer in North America that could be utilized by individual parcel owners within the Development.   In furtherance of this representation, KENNETH represented that "*the water is so good and abundant that you could literally bottle it from the tap*" and that the DEFENDANTS intend on bottling and selling it to the public; and

- Electricity would be imminently installed within the Development in accordance with multiple phases, which included Parcel 11 being within the first phase to receive electricity from SCE.

78.     Upon being impressed with the DEFENDANTS initial presentation and related representations of the unique facets of the Development and the fact that the Development was represented to be an all-inclusive canna-business-based park including all of the Amenities, and the fact that owners of parcels within the Development would have their requisite cannabis governmental permits and/or licenses streamlined, the members of LOT 11 then sought to schedule a site tour of the Development and in-person meetings with the DEFENDANTS, all to learn more about the potential acquisition and construction of property within the Development, as well as additional information related to the totality of the Development.

79.     PLAINTIFF LOT 11 is informed and believes and thereon alleges that in or about November 2017, the members of LOT 11 attended an in-person sales presentation and site-tour of the Development with DEFENDANTS KENNETH, KATHERINE, and MICHAEL, who each presented on behalf of themselves and other DEFENDANTS.   During this meeting, DEFENDANTS made several material representations concerning the overall buildout of the Development, construction of the Development's Amenities, infrastructure, utilities, and the

COMPLAINT FOR DAMAGES            Exh. A  Page 50

timelines related thereto.  Specifically, KENNETH, KATHERINE, and MICHAEL expressly represented to the members of LOT 11 that: (i) DEFENDANTS had a wonderful relationship with SCE and that due to this relationship, electricity for Parcel 11 was going to be "*put in very quickly*;" (ii) SCE had a "duty to deliver" power to the Development with all due expediency; (iii) DEFENDANTS had already negotiated and secured "ag rates" to be charged to individual parcel owners for their use of electricity within the Development, all of which would provide each parcel owner with a substantial savings of monies; (iv) COACHILLIN was in the process of constructing and installing all sewer related infrastructure within the Development, all of which would be completed well prior to any date of the construction of Parcel 11; (v) the Development will feature various Amenities, including without limitation, a restaurant / brewhouse, research facility, dispensary that features parcel owner's products, a bank and cash vault, cannabis-based tourism facility, and a roof-top lounge for smoking; (vi) the DEFENDANTS had already secured all necessary and requisite funding to build out the entire infrastructure and Amenities of Development and that such funds were "already in the bank;" (vii) hot and cold "BTU's" would be provided to every parcel within the Development; (viii) the Development will include well-water access, so as to ensure that each parcel will have continuous access to an unlimited water source, even in the event of significant drought conditions; and, (ix) that the Development would feature an onsite cannabis waste-water treatment facility, which no other cannabis development offered to their parcel owners.

80.     Due to the condition of the vacant land prior to purchasing Parcel 11 within the Development, the members of PLAINTIFF LOT 11 were very concerned about various details associated with the Development and its overall construction.  For example, the members of PLAINTIFF LOT 11 sought specific information and factual representations from the DEFENDANTS about the Development, including, without limitation: (i) the overall ability of the DEFENDANTS to actually develop the Development; (ii) what amount of monies would be needed to complete the Development, and were all DEFENDANTS adequately equipped to finance such development through finalization; (iii) what approvals would be needed to complete the Development; (iv) what was included in the infrastructure - including sewage, water; and

electricity; (v) who would be responsible for paying for the cost of such infrastructure; and (vi) the applicable timeline that the infrastructure would be completed, as well as other related details. All of this information was highly relevant and material to the purchaser of Parcel 11 in making its determination whether or not to purchase property within the Development and was also further material to the transaction as the price of a semi-improved lot within the Development was significantly higher than the price of other vacant cannabis zoned land in the surrounding area. As such, these concerns caused the members of PLAINTIFF LOT 11 to engage in additional due diligence efforts.

81.      PLAINTIFF LOT 11 is informed and believes and thereon alleges that on or about December 4, 2017, Mr. Matthew Stoen, a representative of the members of LOT 11, sent e-mail correspondence to DEFENDANTS KENNETH and MICHAEL, in an effort to obtain additional material information concerning the prospective purchase of Parcel 11 within the Development. In said correspondence, Mr. Stoen specifically requested, in pertinent part: (i) that the DEFENDANTS provide the members of LOT 11 with a copy of the DEFENDATS "due diligence package" concerning Parcel 11 within the Development; and (ii) additional information and clarity concerning costs to be assessed to parcel owners by the POA as well as any costs to be borne by the property owners relating to the construction and installation of the infrastructure.   In response, on this same date of December 4, 2017, KENNETH, on behalf of the DEFENDANTS responded via e-mail to Mr. Stoen's above-referenced inquiries and therein expressly represented: (i) that all due diligence documents concerning Parcel 11 within the Development will be provided by Ms. Turner's office, the exclusive listing real estate listing agent for the Development, on behalf of the DEFENDANTS; and (ii) any additional costs to be borne by the purchasers that are in addition to the purchase price can be found within the respective parcel's Purchaser Responsibility Breakdown.

82.      PLAINTIFF LOT 11 is informed and believes and thereon alleges that in accordance with KENNETH'S December 4, 2017 e-mail correspondence, as is set forth above, Ms. Christina Troll from Desert Pacific Properties provided the members of LOT 11 an e-mail containing access to a Dropbox folder, which therein contained all documents pertaining to the

previous due diligence request made.   Specifically, due diligence documents received and reviewed by members of PLAINTIFF LOT 11 include, without limitation:

- Title Reports related to parcels of land within the Development;

- Various Development-related advertisements provided by and/or otherwise on behalf of DEFENDANTS, as well as provided by Ms. Turner/Desert Pacific Properties;

- Various agreements, designs, conditions, orders, and/or plans which govern the buildout of the Development and the DEFENDANTS' requisite conduct relating thereto, all which were provided by or on behalf of the DEFENDANTS to support the members of LOT 11's due diligence efforts and requests.   Such documents include, without limitation, the following: (i) the Conditions of Approval; (ii) The Specific Plan; (iii) The Final Parcel Map; (iv) the Development Agreement; (v) the prior Declaration of Covenants, Conditions and Restrictions related to the Development; and (vi) The Project Security Plan;

- The Purchaser Responsibility Breakdown, created and provided by DEFENDANTS, which expressly sets forth specific financial obligations and responsibilities that the owner of Parcel 11 would be responsible for, in addition to the purchase price of the parcel, in the development and buildout of their parcel of land within the Development;

- Seller Vacant Land Questionnaire, dated August 8, 2016, as well as the updated Seller Vacant Land Questionnaire which was subsequently dated March 5, 2018;

- Various e-mail correspondence between representatives of LOT 11 and the DEFENDANTS concerning their questions regarding the Development, what is to be included, timelines of the Development, what the parcel owner's responsibilities would be, the responsibilities of the DEFENDANTS, the overall intended buildout of the DEVELOPMENT, the implementation and construction of various utilities and infrastructure relating to the Development, as well as associated timelines of such;

- ECOMASTER'S sales solicitations, as a general contractor, regarding the potential building and construction of the Development and the parcels therein; and

-     Design Requirements and Guidelines for the Development, Dated August 2017, prepared by A& Architects.

83.     PLAINTIFF LOT 11 is informed and believes and thereon alleges that following the above-referenced in-person meeting with the DEFENDANTS, on or about December 8, 2017, Mr. Trevor Leeds, on behalf of the members of LOT 11, sent e-mail correspondence to DEFENDANTS KENNETH, KATHERINE, and MICHAEL, wherein Mr. Leeds asked a series of questions seeking additional information and clarity related to the potential purchase of Parcel 11 and the proposed owner's potential obligations, whether financial or otherwise, relating thereto. In response thereto, KENNETH, on behalf of the DEFENDANTS expressly responded to Mr. Leeds' specific inquiries via e-mail on December 9, 2017 in the following manner:

-     *Q*: $13 per square foot is high relative to other desert canna compounds at $8.  We have discussed the added value benefits such as ag rates, shared security, master CUP, well and municipal water.  Can you help shed some additional insight here to justify the higher per square foot?

     *A*:  All interior Lots are going to $15.00/SF for deals not in escrow prior to 12-15.  Savings in Coachillin will pay for the measly difference in Parcel Premium every other month.

-     *Q*:  90% is due 45 days following escrow and 10% is due upon everything else in the compound approved and up and running?

     *A*:  Correct.  Infrastructure installed or bonded for installation and materials and labor payment.

-     *Q*:  How does the delays in Coachillin' getting paid put pressure on the timeline until completion?

     *A*:  N/A we are paying out of partners cash in the bank and closed sales.

-     *Q*:  It seems that there are a ton of shared expenses still left to endure some without a formal completed plan.  Any update here?

46

1          *A*:  No need for formal plan, we are progressing as fast as the Utilities can perform.

2          Sewer & Water was bonded for, and construction begins this week.  Everything else

3          will follow as fast as possible.

4    -   *Q*:  Who is responsible for entitling each property?

5          *A*:  Project was entitled when City Council approved the Specific Plan.

6    -   *Q*:  Who pays [for entitling]?

7          *A*:  Coachillin

8    -   *Q*:  There seems to be more buyer financial commitments in addition to just the land.

9          Do we have a list?

10         *A*:  See Purchaser Responsibility sheet prepared for each Parcel.

11   -   *Q*:  Metering of water paid by owners based on % per square foot?

12         *A*:  No, paid per meter.

13   -   *Q*:  Who is responsible for the costs of natural gas and piping?

14         *A*:  Coachillin Infrastructure; Parcel Owner on metered use.

15   -   *Q*:  Who pays for domestic water and sewer?

16         *A*:  Coachillin Infrastructure; Parcel Owner on metered use.

17   -   *Q*:  Who pays for the offsite roadway and intersection improvements?

18         *A*:  Coachillin & Bonded with City.

19   -   *Q*:  What is the expected completion date of the education facility, dispensary, touring

20         R&D, distribution, vermiculture facility, and private club?

21         *A*:  June/July [2018]

22   -   *Q*:  Is there a cost that will be expected from the landowners of Coachillin to build 19th

23         street to the property?

24         *A*:  No

25     84.    PLAINTIFF LOT 11 is informed and believes and thereon alleges that pursuant to

26 the above referenced documents, as well as the DEFENDANTS' unambiguous aforementioned

27 express representations, the DEFENDANTS were definitively required to construct, implement,

28

COMPLAINT FOR DAMAGES     Exh. A  Page 55

1 and pay for the installation of infrastructure for the Development, including without limitation,

2 infrastructure relating to electricity, water, and sewer.

3       85.    Moreover, PLAINTIFF LOT 11 is informed and believes and thereon alleges that

4 an updated VQL was prepared and signed by KENNETH on behalf of the DEFENDANTS on

5 March 5, 2018 and thereafter provided to the members of PLAINTIFF LOT 11 in furtherance of

6 their due diligence efforts. Notably, pursuant to the VQL provided to the members of PLAINTIFF

7 LOT 11 by the DEFENDANTS, the DEFENDANTS expressly represent that the sewer

8 infrastructure for the development was already installed and all other infrastructure was bonded

9 for by the DEFENDANTS.

10       86.    PLAINTIFF LOT 11 is informed and believes and thereon alleges that on or about

11 January 28, 2018, DEFENDANTS provided to the members of PLAINTIFF LOT 11 a Purchaser

12 Responsibility Breakdown, which sets forth the purchaser of Parcel 11's financial responsibilities,

13 in addition to the purchase price of the land, should they desire to proceed in purchasing their

14 respective parcel within the Development. Specifically, for the purposes of this action, the

15 Purchaser Responsibility Breakdown form, created by the DEFENDANTS and delivered to the

16 members of LOT 11 expressly sets forth the requisite financial obligations of such purchaser as

17 relates to utilities, including without limitation, those relating to "*water, sewer, irrigation, fire*

18 *riser*." As to these specific utilities, the DEFENDANTS expressly represented that the cost to be

19 borne by the owner of Parcel 11, in conjunction with their purchase of Parcel 11 within the

20 Development was to be $45,000.00. Additionally, the only other financial obligation delineated

21 for Parcel 11 in this regard for these specific utilities within the Purchaser Responsibility

22 Breakdown expressly stated that the owner of Parcel 11 would be responsible for monthly usage

23 bills based upon a usage meter. The content and representations within LOT 11's Purchaser

24 Responsibility Breakdown comport with the various express representations made by the

25 DEFENDANTS, as is set forth herein.

26       87.    PLAINTIFF LOT 11 is informed and believes and thereon alleges that based upon

27 all of the foregoing and in reliance thereto, on or about January 26, 2018, a written *Vacant Land*

28 *Purchase Agreement and Joint Escrow Instructions* was entered into for the benefit of the

COMPLAINT FOR DAMAGES     Exh. A  Page 56

members of PLAINTIFF LOT 11 and agreed upon by KENNETH on behalf of DEFENDANT COACHILLIN (the "Parcel 11 PSA"). The Parcel 11 PSA was initially entered into by Mr. Paul Jacobson and/or assignee for the purchase of Parcel 11. Prior to the closing of this respective transaction, Mr. Jacobson and DEFENDANT COACHILLIN agreed to amend the Parcel 11 PSA to thereafter be for the purchase of Parcel 11 by the assignee of Mr. Jacobson; namely, VBHS Investments, LLC, who subsequently assigned all rights, title, and interests relating to Parcel 11 to PLAINTIFF LOT 11.

88. PLAINTIFF LOT 11 is informed and believes and thereon alleges that pursuant to the express terms of the Parcel 11 PSA, the members of PLAINTIFF LOT 11 agreed to purchase Parcel 11 of the Development for a total purchase price of One Million Two Hundred Nineteen Thousand Six Hundred and Eighty United States Dollars and 00/100 ($1,219,680.00). Pursuant to the express language of the written Parcel 11 PSA, DEFENDANTS agreed, in pertinent part:

- "*The lot to be purchased by Buyer…shall have electricity, domestic water, sewer, cable, and gas stubbed in to but not on the site, and a paved road from the main entry and rough graded pad…Seller has posted Bonds for both the City of Desert Hot Springs and Mission Springs Water District sufficient to guaranty infrastructure insurity.*"

- Seller is to provide the Buyer with a copy of all requisite Bylaws, CC&R's, & Design Guidelines.

- The purchase of the property was "*subject to commercial covenants, conditions and restrictions, a property owners association, [and] shall contain common areas and shall be further subject to a Specific Plan approved by Desert Hot Springs and all applicable laws, rules, regulations of Desert Hot Springs and other governmental entities having jurisdiction thereof.*"

- The Seller "*strongly encouraged [the Buyer] to examine a Preliminary Title Report and to review Development Agreement, Bylaws, CC&R's, any easements and public right-of-ways that may affect subject property.*"

49

COMPLAINT FOR DAMAGES

- Pursuant to Section 9.C. of the Parcel 11 PSA, that no "other costs" not expressly delineated therein would be the responsibility of the purchaser of Parcel 11. Notably, within said Section, the Seller did not delineate any additional costs that such purchaser would be responsible for, including without limitation, the payment for any of the Development's common infrastructure capital expenditures.

- "*In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items.*" Notably, in light of the foregoing, no such additional written disclosures or notices were ever provided to the members of PLAINTIFF LOT 11 by and/or on behalf of any of the DEFENDANTS.

- "*Seller shall…DISCLOSE KNOWN MATERIAL FACTS…affecting the Property…and make any and all disclosures required by law.*" Notably, in light of the foregoing, no such additional disclosures were ever provided to the members of PLAINTIFF LOT 11 by and/or on behalf of any of the DEFENDANTS.

89.      PLAINTIFF LOT 11 is informed and believes and thereon alleges that on or about January 26, 2018, KENNETH, on behalf the DEFENDANTS, and Mr. Anthony Jacobson, on behalf of the purchaser of Parcel 11, entered into written *Supplemental Escrow Instructions*. Pursuant to said *Supplemental Escrow Instructions*, the respective parties expressly agreed that the Lot 11 PSA was thereby supplemented and amended to incorporate the following documents:

- The initial Covenants, Conditions and Restrictions, recorded December 27, 2017;

- The Conditions of Approval;

- The Specific Plan;

- The Final Parcel Map;

- Parcel 11's Purchaser Responsibility Breakdown prepared by DEFENDANTS;

- The 11/21/2017 Update;

- Individual Lot Preliminary Title Report, dated January 3, 2018;

50

COMPLAINT FOR DAMAGES

-   The Development Agreement; and

-   In addition to the above documents, Buyer has been given the link; https://coachillin.com/coachillin-advantage/ which provides all due diligence reports and studies.

90.     PLAINTIFF LOT 11 is informed and believes and thereon alleges that the aforementioned representations were consistent with the other representations made to members of PLAINTIFF LOT 11 by DEFENDANTS prior to the purchaser of Parcel 11 entering into the Lot 11 PSA and closing on the purchase thereto, all as set forth herein.

91.     PLAINTIFF MOON LEV is the owner and rights holder over the real property within the Development which is commonly known as "Parcel 12."  On or about January 10, 2018, PLAINTIFF MOON LEV closed on its purchase of its respective parcel of land within the Development.

92.     PLAINTIFF MOON LEV is informed and believes and thereon alleges that in or about October 2017, PLAINTIFF MOON LEV first learned of the Development through Ms. Paula Turner, who her and her agency, Desert Pacific Properties, had a pre-existing relationship with the DEFENDANTS, as is set forth herein.  At the time of learning about the Development, PLAINTIFF MOON LEV was already actively seeking to acquire real property within the State of California to conduct legalized cannabis business operations.  Upon learning of the Development, PLAINTIFF MOON LEV began to initially research the Development through various means, including online research of the Development via the Website, all of which contained various representations as to the intended robust and all-inclusive nature of the Development.

93.     Upon being impressed with their initial review of the Development and the fact that the Development appeared to be an all-inclusive canna-business-based park, representatives of PLAINTIFF MOON LEV then sought to schedule a site tour of the Development and in-person meetings with Ms. Turner, all to learn more about the potential acquisition and construction of property within the Development, as well as additional information related to the totality of the Development.

COMPLAINT FOR DAMAGES          Exh. A  Page 59

94.     PLAINTIFF MOON LEV is informed and believes and thereon alleges that on or about October 26, 2017, PLAINTIFF MOON LEV and its representatives, including without limitation, Mr. Jack Levine, Mr. Jace Levine, and Mr. Trevor Leeds, conducted an in-person meeting and site tour of the Development with Ms. Turner.  During such time at the Development, PLAINTIFF MOON LEV and its representatives were briefly introduced to DEFENDANT KENNETH by Ms. Turner.  It was during this time with Ms. Turner that she expressly represented to PLAINTIFF MOON LEV, on behalf of the DEFENDANTS that the Development was being developed as a full-service cannabis business park that had various lots for sale, and that it had a complete list of infrastructure that it was able to offer purchasers of the property, including without limitation, electrical power, sewer, security, and on-site disposal of cannabis waste.  At no time during this meeting did Ms. Turner ever convey that there were potential issues with the possibility of being able to receive any of the utilities as she was otherwise representing would be available, nor did Ms. Turner mention that she was actively engaged in discussions with DEFENDANT KENNETH about these very same issues related to the potential inability of receiving such utilities.

95.     PLAINTIFF MOON LEV is informed and believes and thereon alleges that on the same day of the above-referenced initial meeting between PLAINTIFF MOON LEV, its representatives, and Ms. Turner, Mr. Jack Levine sent e-mail correspondence to Ms. Turner, wherein he specifically stated and/or requested the following due diligence materials:

- A copy of the initial CC&R's for the POA;
- A list of all "Common Area Maintenance Charges" or "dues" based upon the parcel 12  2-acre parcel;
- Information concerning all city licensing fees;
- Information concerning any restrictions on the type of structures approved to be built on the site;
- Any height restrictions concerning any building structures; and
- Any additional information that will enable PLAINTIFF MOON LEV to complete their decision-making process.

COMPLAINT FOR DAMAGES            Exh. A  Page 60

96.     PLAINTIFF MOON LEV is informed and believes and thereon alleges that in accordance with Mr. Levine's October 26, 2017 e-mail request to Ms. Turner, Ms. Turner sent e-mail correspondence to Ms. Christina Troll, wherein Ms. Turner expressly requested that Ms. Troll send "*a complete due diligence package*" to Mr. Levine for PLAINTIFF MOON LEV'S review and consideration.

97.     PLAINTIFF MOON LEV is informed and believes and thereon alleges that on or about October 27, 2017, Ms. Troll, in accordance with Ms. Turner's request, sent to Mr. Levine the following documents, which constituted the DEFENDANTS' perceived "*complete due diligence package*" for the Development;

-     The initial CC&R's and Bylaws of the POA;

-     Purchaser Update Letter, dated October 19, 2017;

-     Tentative Parcel Map No. 37158;

-     Parcel No. 33 Site Plan;

-     The Conditions of Approval; and

-     A Purchaser Responsibility Breakdown.

98.     PLAINTIFF MOON LEV is informed and believes and thereon alleges that following its review of the above-referenced documents provided to it by the DEFENDANTS' agents, PLAINTIFF MOON LEV continued to be interested in the potential purchase of a parcel within the Development.

99.     Due to the then present condition of the vacant land prior to purchasing Parcel 12 within the Development, PLAINTIFF MOON LEV was very concerned about various details associated with the Development and its overall construction.   For example, PLAINTIFF MOON LEV sought specific information and factual representations from the DEFENDANTS about the Development, including, without limitation: (i) the overall ability of the DEFENDANTS to actually develop the Development; (ii) what amount of monies would be needed to complete the Development, and were all DEFENDANTS adequately equipped to finance such development through finalization; (iii) what approvals would be needed to complete the Development; (iv) what was included in the infrastructure - including sewage, water; and electricity; (v) who would be

COMPLAINT FOR DAMAGES          Exh. A  Page 61

responsible for paying for the cost of such infrastructure; and (vi) the applicable timeline that the infrastructure would be completed, as well as other related details.  All of this information was highly relevant and material to PLAINTIFF MOON LEV in making its determination whether or not to purchase property within the Development and was also further material to the transaction as the price of a semi-improved lot within the Development was significantly higher than the price of other vacant cannabis zoned land in the surrounding area.  As such, these concerns caused the members of PLAINTIFF MOON LEV to engage in additional due diligence efforts.

100.  PLAINTIFF MOON LEV is informed and believes and thereon alleges that in furtherance of their desire to learn more about the Development, PLAINTIFF MOON LEV and its respective representatives were able to conduct a secondary in-person site visit of the Development as well as attend an in-person meeting with the DEFENDANTS.  Specifically, in or about November 2017, Mr. Jack Levine, as well as Mr. Jace Levine, Mr. Trevor Leeds, and Dr. Robert Flannery of Sierra Consulting, LLC ("Sierra"), all attended an in-person sales presentation meeting at the DEFENDANTS' offices with KENNETH, KATHERINE, and MICHAEL, who all presented on behalf of themselves and other DEFENDANTS.  During this specific in-person meeting, DEFENDANTS made several material representations concerning the overall buildout of the Development, construction of the Development's Amenities, infrastructure, and utilities, and the timelines related thereto.  Specifically, KENNETH, KATHERINE, and MICHAEL expressly represented to Mr. Jack Levine, as well as Mr. Jace Levine, Mr. Leeds, and Dr. Flannery during this meeting that: (i) the properties were ready to build upon and had some infrastructure already implemented; (ii) electrical service for the Development was going to be specifically implemented for Parcel 12 "*by the end of January 2018, but in any event no later than the end of February 2018*," as according to the DEFENDANTS, "*SCE had a duty to serve the Development*" and thus, was obligated to do so; (iii) the Development was to include the Amenities, as are identified, herein, as well as trash remediation and community parking, all of which, according to the DEFENDANTS, were to be completed and open within eighteen (18) months of the date of this meeting; (iv) the DEFENDANTS would be developing and installing a temporary on-site sewage and wastewater system to handle all interim sewage needs of the parcels until Mission

Springs Water District completed its buildout of their permanent public sewage plant, which the DEFENDANTS represented would be completed within the next eighteen (18) months; (v) that the common infrastructure within the Development would be completed and sticks would be "*out of the ground*" and ready for building on Parcel 12 within sixty (60) days of PLAINTIFF MOON LEV'S purchase of said parcel; (vi) all aspects of the Development were already approved by all applicable governmental agencies; (vii) the Development will include well-water access so as to ensure that each parcel will have continuous access to an unlimited water source, even in the event of significant drought conditions; (viii) that the DEFENDANTS were well-funded and had adequate monies already secured to ensure the full-buildout of the entire Development; and (ix) the Development was bonded to guarantee the full-buildout of the Development.

101.    PLAINTIFF MOON LEV is informed and believes and thereon alleges that following the above referenced meeting between PLAINTIFF MOON LEV and the aforementioned DEFENDANTS, MOON LEV engaged in additional extensive due diligence efforts concerning its potential purchase of real property within the Development.  Specifically, PLAINTIFF MOON LEV engaged in significant pre-purchase due diligence efforts to review and analyze all aspects of the purchase of the respective property to be acquired by MOON LEV.  Such due diligence efforts commenced in or about November 2017, and continued thereafter until in or about January 2018, when MOON LEV actually chose to close on the purchase of Parcel 12 within the Development.  During said interim time-period, MOON LEV and its representatives requested from the DEFENDANTS all relevant information as to the Development, the parcels for sale within, as well as all agreements, designs, conditions, orders, and/or plans concerning the Development, and the related timelines thereto.  In furtherance of these requests, during this time-period and prior to MOON LEV'S purchase of its respective parcel of land within the Development, MOON LEV was provided copies of various relevant documents by and/or on behalf of the DEFENDANTS concerning the Development and the DEFENDANTS' purported buildout of the related infrastructure and the Amenities.  Specifically, the following documents were provided by and/or on behalf of the DEFENDANTS to PLAINTIFF MOON LEV, and then MOON LEV was able to engage in the thorough review and analysis of such documents and

information in an effort to obtain material information concerning the Development and MOON

LEV'S then potential purchase of a parcel therein:

- Title Reports related to parcels of land within the Development;

- Various Development-related advertisements provided by and/or otherwise on behalf of DEFENDANTS, as well as provided by Ms. Turner/Desert Pacific Properties;

- Various agreements, designs, conditions, orders, and/or plans which govern the buildout of the Development and the DEFENDANTS' requisite conduct relating thereto, all which were provided by or on behalf of the DEFENDANTS to support MOON LEV'S due diligence efforts and requests.  Such documents include, without limitation, the following: (i) the Conditions of Approval; (ii) The Specific Plan; (iii) The Final Parcel Map; (iv) the initial Development Agreement, dated December 15, 2017; (v) the prior Declaration of Covenants, Conditions and Restrictions related to the Development; and (vi) The Project Security Plan;

- The Purchaser Responsibility Breakdown, created and provided by DEFENDANTS, which expressly sets forth specific financial obligations and responsibilities that MOON LEV would be responsible for in the development and buildout of their parcel of land within the Development;

- Seller Vacant Land Questionnaire, dated August 8, 2016;

- ECOMASTER'S sales solicitations, as a general contractor, regarding the potential building and construction of the Development and the parcels therein; and

- Design Requirements and Guidelines for the Development, Dated August 2017, prepared by A& Architects.

102.    PLAINTIFF MOON LEV is informed and believes and thereon alleges that before the closing of the purchase of Parcel 12, which occurred in or about January 2018, DEFENDANTS provided to PLAINTIFF MOON LEV a Purchaser Responsibility Breakdown, which sets forth MOON LEV'S financial responsibilities should they desire to proceed in purchasing their respective parcel within the Development.  Specifically, for the purposes of this action, the Purchaser Responsibility Breakdown form, created by the DEFENDANTS and delivered to the

PLAINTIFF MOON LEV, expressly sets forth the requisite financial obligations of MOON LEV as relates to utilities, including without limitation, those relating to "*water, sewer, irrigation, fire riser*." As to these specific utilities, the DEFENDANTS expressly represented that the absolute cost to be borne by MOON LEV, in conjunction with its purchase of Parcel 12 within the Development was to be $45,000. Additionally, the only other financial obligation delineated for Parcel 12 in this regard for these specific utilities within the Purchaser Responsibility Breakdown expressly stated that MOON LEV would be responsible for monthly usage bills based upon a usage meter.

103. PLAINTIFF MOON LEV is informed and believes and thereon alleges that pursuant to the above referenced documents, as well as the DEFENDANTS' aforementioned express representations, the DEFENDANTS were definitively required to construct, implement, and pay for the installation of infrastructure for the Development, including without limitation, infrastructure relating to electricity, water, and sewer.

104. PLAINTIFF MOON LEV is informed and believes and thereon alleges that based upon all of the foregoing and in reliance thereto, on or about November 27, 2017, a written *Vacant Land Purchase Agreement and Joint Escrow Instructions* was entered into by PLAINTIFF MOON LEV and agreed upon by KENNETH on behalf of DEFENDANT COACHILLIN (the "Parcel 12 PSA").

105. PLAINTIFF MOON LEV is informed and believes and thereon alleges that pursuant to the express terms of the Parcel 12 PSA, PLAINTIFF MOON LEV agreed to purchase Parcel 12 of the Development for a total purchase price of One Million One Hundred Seventy Thousand Eight Hundred and Ninety-Two United States Dollars and 00/100 ($1,170,892.00). Pursuant to the express language of the written Parcel 12 PSA, DEFENDANTS agreed, in pertinent part:

- "*The lot to be purchased by Buyer…shall have electricity, domestic water, sewer, cable, and gas stubbed in to but not on the site, and a paved road from the main entry and rough graded pad*."

COMPLAINT FOR DAMAGES

1      -   Seller is to provide the Buyer with a copy of all requisite Bylaws, CC&R's, & Design

2          Guidelines.

3      -   The purchase of the property was "*subject to commercial covenants, conditions and*

4          *restrictions, a property owners association, [and] shall contain common areas and*

5          *shall be further subject to a Specific Plan approved by Desert Hot Springs and all*

6          *applicable laws, rules, regulations of Desert Hot Springs and other governmental*

7          *entities having jurisdiction thereof*."

8      -   The Seller "*strongly encouraged [the Buyer] to examine a Preliminary Title Report*

9          *and to review Development Agreement, Bylaws, CC&R's, any easements and public*

10         *right-of-ways that may affect subject property*."

11     -   Pursuant to Section 9.C. of the Parcel 12 PSA, that no "other costs" not expressly

12         delineated therein would be the responsibility of PLAINTIFF MOON LEV.  Notably,

13         within said Section, the Seller did not delineate any additional costs that MOON LEV

14         would be responsible for, including without limitation, the payment for any of the

15         Development's common infrastructure capital expenditures.

16     -   "*In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions*

17         *materially affecting the Property, or any material inaccuracy in disclosures,*

18         *information or representations previously provided to Buyer of which Buyer is*

19         *otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure*

20         *or notice, in writing, covering those items.*"  Notably, in light of the foregoing, no such

21         additional written disclosures or notices were ever provided to PLAINTIFF MOON

22         LEV by and/or on behalf of any of the DEFENDANTS.

23     -   "*Seller shall…DISCLOSE KNOWN MATERIAL FACTS…affecting the Property…and*

24         *make any and all disclosures required by law.*"  Notably, in light of the foregoing, no

25         such additional disclosures were ever provided to PLAINTIFF MOON LEV by and/or

26         on behalf of any of the DEFENDANTS.

27         106.    PLAINTIFF MOON LEV is informed and believes and thereon alleges that on or

28     about January 10, 2018, the DEFENDANTS and PLAINTIFF MOON LEV entered into written

*Amended Escrow Instructions*.  Pursuant to said *Amended Escrow Instructions*, the respective parties expressly acknowledged and agreed that PLAINTIFF MOON LEV had been provided the following documents concerning Parcel 12, which were material to the purchase thereof:

- The initial Covenants, Conditions and Restrictions, recorded December 27, 2017;

- The Conditions of Approval;

- The Specific Plan;

- The Final Parcel Map;

- Parcel 12's Purchaser Responsibility Breakdown prepared by DEFENDANTS;

- The 11/21/2017 Update;

- Individual Lot Preliminary Title Report, dated January 3, 2018;

- The initial Development Agreement, dated December 15, 2017; and

- In addition to the above documents, Buyer has been given the link; https://coachillin.com/coachillin-advantage/ which provides all due diligence reports and studies.

107.    PLAINTIFF MOON LEV is informed and believes and thereon alleges that the aforementioned representations were consistent with the other representations made to it and its designated representatives by DEFENDANTS prior to PLAINTIFF MOON LEV entering into the Lot 12 PSA and closing on the purchase thereto, all as set forth herein.

108.    Accordingly, given all of the foregoing, PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS, as the developers of the Development, are and were completely and exclusively responsible for all costs associated with the initial common infrastructure and any and all common areas at the Development.  Each of the PLAINTIFFS' sole responsibility was for the costs associated with the infrastructure within their individual lot boundary lines of the property that each PLAINTIFF purchased, respectively, which has already been paid for by each of the PLAINTIFFS.  Despite the foregoing, DEFENDANTS now seek to hold PLAINTIFFS responsible and liable for substantial additional costs and expenses, including those costs and expenses relating to the construction of the initial common infrastructure, costs incurred by COACHILLIN, ENERGY, ECOMASTER, KENNETH, and WILLIAM unrelated

1    to each of the PLAINTIFFS' respective lots, and DEFENDANTS are seeking to shift their overall

2    responsibility and obligations, whether financial or otherwise to the PLAINTIFFS, all in violation

3    of written agreements, verbal representations, and documents filed with various governmental

4    agencies, among others.

5        109.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS

6    COACHILLIN, ENERGY, ECOMASTER, KENNETH, WILLIAM, and KATHERINE have

7    engaged in a pattern and practice of despicable conduct whereby they have demanded and

8    continue to demand additional monies to be paid by each of the PLAINTIFFS, which were never

9    agreed upon by the PLAINTIFFS, all because DEFENDANT COACHILLIN'S "lender,"

10   DEFENDANT WILLIAM, who is also a Managing Member of DEFENDANTS COACHILLIN

11   and ENERGY, was becoming increasingly reluctant to continue funding the Development by

12   approximately mid-2018.

13       110.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS

14   COACHILLIN, ENERGY, ECOMASTER, KENNETH, KIRSTEN, KATHERINE, WILLIAM,

15   and/or MICHAEL have no rightful authority or legal or factual basis to charge, demand collection

16   of, threaten in an effort to collect, or collect any of these additional monies from the PLAINTIFFS

17   that they have been and are continuing to attempt to collect.   Despite the foregoing,

18   DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, KATHERINE, and

19   additional individuals on behalf of such DEFENDANTS have sent impermissible invoices,

20   demand letters, and other correspondence to PLAINTIFFS seeking collection of monies that they

21   are not actually entitled to.  PLAINTIFFS, and each of them, have notified such DEFENDANTS

22   with respect to these spurious charges and invoices, indicating that PLAINTIFFS never had and

23   still have no obligation, whatsoever, to pay them.  However, DEFENDANTS in their typical

24   defiant manner, continue to pursue these baseless charges.

25       111.    PLAINTIFFS are informed and believe and thereon allege that, as is set forth

26   herein, the foregoing actions by the DEFENDANTS have been made possible as DEFENDANTS

27   COACHILLIN, ENERGY, and ECOMASTER are fully operated, dominated, and controlled by

28   DEFENDANTS KENNETH and WILLIAM.   In addition to KENNETH, he has other family

members involved, including his wife DEFENDANT KIRSTEN, his daughter DEFENDANT KATHERINE, and his son DEFENDANT MICHAEL, who all follow DEFENDANT KENNETH'S and DEFENDANT WILLAM'S directives, and consistently use DEFENDANTS COACHILLIN, ENERGY, and ECOMASTER as sham entities to do their bidding and pay for his and each other's obligations, whether financial or otherwise.    This scheme is further complicated by the fact that DEFENDANTS COACHILLIN, KENNETH, KIRSTEN, KATHERINE, and additional individuals on each of their behalves, demand that PLAINTIFFS generally pay unlawful markups of fees and costs to DEFENDANT ECOMASTER, as such causes significant issues as relates to conflicts of interest, self-dealing, commingling, and alter-ego as relates to DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL.

112.    Coincidentally, the address for DEFENDANT COACHILLIN is 71-713 Highway 11, Rancho Mirage, CA 92270.  This is the exact same address utilized for DEFENDANTS ENERGY and ECOMASTER.  Accordingly, DEFENDANTS COACHILLIN, KENNETH, and WILLIAM have utilized each other and each of the entities as a mechanism to unlawfully collect additional funds from the PLAINTIFFS, as despite representations to the contrary by the DEFENDANTS, the Development was woefully underfunded compared to what was actually needed by the DEFENDANTS to fulfill all of the promises and representations that they made in order to sell property at the Development.   The DEFENDANTS have used and continue to use PLAINTIFFS monies improperly and for their own personal and financial gain, all while shirking their responsibilities to the PLAINTIFFS, to company governance to the Defendant Companies, as each and every one of the DEFENDANTS are part and parcel of the partnership, agency, conspiracy, and criminal enterprise with each other to unlawfully squeeze PLAINTIFFS and other lot owners out of money to the benefit of the DEFENDANTS, and each of them.

113.    Following the closing of the purchase of each of the PLAINTIFFS' respective parcels within the Development, each of the PLAINTIFFS have engaged in significant efforts and expended significant monies to build out and construct various land improvements upon and within each of their respective parcels.  For the purposes of this action, such various improvements

include without limitation, the electrical and sewage-related infrastructure components that needed to be constructed within each of the PLAINTIFFS' own respective parcel boundary lines, which upon construction have each been connected to the Development's common/main infrastructure by the DEFENDANTS via each parcels' respective utility stub-ins.  Specifically, when installing, constructing, and/or connecting such infrastructure-related improvements, each of the PLAINTIFFS retained the contracting services of DEFENDANT ECOMASTER, who thereafter, in conjunction with other third-party contractors, provided and/or facilitated all such applicable services.  Notably, while ECOMASTER was ultimately responsible for facilitating all such construction efforts, it was actually DEFENDANT COACHILLIN, and not DEFENDANT ECOMASTER, who specifically invoiced the PLAINTIFFS for ECOMASTERS' services.  Additionally, such invoices that are in COACHILLIN'S name were actually delivered to the PLAINTIFFS by ECOMASTER'S Controller, Mr. Don Davis.  Moreover, in addition to COACHILLIN invoicing for one of its alter-ego's construction services, ECOMASTER also charged the PLAINTIFFS an additional "mark-up" fee on top of the fees being charged by COACHILLIN, all as relating to such infrastructure improvements paid for by the PLAINTIFFS.

114.    PLAINTIFFS are informed and believe and thereon allege that following the construction and connection of each of their respective utility infrastructure within their parcel boundaries, DEFENDANT KENNETH, on behalf of himself and the other DEFENDANTS, expressly acknowledged, in writing via e-mail correspondence, that the PLAINTIFFS' respective infrastructure was indeed already completed, fully paid for, and connected to the Development's common/main infrastructure.  Thus, PLAINTIFFS have already paid all monies required of them concerning any and all "connection fees" related to such infrastructure.

115.    As is already set forth herein, PLAINTIFFS are informed and believe and thereon allege that in furtherance of each of the PLAINTIFFS' respective purchases of their particular parcels of land within the Development, it was specifically represented and promised by the DEFENDANTS that DEFENDANT COACHILLIN would be fully responsible for providing and paying for the development, construction, and installation of an **onsite, interim septic sewage system** to be utilized by each of the parcel owners within the Development for the disposal of

COMPLAINT FOR DAMAGES

their respective domestic waste until such time that Mission Springs Water District ("MSWD") – the local public water and sewage utility provider, was able to come online with a permanent sewage solution for the Development.

116.   PLAINTIFFS are informed and believe and thereon allege that despite all of the above-referenced specific representations and promises being made by the DEFENDANTS to each of the PLAINTIFFS prior to the purchase of their respective parcels of land within the Development, all of which were material representations which induced each of the PLAINTIFFS to purchase their respective parcels of land, to date, the DEFENDANTS have not only failed to construct and/or otherwise provide access to any such **onsite, interim septic sewage system**, but rather, the DEFENDANTS have even confirmed both verbally and in writing that the DEFENDANTS did not and hereinafter do not even intend on constructing such **onsite, interim septic sewage system** to service the Development.   For example, on November 3, 2021 at approximately 1:00 p.m., DEFENDANT KENNETH, on behalf of himself as well as other DEFENDANTS, represented in writing via e-mail correspondence to Ms. Mattie Cooper, a representative of PLAINTIFF HAPPY HOURS, "*Coachillin WILL NOT be providing an onsite interim solution.  Coachillin provided an offsite solution on ground we own along the sewer mains we own and installed.  That decision was made long ago…Use it or don't use it.  That is entirely up to you.*"   Moreover, on December 10, 2021 at approximately 11:14 a.m., DEFENDANT KENNETH, using his "Ecomaster" e-mail address, specifically represented to Ms. Cooper that, "*[T]he onsite system you refer to was moved "offsite" on land owned by the same Coachillin partners.  Coachillin had NO OBLIGATION to provide an onsite system.  The location of the system is immaterial, and quite frankly you are extremely PETTY to try to push this position…Please sue us if you think that stands up in ANY COURTROOM.*"

117.   PLAINTIFFS are informed and believe and thereon allege that in or about October 2021, DEFENDANT KATHERINE, on behalf of herself and other DEFENDANTS, whilst using her DEFENDANT COACHILLIN e-mail account, sent to each of the PLAINTIFFS a proposed *Offsite Wastewater Treatment & Disposal Connection Agreement*, which was in the name of one of its alter-egos, DEFENDANT ENERGY (the "Offsite Sewage Agreement").  Pursuant to the

COMPLAINT FOR DAMAGES          Exh. A  Page 71

1    express terms and representations set forth within said Offsite Sewage Agreement, the

2    DEFENDANTS attempted to represent to each of the PLAINTIFFS that DEFENDANT ENERGY

3    *"currently operates and maintains an **Offsite** Wastewater Treatment and Disposal System*

4    *(OWTDS) adjacent to the Coachillin' Business Park (the "Park").  The OWTDS is **authorized***

5    ***and permitted** by the California Regional Water Quality Control Board, Colorado River Basin*

6    *Region (Regional Board) by Order R7-2020-0029, WDID 7A331366001…"*  Moreover, pursuant

7    to such Offsite Sewage Agreement, the DEFENDANTS are attempting to cause each of the

8    PLAINTIFFS to agree to pay to DEFENDANT ENGERGY an additional amount of $104,180.00,

9    which comprises of an unsubstantiated "connection fee" in the amount of $84,180.00 as well as

10   an additional unreasonable and baseless $20,000.00 "security deposit."

11        118.    PLAINTIFFS are informed and believe and thereon allege that within the Offsite

12   Sewage Agreement, not only does DEFENDANT ENERGY attempt to charge the PLAINTIFFS

13   the aforementioned monetary amounts for additional connection fees for sewage lines that the

14   DEFENDANTS have already been paid for and have already been connected, but this Offsite

15   Sewage Agreement attempts to strongarm PLAINTIFFS into granting the DEFENDANTS a

16   variety of easements and other property rights over each of the PLAINTIFFS' respective parcels

17   of land, which were never disclosed and/or otherwise previously contemplated or agreed to by any

18   of the PLAINTIFFS.  Moreover, such Offsite Sewage Agreement does not even attempt to

19   disclose what the actual usage fees are to be charged to each of the PLAINTIFFS, should they

20   ever be willing to enter into such egregious Offsite Sewage Agreement.  In furtherance of such,

21   PLAINTIFFS have even requested, on a number of occasions, specific information related to the

22   actual ongoing usage fees that DEFENDANT ENERGY intends to charge the PLAINTIFFS,

23   should the PLAINTIFFS ever agree to such Offsite Sewage Agreement.  Despite such efforts by

24   the PLAINTIFFS, the DEFENDANTS have absolutely refused to provide any of the

25   PLAINTIFFS with any such requested information.  As such, the DEFENDANTS have and

26   continue to demand that the PLAINTIFFS each forego significant land rights, and enter into the

27   Offsite Sewage Agreement, despite DEFENDANTS failing to provide them with any actual usage

28   rates, thereby effectively signing a "blank check" over to the DEFENDANTS.

COMPLAINT FOR DAMAGES          Exh. A  Page 72

119.    PLAINTIFFS are informed and believe and thereon allege that such Offsite Wastewater Treatment and Disposal System, which according to the DEFENDANTS, is owned and operated by DEFENDANT ENERGY, is the sole and only sewage treatment and disposal system which is intended to service the Development.   Thus, not only has DEFENDANT COACHILLIN failed to install and/or otherwise provide even a single sewage treatment system for the Development as it was contractually required to do, but the DEFENDANTS now are attempting to force and coerce each of the PLAINTIFFS into utilizing DEFENDANT ENERGY'S sole "offsite" sewage treatment system which directly contradicts those material representations made by the DEFENDANTS to the PLAINTIFFS when inducing the PLAINTIFFS to purchase each of their respective parcels of land within the Development, as is set forth herein.

120.    PLAINTIFFS are informed and believe and thereon allege that due to DEFENDANT COACHILLIN'S complete failure to ever provide any type of sewage treatment system for the Development, whatsoever, the DEFENDANTS have now intentionally created a scenario whereby each of the PLAINTIFFS are either forced to agree to DEFENDANT ENERGY'S "take it or leave it" egregious Offsite Sewage Agreement, or are left without any viable sewage option, as was otherwise contracted for by each of the PLAINTIFFS when purchasing their respective Parcels within the Development.

121.    PLAINTIFFS are informed and believe and thereon allege that the DEFENDANTS are attempting to force each of the PLAINTIFFS to enter into the Offsite Sewage Agreement and pay all such extraordinary fees and costs required therein in an effort to cause the PLAINTIFFS to reimburse the DEFENDANTS for costs previously expended by them in the development, construction, and installation of the common infrastructure within the Development, despite the above referenced documents and other representations mandating that the DEFENDANTS be liable for all such common infrastructure costs.  For example, despite DEFENDANTS' express obligations to be responsible for all such costs, on or about December 10, 2021, DEFENDANT KENNETH, on behalf of himself as well as other DEFENDANTS, while discussing these matters with Ms. Cooper, DEFENDANT KENNETH expressly stated to Ms. Cooper, "*[Y]our expected me to build the system with my capital, AND NOT GET REIMBURSED FOR THAT CAPEX?*

COMPLAINT FOR DAMAGES          Exh. A  Page 73

*Really?*" Such written assertion by DEFENDANT KENNETH, on behalf of himself as well as other DEFENDANTS, demonstrates that the DEFENDANTS never actually intended to adhere to their contractual obligations, as is set forth herein.

122.    PLAINTIFFS are informed and believe and thereon allege that the DEFENDANTS are acting exactly like a public utility through their actions, despite attempting to disingenuously represent and assert within the Offsite Sewage Agreement that they are "*not a public or private utility*," all in a rather apparent effort to avoid the requirements imposed upon utility companies through applicable California law.

123.    PLAINTIFFS are informed and believe and thereon allege that in an effort to further coerce and force the PLANITIFFS to enter into the Offsite Sewage Agreement, the DEFENDANTS have now knowingly, intentionally, and willfully even engaged in a pattern of additional unlawful conduct and actions to extort the PLAINTIFFS.  For example, on November 3, 2021, DEFENDANT KENNETH, on behalf of himself as well as other DEFENDANTS, expressly informed the PLAINTIFFS, in writing via e-mail correspondence, that "*Parcel 11 and 12 were connected to the main [sewer lines] prior to Coachillin Energy putting in the plant for service…Parcel 11 and 12 are on Notice.  They have until the 30th of this month to sign contracts and pay fees or we are mothballing the plant and you all three are on your own…Now I see no way for your operation to even work…I'm not sure how you got your plans approved??  Good luck getting an Final CO…you WILL NOT be able to get a CO from the City without access to our sewer facility, so I don't understand your thinking.*" *(sic).*  Then, on December 9, 2021, DEFENDANT KENNETH, on behalf of himself as well as other DEFENDANTS, represented in writing via e-mail correspondence, while unilaterally joining members of the City of Desert Hot Springs into such e-mail correspondence, that, "*I think it best for you to pay the connection fees, sign the services agreement, and get on with getting a CO.  You cannot receive a CO without sewer service…The City (they are copied on this chain) is aware that you have refused to pay connection fees, so I would be shocked if they allow you to even temporarily CO your building.*" *(sic).*  Thereafter, on December 10, 2021, DEFENDANT KENNETH, on behalf of himself as well as other DEFENDANTS, again represented in writing via e-mail correspondence, again including

COMPLAINT FOR DAMAGES                    Exh. A  Page 74

officials from the City, that, "*You have NO OBLIGATION to use our sewer system. Of course that would be EXTREMELY stupid on your part…CITY OFFICIALS; Please explain to Mattie that you have no place in these issues*." Thus, DEFENDANT KENNETH, on behalf of himself as well as other DEFENDANTS, used channels of interstate commerce to engage in a pattern of actions in an effort to intentionally extort the PLAINTIFFS to enter into the Offsite Sewer Agreement and pay the completely unsubstantiated fees therein, and if the PLAINTIFFS did not do so, not only did the DEFENDANTS threaten that the PLAINTIFFS' sewage access [which they already contracted and paid for] would be terminated, but that the PLAINTIFFS' entire business operations would also be restricted and/or terminated by the City.

124. PLAINTIFFS are informed and believe and thereon allege that the Offsite Wastewater Treatment and Disposal System, which is being operated by DEFENDANT ENERGY, and being forced upon the PLAINTIFFS despite DEFENDANT COACHILLIN never providing the requisite interim onsite septic sewage system, is not even properly and fully permitted by all necessary governmental agencies, and thus, cannot even be legally operated by any of the DEFENDANTS as they are otherwise doing.

125. PLAINTIFFS are informed and believe and thereon allege that pursuant to the terms of the Offsite Sewage Agreement, said Offsite Wastewater Treatment and Disposal System was supposedly developed, constructed, and installed by DEFENDANT ENERGY under CRWQCB Order No. R7-2020-0029. For the purposes of this action, as is set forth above, despite DEFENDANT COACHILLIN being the actual Permit Holder with the CRWQCB for an "onsite wastewater treatment and disposal system" under CRWQCB Order No. R7-2020-0029 (even though DEFENDANT COACHILLIN never built any onsite system in accordance with said Permit), DEFENDANT ENERGY has since intentionally, disingenuously, and continuously misrepresented to the PLAINTIFFS, and each of them, in writing, that DEFENDANT ENERGY (and not DEFENDANT COACHILLIN) is actually the current holder of the Permit with the CRWQCB and that such Permit is now somehow for an "offsite wastewater treatment and disposal system" under the very same CRWQCB Order No. R7-2020-0029. Despite the foregoing representations being made by the DEFENDANTS, PLAINTIFFS are informed and believe, and

on that basis, allege that to date, no such Permit under CRWQCB Order No. R7-2020-0029 has ever been issued to any of the DEFENDANTS for an "offsite" system, nor has any formal request for change or amendment been made to such Permit in an effort to fully amend such Permit to include the allowance for an "offsite" system to be constructed and/or otherwise utilized by the Development, nor has ENERGY ever been issued any permit or order by the CRWQCB. PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS have engaged in the aforementioned actions and tactics all so that the DEFENDANTS could reap significant additional monetary benefits that they were not otherwise entitled to, all to the PLAINTIFFS' significant detriment.

126.   PLAINTIFFS are informed and believe and thereon allege that in furtherance of the above-referenced material representations being made by the DEFENDANTS as relating to the construction of an onsite interim sewage septic system that was to be provided for the parcel owners' use, including that of the PLAINTIFFS, DEFENDANTS COACHILLIN, KENNETH, KIRSTEN, KATHERINE, and MICHAEL made various additional representations, as is set forth within this Complaint, not only to the PLAINTIFFS, but also to the City, MSWD, and the California Regional Water Quality Control Board ("CRWQCB"), as to the construction of the Development and the related onsite interim septic system, costs to be borne by the DEFENDANTS, infrastructure work within and related to the Development, and other costs related thereto.  Such representations were not only discussed time and time again between the respective parties, but they were also codified within various documents pertaining to the approved construction efforts of the Development which were filed and recorded with the City of Desert Hot Springs, County of Riverside, and the CRWQCB, all which have previously been set forth within this Complaint.

127.   PLAINTIFFS are informed and believe and thereon allege that as is aptly demonstrated by and through the excerpts from the above-referenced documents, the Development was and continues to be required to have an **ONSITE** "interim septic system" provided by and paid for by DEFENDANT COACHILLIN for use by the PLAINTIFFS and all

COMPLAINT FOR DAMAGES              Exh. A  Page 76

of the parcel owners within the Development, until such time that MSWD's permanent sewage treatment plant was able to come online and service the Development.

128.    PLAINTIFFS are informed and believe and thereon allege that despite all of the above-referenced requirements being imposed, to date, **NO ONSITE INTERIM SEPTIC SYSTEM HAS EVER BEEN BUILT**, nor has construction ever even began on any such onsite sewage system, despite significant representations by DEFENDANTS COACHILLIN, KENNETH, KATHERINE, KIRSTEN, and MICHAEL to the contrary.

129.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN, KENNETH, KIRSTEN, KATHERINE, and MICHAEL have expressly misrepresented to both Officials of the City as well as to MSWD that the parcel owners within the Development, including the PLAINTIFFS, actually desired a "privatized sewage treatment facility" to service the Development, and thus, no longer desired MSWD to engage in any further actions to provide its public utility services, all of which is patently untrue and a grave misrepresentation of the parcel owners' actual desires.   A material inducement to the PLAINTIFFS purchasing their respective parcels of land within the Development was that all domestic water and sewage provisions ultimately be provided to the PLAINTIFFS by MSWD, which was and still remains the case to this day, despite DEFENDANTS' intentional attempts to deceive the City and MSWD to believe otherwise.

130.    PLAINTIFFS are informed and believe and thereon allege that throughout the pendency of the aforementioned actions, DEFENDANTS KENNETH and WILLIAM, on behalf of themselves and all other DEFENDANTS, consistently worked with each other to conspire, scheme, and devise a plan to unlawfully cause the PLAINTIFFS, and each of them, to ultimately be financially responsible for the capital expenditures related to the common infrastructure of the Development that the DEFENDANTS were otherwise legally and contractually responsible for, as is set forth herein.

131.    PLAINTIFFS are informed and believe and thereon allege that in summation as to the sewage infrastructure that was to be developed, constructed, installed, and paid for by the DEFENDANTS, instead of building an onsite interim septic system as was continually promised

69

to the PLAINTIFFS and all of the property owners within the Development, all of which was a material inducement for each the PLAINTIFFS and/or their respective assignors purchasing their respective parcels of land within the Development, as well as to the City, MSWD, and the CRWQCB each approving the DEFENDANTS' respective permits, plans, orders, agreements, and/or the like, DEFENDANTS COACHILLIN, ENERGY, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL each believed they could unilaterally violate their permits, breach their contracts, and create a privatized, for-profit offsite sewage system, all while completely shirking their contractual and legal obligation to provide an onsite interim septic system.  As a result, DEFENDANTS COACHILLIN, ENERGY, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL have now attempted to build a permanent but non-permitted **off-site** septic system, whereby DEFENDANTS COACHILLIN, ENERGY, KENNETH, WILLIAM, KATHERINE, KIRSTEN, MICHAEL, and their respective representatives are now demanding and threatening all of the current parcel owners, including each of the PLAINTIFFS, to utilize such off-site system, all while trying to force each parcel owner, including each of the PLAINTIFFS into entering into an egregious adhesion Offsite Sewage Agreement for the use of such off-site septic system while also refusing to provide any of the current parcel owners with any information relating to the potential pricing and/or costs to be charged for their applicable use. Moreover, due to the fact that the DEFENDANTS never actually constructed an onsite septic / sewage system which could be utilized by the PLAINTIFFS, DEFENDANTS have now engaged in various "strong-arm" tactics in an effort to threaten, force, and extort the PLAINTIFFS into using the only sewage system currently available to them, which is DEFENDANTS for-profit, offsite, unpermitted sewage system.   Thus, despite all of the written obligations, promises, and representations of the DEFENDANTS, as are set forth herein and all of which induced the PLAINTIFFS to purchase their respective parcels of land in the Development and was a material basis for the City's approval of the Development as well as the CRWQCB's issuance of the Permit, the DEFENDANTS' present position, as conveyed in writing by DEFENDANT KENNETH to Ms. Mattie Cooper is readily apparent, neither he nor any of the DEFENDANTS intended to, nor

COMPLAINT FOR DAMAGES          Exh. A  Page 78

ever will, adhere to those obligations and promises and actually facilitate any interim onsite septic sewage system within the Development.

132.     PLAINTIFFS are informed and believe and thereon allege that on or about October 14, 2021, a spill/overflow of raw sewage occurred at Parcel 10 of the Development solely as a result of the DEFENDANTS' intentional, willful, and malicious actions.  As is set forth above, Parcel 10 is owned by PLAINTIFF HAPPY HOURS and PLAINTIFF HAPPY HOURS is currently in the process of attempting to finalize all of its construction efforts on its respective parcel of land within the Development.

133.     PLAINTIFFS are informed and believe and thereon allege that such spill was solely caused as a result of DEFENDANT KENNETH, on behalf of himself and the DEFENDANTS, instructing one of DEFENDANT ECOMASTER'S former employees, DEFENDANT RICKY, to go into the sewer lines and insert a large plastic plug into Parcel 10's sewage line, thereby blocking the flow of any domestic wastewater from HAPPY HOURS' sewage pipes.  In accordance with such instruction, DEFENDANT RICKY accessed Parcel 10's sewage line via the public manhole in front of HAPPY HOURS' parcel, and actually inserted a plastic plug in such sewage line, thereby blocking the flow of all domestic wastewater from HAPPY HOURS' sewage pipes and being the sole cause of the aforementioned spill.

134.     PLAINTIFFS are informed and believe and thereon allege that as previously set forth above within this Complaint, PLAINTIFF HAPPY HOURS had already retained and paid the DEFENDANTS to develop, construct, install, and connect the sewage infrastructure within its own property boundaries to the main / common sewage infrastructure within the Development.

135.     PLAINTIFFS are informed and believe and thereon allege that immediately after PLAINTIFF HAPPY HOURS' sewage line was intentionally plugged by the DEFENDANTS, the DEFENDANTS intentionally drove, placed, and parked a backhoe in the middle of the public street on top of the manhole cover that could be otherwise be used to access the aforementioned plug.  It should be noted that despite repeated requests by the PLAINTIFFS to have the plug and the backhoe removed by the DEFENDANTS, the DEFENDANTS threatened the PLAINTIFFS to not tamper or touch the sewage lines and also intentionally left this backhoe parked and in place

COMPLAINT FOR DAMAGES          Exh. A  Page 79

1   for almost four (4) weeks, all of which significantly obstructed access, including emergency access
2   and ongoing business operations throughout the Development.

3       136.    PLAINTIFFS are informed and believe and thereon allege that as a result of the
4   backflow of raw sewage caused by the DEFENDANTS' intentional and malicious actions, raw
5   sewage actually back-flowed into and within PLAINTIFF HAPPY HOURS' building upon its
6   parcel, thereby causing a trespass of waters within and resulting in significant damage to such
7   building and contents therein.

8       137.    PLAINTIFFS are informed and believe and thereon allege that since the time that
9   the DEFENDANTS intentionally plugged PLAINTIFF HAPPY HOURS' sewage line and
10  blocked access thereto, the DEFENDANTS have repeatedly demanded that PLAINTIFF HAPPY
11  HOURS enter into the proffered Offsite Sewage Agreement and pay all applicable fees thereunder,
12  including significant additional "connection fees" for the connection of their sewage line which
13  had already been paid for and connected in conjunction with such payment.   In response, time
14  and time again, PLAINTIFF HAPPY HOURS has expressly requested that the DEFENDANTS
15  provide it with necessary additional information, including without limitation, information
16  relating to the monetary rates that the DEFENDANTS will charge for the use of their privatized
17  sewage services, should HAPPY HOURS ever choose to enter into such Offsite Sewage
18  Agreement.   In response to these repeated good-faith requests for additional information and
19  relevant pricing by HAPPY HOURS, the DEFENDANTS have continually refused to provide any
20  information concerning its intended utility rates, let alone even proffering any "estimated rates."
21  Rather, the DEFENDANTS have attempted to further extort HAPPY HOURS into entering into
22  their proffered Offsite Sewage Agreement by threatening that the other parcel owners within the
23  Development will lay blame to HAPPY HOURS for "*putting all of the other operators in the park*
24  *at risk*."   Specifically, on November 2, 2021, DEFENDANT KENNETH, on behalf of himself
25  and the DEFENDANTS, sent e-mail correspondence to PLAINTIFF HAPPY HOURS threatening
26  that the other parcel owners within the Development are allegedly about to "*turn on you like rabid*
27  *dogs…This is STUPID Mattie. Really STUPID Behavior by your Team*" due to the fact that
28

COMPLAINT FOR DAMAGES

PLAINTIFF HAPPY HOURS refused to enter into the egregious Offsite Sewage Agreement and pay all such additional and substantial fees which are unlawfully attempting to be imposed therein.

138.   Additionally, PLAINTIFFS are informed and believe and thereon allege that on or about November 3, 2021, DEFENDANT KENNETH, on behalf of himself and the other DEFENDANTS, even attempted to further extort PLAINTIFF HAPPY HOURS into entering into their Offsite Sewage Agreement through additional written e-mail correspondence by continually expressly threatening HAPPY HOURS that they would not be able to obtain its Certificate of Occupancy from the City unless and until it agrees to the DEFENDANTS' non-negotiable and unilateral terms related to the DEFENDANTS' offsite sewage services, as set forth within the Offsite Sewage Agreement.   Notably, within this particular e-mail correspondence, DEFENDANT KENNETH, on behalf of himself and the DEFENDANTS, even acknowledges that the DEFENDANTS' unlawful efforts to extort HAPPY HOURS are retaliatory, in nature, due to the fact that HAPPY HOURS previously refused to provide the DEFENDANTS with additional easements over its respective parcel which KENNETH classified as not being "*excusable*."   In furtherance of this statement, KENNETH expressly informed HAPPY HOURS that "*It's too bad you continually choose to disrespect the hand that is feeding you…*"

139.   From July 28, 2016 to January 9, 2018, DEFENDANTS created and distributed numerous "project updates" in which the progress of the construction infrastructure and other issues of the Development were addressed.   While these updates included representations as to when specific aspects of the Development's infrastructure and Amenities would be completed, for the purpose of this action, it is notable that these updates failed to disclose that the Development's infrastructure would not and could not be completed anywhere close to the timelines that were previously expressly represented to the PLAINTIFFS.   Moreover, at no point in any of these updates did the DEFENDANTS ever inform any of the PLAINTIFFS of the DEFENDANTS' intention to require the PLAINTIFFS to pay for any of the Development's infrastructure projects. At no point in any of these updates did DEFENDANTS ever inform the PLAINTIFFS that there were unforeseen additional costs and expenses that the DEFENDANTS were going to attempt to burden-shift to the PLAINTIFFS and thereafter require to be paid by the PLAINTIFFS.

140.     Despite the PLAINTIFFS' understandings that each of their respective parcels of land would be improved with utilities stubbed-in, including without limitation, the sewage lines, DEFENDANTS have completely failed to adhere to such obligations, and DEFENDANTS COACHILLIN, ENERGY, KENNETH, WILLIAM, ECOMASTER, KIRSTEN, KATHERINE, and MICHAEL have schemed to create a system where they can unilaterally threaten, force, and extort the PLAINTIFFS in an attempt to recover the monies the DEFENDANTS themselves were legally obligated to dedicate to and spend on the Development of a sewage system, other utilities, and/or Amenities that were and continue to need to be part of the Development.  Unfortunately for the PLAINTIFFS and other parcel owners within the Development, the DEFENDANTS have not only failed to fulfill these obligations, but rather, have disingenuously, unlawfully, and deceptively attempted to now shift these burdens to the PLAINTIFFS and other lot owners within the Development.

141.     PLAINTIFFS are informed and believe and thereon allege that upon the DEFENDANTS completion of the development, construction, and installation of the common areas of the Development, DEFENDANTS are required to transfer and assign all rights, title, and interest thereto to the POA, at which time the POA would then assume the obligation for the maintenance and upkeep thereof.

142.     PLAINTIFFS are informed and believe and thereon allege that in or about November 2021, DEFENDANTS KENNETH, KATHERINE, KIRSTEN, MICHAEL, and WILLIAM commenced its attempts to unilaterally cause DEFENDANT POA to amend its present CC&R's, which otherwise govern the rights and interests of the property owners within the Development, to the primary benefit of the DEFENDANTS and to the extreme detriment of the property owners within the Development, including each of the PLAINTIFFS.  Specifically, the DEFENDANTS are unilaterally attempting to amend the present CC&R's in an effort to: (i) cause and/or otherwise allow DEFENDANT COACHILLIN to unlawfully gain additional control over the Development and the POA by attempting to implement a "water mutual," whereby the parcel owners would be allocated one vote per parcel owned, which would otherwise usurp the presently held rights of the other parcel owners; (ii) cause and/or otherwise allow DEFENDANT

74

COMPLAINT FOR DAMAGES          Exh. A  Page 82

COACHILLIN to negate its prior contractual obligations owed to each parcel owner, the City, and MSWD with respect to the utilities and related infrastructure, as such contractual obligations are already delineated within this Complaint, as well as those obligations imposed upon COACHILLIN pursuant to the various above-refenced Development-related permits, orders, agreements, and documents; and (iii) now attempt to recapture and/or otherwise be reimbursed by all such property owners the entirety of all such monies that the DEFENDANTS previously expended in an effort to develop, construct, and install such common infrastructure within the Development (including "*the cost of acquisition, construction and maintenance of the assets through the collection of connection fees and assessments. The "cost of construction and maintenance" of the assets by the Declarant shall include the actual cost of design, permitting and construction of the assets, including Declarant's financing and carrying costs for the assets*"), which was and continues to be the DEFENDANTS' sole and absolute responsibility, whether financial or otherwise, as well as an additional substantial ten percent (10%) "markup" to cover the DEFENDANTS "*administrative costs and the costs of construction management.*"   All such aforementioned costs and markups were never agreed to be paid and/or reimbursed by any of the PLAINTIFFS, and in fact, such current efforts by the DEFENDANTS are in direct contradiction to those promises, representations, and contractual obligations that exist between the parties.

143.    PLAINTIFFS are informed and believe and thereon allege that in addition to the aforementioned despicable actions of the DEFENDANTS, through the DEFENDANTS' unilaterally attempted amendments to the CC&R's, the DEFENDANTS are also seeking to negate the DEFENDANTS' obligation to assign and transfer all rights and interests of the water and sewage infrastructure within the Development to MSWD, all in a rather apparent concerted effort to cause each of the property owners, including each of the PLAINTIFFS, to be forced into using the DEFENDANTS privatized, yet inferior, offsite sewage treatment system, all so the DEFENDANTS can reap significant additional financial benefits, to the extreme detriment of the PLAINTIFFS.

144.    PLAINTIFFS are informed and believe and thereon allege that due, in part, to the undeniable conflicts of interest, which were brought to the attention of the DEFENDANTS and

COMPLAINT FOR DAMAGES                    Exh. A  Page 83

all other parcel owners with respect to the proposed amendment to the CC&R's, on or about December 22, 2021, the PLAINTIFFS had each vehemently objected to the DEFENDANTS' unilateral efforts to amend the CC&R's and create a water mutual.   In furtherance of these objections, nearly every other parcel owner within the Development, with the exception of the DEFENDANTS, fully concurred with such objections and opposed DEFENDANTS' unilateral efforts to: (i) form a water mutual; (ii) amend the CC&R's; and (iii) vote on such topic due to the DEFENDANTS' inherent conflicts of interest due to self-dealing and their financial benefit as a result of such amendment.  Additionally, a number of those responding to the DEFENDANTS' efforts to amend the CC&R's also inquired whether such unilateral amendments to the CC&R's had been drafted and approved by legal counsel for the POA, and if so, if such legal counsel had ever been made aware that such amendment would effectively negate a significant number of the DEFENDANTS' contractual obligations to the property owners, the City, and MSWD, all to the significant benefit of the DEFENDANTS and the extreme detriment of the property owners, including without limitation, the PLAINTIFFS.

145.    PLAINTIFFS are informed and believe and thereon allege that in response to such objections being made by the property owners, not only did the DEFENDANTS first attempt to defame the property owners making such objections, but they also had the audacity to unilaterally assert that their extremely beneficial and undeniable financial interest in unilaterally seeking such amendment to the CC&R's, despite all other property owners strenuously objecting to such amendment and formation of an unwanted water mutual, somehow did not constitute either self-dealing or a conflict of interest, and that the DEFENDANTS would continue pushing the amendment forward, as they so desired.

146.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL have and continue to use the POA as their own private enforcement arm of the Development, continually disregarding not only the rights of the property owners within the Development, but any formal procedure as otherwise required by the operative CC&R's, all to the benefit of themselves and DEFENDANTS

COMPLAINT FOR DAMAGES          Exh. A  Page 84

COACHILLIN, ECOMASTER, and ENERGY.   For example, PLAINTIFFS are informed and believe and thereon allege that the DEFENDANTS, by and through the POA:

- Unilaterally attempted to assess Special Assessments to each of the parcel owners, that were never approved by the Board of the POA, including without limitation, those assessments relating to costs incurred by the DEFENDANTS for dust mitigation measures within the Development;

- Unilaterally attempted to assess Special Assessments to each of the parcel owners that were never approved by the Board of the POA for costs relating to guard post cameras, which third-party Coachillin Technology, LLC, also charges the parcel owners for the use thereof;

- Unilaterally attempted to assess Special Assessments to PLAINTIFF HAPPY HOURS in a completely unsubstantiated and arbitrary amount of $50,000.00, which was also never approved by the Board of the POA, in relation to the aforementioned spillage of raw sewage at Parcel 10 due to DEFENDANTS' egregious and intentional conduct, of which the DEFENDANTS tried to shift the blame to HAPPY HOURS;

- Unilaterally attempted to assess Special Assessments to parcel owners in a retaliatory manner against those who denied the DEFENDANTS additional easement and property rights over their respective parcels that were never approved by the Board of the POA;

- Unilaterally attempted, without any approval of the Board of the POA, to charge the POA to pay for Common Area Maintenance fees, despite the DEFENDANTS refusing to dedicate all such common areas to the POA;

- Unilaterally entered into service agreements, without first sending out for bid and without any approval of the Board of the POA, with third-party vendors, whereby such transactions had a direct financial benefit to the DEFENDANTS;

- Unilaterally attempting to form and force upon each of the property owners a water mutual, which usurps and negates the previously agreed to transfer of the water

77

1   and sewage system to MSWD, which thereby creates a privatized infrastructure

2   system which will be solely controlled and operated by the DEFENDANTS;

3   -   Unilaterally retains DEFENDANT ECOMASTER to provide contracting services

4   within the Development, all without soliciting other third-party bids for the work,

5   and continually allowing either ECOMASTER and/or DEFENDANT

6   COACHILLIN to charge their ubiquitous "mark up" on all such fees;

7   -   Unilaterally attempting to control the funds of the POA, and in part, unlawfully

8   using such funds to pay for the personal legal services of DEFENDANTS

9   KENNETH and WILLIAM;

10  -   Unilaterally agreeing to resolve and settle debts of DEFENDANTS WILLIAM,

11  KENNETH, and the POA without any approval of the Board of the POA, all while

12  improperly using the POA'S funds to do so, thereby depleting the POA of adequate

13  funds, and thus unilaterally causing the POA to have to take an unfavorable and

14  "non-negotiable" loan from the DEFENDANTS, in a further attempt to financially

15  benefit the DEFENDANTS, while at the concurrent detriment of the other property

16  owners within the Development, including each of the PLAINTIFFS;

17  -   Unilaterally entered into agreements with legal counsel to purportedly represent

18  the POA's interest, all without any approval of the Board of the POA;

19  -   DEFENDANT KENNETH has engaged in acts to threaten physical violence upon

20  parcel owners and their designated representatives, including other members of the

21  Board of the POA.   Coincidentally, when such acts have been reported in writing

22  to the counsel retained by the DEFENDANTS purportedly to the benefit of the

23  POA, all such issues have been repeatedly ignored and/or "swept under the rug" in

24  an effort to protect the DEFENDANTS and to the detriment of the integrity of the

25  POA;

26  -   Unilaterally retaining employees of the other DEFENDANTS to purportedly

27  maintain the financial records of the POA, without any independent oversight

28  and/or auditing capabilities;

COMPLAINT FOR DAMAGES          Exh. A  Page 86

1     -     In blatant disregard of procedure or proper formality of the Bylaws of the POA,

2          DEFENDANT KENNETH often refers to his purported authority as he "is the

3          Board" and that he has no necessity to seek the approval of others (i.e. The Board)

4          when attempting to make decisions on behalf of the POA, all while simultaneously

5          benefitting himself and the other DEFENDANTS;

6     -     Consistently comingling the interests of the POA with DEFENDANTS own self

7          interests

8     147.    As is set forth and is established herein, PLAINTIFFS are informed and believe

9 and thereon allege that prior to each of them entering into each of their respective PSAs with the

10 DEFENDANTS, and closing upon the purchase and sale of their respective parcels of land within

11 the Development, the DEFENDANTS made various written and oral express representations to

12 each of the Plaintiffs concerning the development, construction, and implementation of the

13 electrical infrastructure, including timelines and the parties' requisite responsibilities and

14 obligations relating thereto.  For example, prior to each of the PLAINTIFFS purchasing their

15 respective parcels of land within the Development, it was expressly represented by the

16 DEFENDANTS to each of the PLAINTIFFS that their parcels of land would have access to and

17 would be able to use electricity by no later than a certain point in time.  Specifically, as is set forth

18 above, the representatives of PLAINTIFFS HAPPY HOURS and LOT 11 were expressly

19 informed that electrical power would be available at their specific parcels by no later than the end

20 of the first quarter of 2018.  In fact, when the DEFENDANTS were even questioned as to the

21 possibility of there being any delay in the delivery of power to such lots, DEFENDANT

22 KATHERINE on behalf of herself and the other DEFENDANTS expressly represented, in

23 writing, that they disputed any such concerns, that they were not concerned about any such issues,

24 and that power would be delivered, as promised.  Moreover, as is set forth above, the

25 representatives of PLAINTIFF MOON LEV were expressly informed that electrical power was

26 expected to be available at their specific parcel by the end of January 2018, but would definitively

27 be available by no later than the end of February 2018.  At all times, the DEFENDANTS expressly

28 represented to each of the PLAINTIFFS that SCE supposedly had a "duty to deliver" the power

COMPLAINT FOR DAMAGES     Exh. A  Page 87

to the Development upon the DEFENDANTS' demand.  Despite all such representations to each of the PLAINTIFFS, which were material and inducing to the PLAINTIFFS in making their decision to purchase their respective parcels of land within the Development, electrical power was not delivered to each of the respective parcels of the PLAINTIFFS until years after the time that it was originally promised to each of the PLAINTIFFS.

148.    PLAINTIFFS are informed and believe and thereon allege that on or about June 13, 2017, DEFENDANT MICHAEL, on behalf of himself and other DEFENDANTS sent an e-mail to the California Department of Food and Agriculture regarding proposed cannabis-related regulations.   Copied on this e-mail was DEFENDANTS KENNETH and KATHERINE.  Within such e-mail, DEFENDANT MICHAEL expressly states: "*In summary, if your proposals are passed then our project will be severely reduced and delayed as **the utility has ALREADY forecast that they can't address our demand for power for at least 5 years*.**" (Emphasis added). As such, DEFENDANTS all had intricate knowledge of and were well aware that SCE would not be able to meet the power demands of the Development for at least five (5) years, as was expressly asserted by MICHAEL to the Department of Food and Agriculture; however, all such information has always been intentionally concealed, withheld, and/or otherwise kept secret by the DEFENDANTS from any of the PLAINTIFFS and/or their respective assignors.

149.    PLAINTIFFS are informed and believe and thereon allege that on or about October 13, 2017, SCE held a meeting to address various electrical power demands being made within the Coachella Valley, where the Development was located.  PLAINTIFFS are informed and believe and thereon allege that this meeting was attended by DEFENDANTS and their exclusive listing agent, Ms. Paula Turner, wherein SCE specifically informed the DEFENDANTS and Ms. Turner of SCE's inability to provide the power the Development was requesting for approximately five years from that point in time.

150.    PLAINTIFFS are informed and believe and thereon allege that knowing of such electrical power issues affecting the Development, on or about October 31, 2017, Ms. Turner sent e-mail correspondence to DEFENDANT KENNETH addressing the power issue at the Development.  Specifically, Ms. Turner asserted to DEFENDANT KENNETH, "*Fyi. I have*

COMPLAINT FOR DAMAGES

*several that are deciding to wait on Coachillin. When I ask why they are concerned about when the utilities are coming. I have a feeling rumors are spreading again...*" In furtherance of this correspondence, DEFENDANT KENNETH then sent an e-mail on that same date to DEFENDANT WILLIAM, acknowledging the electrical power deficiency issue and related rumors, and scrambling to find a temporary generator / power solution, which, in desperation, he asserted he located out of South Korea.

151.   PLAINTIFFS are informed and believe and thereon allege that in light of the DEFENDANTS knowledge that potential purchasers were declining overtures to purchase land within the Development and despite being expressly knowledgeable that SCE was unable to actually deliver any electrical power to the Development for at least several years, out of desperation to actually sell parcels of land within the Development, DEFENDANTS intentionally and knowingly engaged in efforts to covet and conceal the true and actual information, and instead, were continuously making material misrepresentations to each of the PLAINTIFFS that electrical power would be delivered to the Development within the aforementioned timelines. PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS knew at all times they were making all such representations that not only were such representations false, misleading, and fraudulent, but that such applicable timeframes for electrical power to be delivered to the Development were actually impossible.

152.   PLAINTIFFS are informed and believe and thereon allege that in addition to the DEFENDANTS material misrepresentations about the timelines of when electrical power would be delivered to the Development, DEFENDANTS also made a number of material misrepresentations to the PLAINTIFFS about DEFENDANTS having previously negotiated and secured "agricultural rates" to be charged by SCE to each of the parcel owners within the Development, all of which the DEFENDANTS represented would serve as a substantial cost savings to each of the parcel owners, including the PLAINTIFFS. Just as with the numerous other misrepresentations that were made by the DEFENDANTS, to this very date, no such substantial cost savings through "agricultural power rates," as expressly promised by the DEFENDANTS, has ever been realized by any of the PLAINTIFFS. Notably, said representations by the

81

DEFENDANTS concerning agricultural power rates and the purported cost savings related thereto was a material inducement for each of the PLAINTIFFS to enter into their respective PSAs with the DEFENDANTS, and thereafter close upon the purchase of each of their respective parcels of land within the Development.

153.    PLAINTIFFS are informed and believe and thereon allege that as is set forth above, prior to each of the PLAINTIFFS' purchase of their respective parcels of land within the Development, it was expressly represented by the DEFENDANTS, both orally and in writing, that the Development would include various Amenities to be utilized by the parcel owners within the Development, including the PLAINTIFFS, each of which would be fully completed within the Development well before the time that each of the PLAINTIFFS would be able to complete the development and construction of all improvements upon and within their respective parcels.   For example, PLAINTIFFS are informed and believe and thereon allege that on or about December 9, 2017, DEFENDANT KENNETH expressly represented, in writing, that all of the Amenities of the Development would be completed and opened by "*June / July*" 2018.    Moreover, DEFENDANTS' written advertisements that were in existence prior to any of the PLAINTIFFS purchasing their respective parcels of land within the Development also asserted certain Amenities, such as the private club and the laboratory facility had already been "leased" and such development was imminent.  Despite all such material misrepresentations by the DEFENDANTS, to date, none of these Amenities have ever even been constructed by or on behalf of any of the DEFENDANTS.    Said representations by the DEFENDANTS concerning all of the Development's Amenities, including the purported timelines for which each such Amenity would be completed within the Development was a material inducement for each of the PLAINTIFFS to enter into their respective PSAs with the DEFENDANTS, and thereafter close upon the purchase of each of their respective parcels of land within the Development.

154.    PLAINTIFFS are informed and believe and thereon allege that as is set forth above, prior to each of the PLAINTIFFS' purchase of their respective parcels of land within the Development, it was expressly represented by the DEFENDANTS that the Development would include free community overflow parking for each of the parcel owners within the Development

to utilize.  This was an important factor for each of the PLAINTIFFS as they wanted to ensure that as their businesses grew, that there would always be adequate parking for any and all of their business functions within the Development.  This overflow free community parking that was promised to be made available by the DEFENDANTS to the PLAINTIFFS was a material inducement for each of the PLANTIFFS to enter into their respective PSAs with the DEFENDANTS, and thereafter close upon the purchase of each of their respective parcels of land within the Development.  However, just as with many other promises and misrepresentations made by the DEFENDANTS concerning the Development as is set forth herein, to date, not only has no free community parking ever been established, but instead, the DEFENDANTS have again bait-and-switched the PLAINTIFFS, and the DEFENDANTS have now proposed a "pay-for" parking system within the Development.

155.    PLAINTIFFS are informed and believe and thereon allege that due to the aforementioned acts of prior and continuing despicable conduct and actions of the DEFENDANTS, including additional permit violations, outright violations of laws and regulations, as well as other dilatory and despicable conduct, PLAINTIFFS' parcels within the Development have been harmed and continue to remain in grave jeopardy, especially if the DEFEDANTS' unlawful conduct is allowed to persist.   Specifically, PLAINTIFFS have significant concern that their attempts to continually engage in legal business operations will continue to be harmed and will ultimately be significantly impacted due to the DEFENDANTS, and each of their, continuing bad acts and violations of law, all in an effort by the DEFEDANTS, and each of them, to operate the Development as they choose, with little to no regard for laws, rules, regulations, or others.

156.    PLAINTIFFS are informed and believe and thereon allege that one of the services that the DEFENDANTS had represented to each of the PLAINTIFFS to be offered by the DEFENDANTS at the Development, so that the Development would be an all-inclusive "canna-business-based park," was the DEFENDANTS' ability to legally dispose of all of the parcel owners' cannabis wastewater.  Based upon such representations, PLAINTIFF MOON LEV hired DEFENDANT COACHILLIN to pump its onsite cannabis wastewater holding tanks.  As a result,

on or about September 23, 2020, a wastewater truck, which PLAINTIFFS believe was and is owned and operated by DEFENDANT ECOMASTER, arrived at Lot 12 to pump approximately 1,600 – 1,800 gallons of cannabis wastewater out of PLAINTIFF MOON LEV'S onsite cannabis-wastewater holding tank.  At the time of DEFENDANTS' pumping the cannabis wastewater out of the onsite holding tank, Mr. Joe Wall, an authorized representative who was present upon Lot 12 at this time personally observed the DEFENDANTS' actions with respect to the taking, handling, and purported disposal of this cannabis wastewater.  During DEFENDANTS' "efforts" to pump the wastewater out of the onsite holding tank, Mr. Wall personally observed that the DEFENDANTS' wastewater truck was already significantly leaking such used cannabis wastewater and thereby allowed such cannabis wastewater to be unlawfully discharged on to the ground.   After observing the significant leaking and spillage of cannabis wastewater being caused by the DEFENDANTS, Mr. Wall followed the wastewater truck within the Development.  To Mr. Wall's surprise, the DEFENDANTS' wastewater truck never left the Development.  Instead, the wastewater truck merely just drove several parcels over to Parcel No. 36 within the Development, which is believed by the PLAINTIFFS to be owned by DEFENDANTS COACHILLIN, KENNETH, and WILLIAM, pulled up onto the middle of such undeveloped dirt lot, and subsequently opened its truck's holding container, all in an intentional effort to illegally dump and/or dispose of such cannabis wastewater directly onto the dirt ground.  As a result, PLAINTIFFS are informed and believe and thereon allege that all of this cannabis wastewater was directly absorbed into the undeveloped dirt ground.   Such intentional act by the DEFENDANTS is not only believed by the PLAINTIFFS to be illegal and in violation of the Development's development-related documents, as have been identified above,  but such acts are also believed to be extremely detrimental to local environmental conditions and can have grave consequences for each of the PLAINTIFFS and their related property within the Development.

157.   Similar to the DEFENDANTS' intentional unlawful dumping and disposal of cannabis wastewater upon open lands within the Development, PLAINTIFFS are informed and believe and thereon allege that a third-party parcel owner within the Development has also been unlawfully granted the right and ability by the DEFENDANTS to illegally dump used / fertilized

COMPLAINT FOR DAMAGES          Exh. A  Page 92

cannabis soil onto a neighboring lot, located outside of and adjacent to the Development, which is also believed to be owned, maintained, and/or otherwise controlled by KENNETH, WILLIAM, and/or the other DEFENDANTS.  PLAINTIFFS are informed and believe and thereon allege that the lot where the DEFENDANTS are allowing the unlawful dumping and disposal of used / fertilized cannabis soil is the same area of land where COACHILLIN, ENERGY, KENNETH, WILLIAM, and/or other DEFENDANTS are unlawfully operating their unpermitted **OFFSITE** sewage treatment plant.  Specifically, PLAINTIFFS are informed and believe, and thereon allege that Holland Hydroponics USA, LLC, the operator of a separate and distinct parcel within the Development, has been unlawfully granted the ability to illegally dump and dispose of their used / fertilized cannabis soil upon the DEFENDANTS' neighboring land.   Moreover, PLAINTIFFS are informed and believe and thereon allege that Holland Hydroponics USA, LLC, have shared a uniquely close relationship with the DEFENDANTS, as Holland Hydroponics has also shared the same office space with the DEFENDANTS (at the same address) and Holland Hydroponics USA, LLC has even been recommended and retained as a subcontractor by the DEFENDANTS for various construction-related projects within the Development.   Such intentional act by the DEFENDANTS is not only believed by the PLAINTIFFS to be illegal and in violation of the Development's development-related documents, as have been identified above,  but such acts are also believed to be extremely detrimental to local environmental conditions and can have grave consequences for each of the PLAINTIFFS and their related property within the Development.

158.     Due to DEFENDANTS unlawful, egregious, conspiring, and fraudulent conduct, the PLAINTIFFS, and each of them, have been irreparably harmed, and the value of each of the PLAINTIFFS' properties has been significantly diminished, and have become unmarketable.  As such, PLAINTIFFS, and each of them, have been irreparably harmed by DEFENDANTS' conduct as alleged herein.

159.     PLAINTIFFS are informed and believe and thereon allege that on or about February 8, 2022, DEFENDANTS KATHERINE, KENNETH, and the POA hosted a telephonic meeting between said DEFENDANTS and all such parcel owners within the Development, including without limitation each of the PLAINTIFFS.  Said telephonic meeting was recorded by

DEFENDANTS KATHERINE, KENNETH, and the POA, and thereafter willingly distributed by said DEFENDANTS to others.

160.    PLAINTIFFS are informed and believe and thereon allege that during said above-referenced telephonic meeting, DEFENDANTS KATHERINE and KENNETH, on behalf of themselves as well as on behalf of DEFENDANTS COACHILLIN and ENERGY each discussed a variety of issues concerning the Development as well as each of the PLAINTIFFS' respective parcels of land located therein, including without limitation, those significant "connection fees" which the DEFENDANTS are and continue to unilaterally and unlawfully attempt to charge and extort the PLAINTIFFS into paying to the DEFENDANTS, as is set forth herein.  For example, during said telephonic meeting, it was expressly represented and confirmed by DEFENDANTS KENNETH and KATHERINE as well as by third-party attorney Glen W. Price, Esq. who the PLAINTIFFS each believe is an attorney for DEFENDANT COACHILLIN, that DEFENDANT ENERGY's continued attempts to unilaterally charge all parcel owners within the Development, including to each of the PLAINTIFFS, all such significant additional demanded "connection fees" by and through the Offsite Sewage Agreement is solely to *"reimburse [DEFENDANT] COACHILLIN for [costs associated with the construction of utility] 'stub-in' connections."* PLAINTIFFS are informed and believe and thereon allege that during said telephonic meeting, DEFENDANTS KENNETH and KATHERINE, on behalf of themselves, as well as the other DEFENDANTS, expressly represented to each of the parcel owners within the Development, including to each of the PLAITNIFFS, that the utility "stub-ins" which DEFENDANT ENERGY has been and is continuing to unilterally attempt to charge significant "connection fees" for are only those "stub-ins" which connect the infrastructure from within each respective parcel within the Development to the Development's main utility infrastructure.  As is already set forth and established herein, PLAINTIFFS are informed and believe and thereon allege that pursuant to each of their respective parcel Purchase and Sale Agreements, it was expressly represented and agreed to by the DEFENDANTS that *"The lot to be purchased by [each of the PLAINTIFFS]…shall have electricity, domestic water, sewer, cable, and gas **STUBBED IN TO**…"* each respective lot.  As such, PLAINTIFFS are informed and believe and thereon allege

COMPLAINT FOR DAMAGES                    Exh. A  Page 94

that pursuant to the DEFENDANTS' own express representations, as are set forth herein, not only was DEFENDANT COACHILLIN contractually obligated for all such costs associated with the development, construction, and installation of all such utility "stub-ins," but DEFENDANTS are now unlawfully attempting to disregard those obligations which they already expressly agreed to and are also attempting to unilaterally alter their respective contractual obligations owed to each of the PLAINTIFFS and thereby force and/or otherwise extort each of the PLAINTIFFS into paying DEFENDANT ENERGY significant "connection fees" in order to *"reimburse [DEFENDANT] COACHILLIN for [its costs associated with the construction of the very utility] 'stub-in' connections"* despite DEFENDANT COACHILLIN already being contractually obligated to incur and fully pay for all such costs and fees.

161.   PLAINTIFFS are informed and believe and thereon allege that despite DEFENDANTS KENNETH and KATHERINE, as well as third-party attorney Glen W. Price, Esq. expressly representing on multiple occasions during the above-referenced telephonic meeting to each of the parcel owners within the Development, including to each of the PLAINTIFFS, that such significant "connection fees" which are and continue to be forced upon each of the PLAINTIFFS by the DEFENDANTS are solely to reimburse DEFENDANT COACHILLIN for all of its costs actually incurred in connection with the construction and installation of such utility "stub-in" connections for each of the PLAINTIFFS' respective parcels of land, during such telephonic meeting, DEFENDANT KENNETH actually expressly admitted and confirmed to each of the PLAINTIFFS that as of the date of the parties' respective telephonic meeting, none of the DEFENDANTS have even *"broken out"* and/or otherwise calculated any of the costs actually incurred by any of the DEFENDANTS in connection with any such construction and installation of any utility "stub-in" connections for any parcels of land within the Development, including those parcels which are owned by each of the PLAINTIFFS. PLAINTIFFS are informed and believe and thereon allege during such telephonic meeting, DEFENDANT KENNETH, on behalf of the other DEFENDANTS, expressly represented to each of the parcel owners, including to each of the PLAINTIFFS, that the total costs incurred by any of the DEFENDANTS in connection with the development, construction, and installation of all

COMPLAINT FOR DAMAGES

such "main backbone infrastructure" for the entire Development was approximately $781,000.00. As such, PLAINTIFFS are informed and believe and thereon allege that by the DEFENDANTS now attempting to unilaterally and unlawfully force each of the parcel owners within the Development, including each of the PLAINTIFFS, to pay substantial additional "connection fees" in a monetary amount which DEFENDANT KENNETH has already admitted is not even based upon any sort of actual tabulation of costs actually incurred by any of the DEFENDANTS in connection with the construction and installation of such utility "stub-ins," DEFENDANTS are actually attempting to somehow represent that the costs supposedly borne by the DEFENDANTS in connection with the construction and installation of such utility "stub-ins," is supposedly more than four (4) times the monetary amount of those costs represented to be actually borne by any of the DEFENDANTS in connection with the development, construction, and installation of the entirety of all such "main backbone infrastructure" for the Development. Again, pursuant to each of the PLAINTIFFS' respective Purchase and Sale Agreements, DEFENDANT COACHILLIN was and continues to be contractually obligated to pay for all of those very fees and/or other costs which the DEFENDANTS are now unlawfully attempting to force and extort the PLAINTIFFS to pay.

162.   As is previously set forth and established herein, it was a material inducement to each of the PLAINTIFFS in determining to purchase their respective parcels of land within the Development that all domestic water and sewage provisions of the Development would ultimately be provided to the PLAINTIFFS by MSWD.  As is also previously set forth and established herein, PLAINTIFFS are informed and believe and thereon allege that the DEFENDANTS have and continue to unilaterally engage in substantial efforts to form an independent and stand-alone water mutual and amend the CC&R's, in part, due to the DEFENDANTS unilaterally seeking to negate their obligations to assign and transfer all rights and interests of the water and sewage infrastructure within the Development to MSWD, as the DEFENDANTS are presently required to do.  PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS' conduct is a rather apparent concerted effort to cause each of the property owners within the Development, including each of the PLAINTIFFS, to be forced

COMPLAINT FOR DAMAGES     Exh. A  Page 96

into using the DEFENDANTS' privatized, yet inferior, offsite sewage treatment system, all so that the DEFENDANTS can reap significant additional financial benefits that they are otherwise not entitled to, all to the extreme detriment of the PLAINTIFFS.

163.   PLAINTIFFS are informed and believe and thereon allege that in or about January 2022, MSWD commenced its development and construction efforts in building its regional utility plant that will be used to serve the Development upon the completion of such regional utility plant which is presently scheduled to be completed in 2023.  In furtherance of the foregoing, PLAINTIFFS are informed and believe and thereon allege that on or about February 8, 2022 at approximately 6:11 a.m., Ms. Paula Turner, the exclusive real estate listing agent for the Development, on behalf of the DEFENDANTS, expressly informed and confirmed to a representative of the PLAINTIFFS, via electronic mail correspondence, that she and the DEFENDANTS had been informed by MSWD that it had indeed already commenced its development and construction efforts in building its regional utility plant that will be used to serve the Development on January 21, 2022 and that construction on said regional utility plant was scheduled to be concluded by the third quarter of 2023.  Despite the foregoing, PLAINTIFFS are informed and believe and thereon allege that during the parties above-referenced telephonic meeting which took place on February 8, 2022, only a few hours after the aforementioned electronic mail correspondence being sent on behalf of the DEFENDANTS by their exclusive real estate agent, DEFENDANT KENNETH on behalf of himself and the other DEFENDANTS intentionally and fraudulently made various disingenuous representations to each of the property owners within the Development, including to each of the PLAINTIFFS, concerning the present status of MSWD's overall development and construction efforts of its regional utility plant, all in a further effort to falsely induce the property owners into agreeing to move forward with the DEFENDANTS' proffered water mutual.   For example, DEFENDANT KENNETH disingenuously represented that as of the date of the parties telephonic meeting, not only had MSWD failed to raise the necessary monies to even develop and build its intended regional utility plant, but that he also supposedly travels to the very location where MSWD is supposed to be developing and constructing its regional utility plant *every single day of the week,*" and that he

COMPLAINT FOR DAMAGES          Exh. A  Page 97

can supposedly confirm that MSWD had not even commenced its development and construction efforts of its regional utility plant.  Moreover, DEFENDANT KENNETH further disingenuously represented to each of the property owners, including to each of the PLAINTIFFS, that it would actually be *"a physical impossibility"* for MSWD to complete its development and construction efforts upon its regional utility plant by 2023.

164.   PLAINTIFFS are informed and believe and thereon allege that despite the DEFENDANTS' prior material representations to each of the PLAINTIFFS that all such rights and interests of the water and sewage infrastructure within the Development would be assigned and transferred to MSWD, as is set forth herein, during the parties- above-referenced telephonic meeting on February 8, 2022, DEFENDANT KENNETH on behalf of himself as well as the other DEFENDANTS further represented to each of the property owners, including each of the PLAINTIFFS, that such water and sewage infrastructure within the Development will not even be assigned and transferred to MSWD unless and until such time that MSWD will also now agree to take on the additional obligation to accept each of the parcel owners' respective cannabis wastewater from the same infrastructure piping as such parcel owners' domestic wastewater, which according to DEFENDANT KENNETH, will likely never happen.

165.   PLAINTIFFS are informed and believe and thereon allege that in addition to the DEFENDANTS intentionally and yet unlawfully dumping and/or disposing of cannabis wastewater directly within the Development, as is previously set forth herein, during the parties above-referenced telephonic meeting on February 8, 2022, DEFENDANT KENNETH on behalf of himself and the other DEFENDANTS, further expressly represented and admitted to each of the parcel owners, including each of the PLAINTIFFS, that he and the other DEFENDANTS have and continue to intentionally capture the used and contaminated cannabis wastewater from the businesses operating from within Parcel 33 of the Development, which the PLAINTIFFS believe to be owned and managed by DEFENDANTS KENNETH, WILLIAM, and COACHILLIN, and then the DEFENDANTS intentionally, and yet unlawfully, dispose of such captured cannabis wastewater by spraying and/or otherwise dumping such contaminated cannabis wastewater onto the landscaping within the Development, onto the roads within the

Exh. A  Page 98

Development, as well as on the undeveloped areas within the Development and the adjacent lot of land which is also owned by DEFENDANTS KENNETH, WILLIAM, and COACHILLIN where the OWTDS is located.  PLAINTIFFS are informed and believe and thereon allege that such intentional acts by the DEFENDANTS are not only believed by the PLAINTIFFS to be illegal and in further violation of the Development's development-related documents, as have been identified above, but such acts are also believed to be extremely detrimental to local environmental conditions and can have grave consequences for each of the PLAINTIFFS and their related property within the Development, as well as the local community as a whole should such contaminated and unlawfully disposed of cannabis waste ever infiltrate the local ground water wells.

166.   PLAINTIFFS are informed and believe and thereon allege that on or about November 22, 2021, each of them, through their respective undersigned Counsel of Record, attempted to inquire from the DEFENDANTS if they would be willing to engage in the mediation process in an effort to mediate all such issues and disputes set forth within this Complaint. PLAINTIFFS are informed and believe and thereon allege that on or about December 3, 2021, counsel for the DEFENDANTS delivered written correspondence to PLAINTIFFS' Counsel of Record, wherein DEFENDANTS' counsel represented that DEFENDANTS were not interested in participating in traditional forms of mediation and that only DEFENDANT KENNETH would be willing to meet with the PLAINTIFFS, but only if the PLAINTIFFS agree to an informal meeting between themselves and DEFENDANT KENNETH without the PLAINTIFFS' legal counsel, and thus, DEFENDANT KENNETH, knowing that each such party is represented by legal counsel, unilaterally attempted to cause each such PLAINTIFF to agree to meet with him, without their legal counsel, and in an informal setting which did not include mediation.  As such, it is PLAINTIFFS' understanding that despite each of the PLAINTIFFS efforts to the contrary, the DEFENDANTS refused to properly engage in any such mediation procedures concerning the dispute and issues set forth within this Complaint.

///

///

91

COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIRST CAUSE OF ACTION

### Breach of Contract

All PLAINTIFFS against DEFENDANT COACHILLIN and DOES 1 through 50, Inclusive

167. PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 166, inclusive, as if the same were fully set forth herein.

168. PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that on or about February 16, 2018, and in reliance of all of the DEFENDANTS' above-referenced material representations, the written Parcel 10 PSA was initially entered into by DEFENDANT KENNETH on behalf of DEFENDANT COACHILLIN and SRL Investments, LLC and/or its assignee for the purchase of land commonly known as "Parcel 17" within the Development.  As is set forth above, prior to the closing of this respective transaction, SRL Investments, LLC and DEFENDANT COACHILLIN expressly agreed to amend the written Parcel 10 PSA and thereafter cause said written agreement to be for the purchase of land commonly known as "Parcel 10" within the Development as well as cause the purchase of said Parcel 10 to be completed by the assignee of SRL Investments, LLC; namely, PLAINTIFF HAPPY HOURS.

169. PLAINTIFF LOT 11 is informed and believes and thereon alleges that on or about January 26, 2018, and in reliance of all of the DEFENDANTS' above-referenced material representations, the written Parcel 11 PSA was initially entered into by DEFENDANT KENNETH on behalf of DEFENDANT COACHILLIN and Mr. Paul Jacobson and/or assignee for the purchase of land commonly known as "Parcel 11" within the Development.  As is set forth above, prior to the closing of this respective transaction, Mr. Jacobson and DEFENDANT COACHILLIN expressly agreed to amend the written Parcel 11 PSA to thereafter cause the purchase of Parcel 11 to be completed by the assignee of Mr. Jacobson; namely, VBHS Investments, LLC, who subsequently assigned all rights, title, and interests relating to Parcel 11 to PLAINTIFF LOT 11, a business entity whose ownership structure was and continues to be substantially similar to that of VBHS Investments, LLC.

///

92

170.   PLAINTIFF MOON LEV is informed and believes and thereon alleges that on or about November 27, 2017, and in reliance of all of the DEFENDANTS' above-referenced material representations, DEFENDANT KENNETH on behalf of DEFENDANT COACHILLIN and PLAINTIFF MOON LEV entered into the written Parcel 12 PSA for the purchase of land commonly known as "Parcel 12" within the Development.

171.   PLAINTIFFS are informed and believe and thereon allege that pursuant to their respective written *Vacant Land Purchase Agreements*; namely, the Parcel 10 PSA, Parcel 11 PSA, and Parcel 12 PSA, the PLAINTIFFS and DEFENDANT COACHILLIN expressly agreed that various obligations would be imposed upon them in conjunction with the purchase and sale of the PLAINTIFFS' respective parcels of land within the Development.  For example, as is previously set forth herein, pursuant to the above-referenced *Vacant Land Purchase Agreements*, each of the PLAINTIFFS and/or their respective assignors agreed that they would be obligated to render to DEFENDANT COACHILLIN, upon the closing of each respective transaction, the applicable agreed-upon purchase prices for each of the parties' respective purchases of parcels of land within the Development, which all such obligations have been fully satisfied. Additionally, pursuant to the above-referenced *Vacant Land Purchase Agreements*, DEFENDANT COACHILLIN also expressly agreed to be obligated, whether financially or otherwise, to the PLAINTIFFS and/or their respective assignors in connection with engaging in various actions, obligations, and/or other commitments concerning each such applicable parcel of land, as is already expressly set forth within each of the above-referenced *Vacant Land Purchase Agreements* and which is already set forth and established herein.

172.   PLAINTIFFS are informed and believe and thereon allege that they and/or their respective assignors have already performed and/or otherwise complied with the terms, conditions, and obligations of their respective *Vacant Land Purchase Agreements* with DEFENDANT COACHILLIN which were imposed upon them.

173.   PLAINTIFFS are informed and believe and thereon allege that by and through the conduct, actions, and/or inactions of the DEFENDANTS, as are set forth within this Complaint, DEFENDANT COACHILLIN has failed to perform its above-referenced and agreed-upon

93

contractual obligations, and thus, has breached and is continuing to breach the parties' respective *Vacant Land Purchase Agreements*, all to the significant damage and detriment of each of the PLAINTIFFS.

174.   PLAINTIFFS are informed and believe and thereon allege that DEFENDANT COACHILLIN, with the knowledge of, assistance of, and at the direction of DEFENDANTS KENNETH, KATHERINE, WILLIAM, and MICHAEL, as is set forth herein, has breached and is continuing to breach each of the parties' respective *Vacant Land Purchase Agreements* by failing and/or otherwise intentionally refusing to adhere to and/or otherwise fulfill its obligations pursuant to each of the parties' respective *Vacant Land Purchase Agreements*, failing to abide by the agreed-upon terms and conditions of said respective *Vacant Land Purchase Agreements*, intentionally attempting to unilaterally usurp and change the terms, conditions, and obligations of the parties' pursuant to such *Vacant Land Purchase Agreements*, intentionally attempting to unilaterally change and increase the overall monies and other costs to be borne by each of the PLAINTIFFS pursuant to the parties' respective *Vacant Land Purchase Agreements*, unilaterally acting outside of the scope of the terms and conditions of the parties' respective *Vacant Land Purchase Agreements*, all without any express approval and/or authority by any of the PLAINTIFFS, and unilaterally attempting to charge each of the PLAINTIFFS substantial additional fees and/or other costs which were never agreed-upon by any of the PLAINTIFFS. PLAINTIFFS are informed and believe and thereon allege that at no time did DEFENDANT COACHILLIN have a legal excuse and/or justification for failing to fulfill its above-referenced contractual obligations and/or otherwise engaging in those actions and/or inactions as are set forth within this Complaint.

175.   PLAINTIFFS are informed and believe and thereon allege that by and through the conduct, actions, and/or inactions of DEFENDANT COACHILLIN, as alleged herein, DEFENDANT COACHILLIN has breached and is continuing to breach the parties' respective *Vacant Land Purchase Agreements*, all to the significant damage and detriment of each of the PLAINTIFFS.

///

COMPLAINT FOR DAMAGES          Exh. A  Page 102

176.    PLAINTIFFS are informed and believe and hereon allege that as a direct and proximate result of DEFENDANT COACHILLIN'S conduct, actions, and/or inactions in breaching and continuing to breach the parties' respective *Vacant Land Purchase Agreements*, as is set forth and established within this Complaint, each of the PLAINTIFFS were caused and continue to be caused to be harmed and have suffered significant damages in a sum according to proof at the time of trial, but which is in excess of this Court's minimum jurisdictional amount.

177.    PLAINTIFFS are informed and believe and thereon allege that the willful, intentional, deliberate, reckless, and other unlawful conduct of DEFENDANT COACHILLIN, as delineated herein, was and continues to be a breach of its contractual obligations which are owed to each of the PLAINTIFFS, and at all times, each of the PLAINTIFFS were and continue to be harmed.   Consequently, PLAINTIFFS are each entitled to general and compensatory damages against DEFENDANT COACHILLIN in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.

178.    PLAINTIFFS are informed and believe and thereon allege that pursuant to California Civil Code, Section 1717(a), each of the PLAINTIFFS are further entitled to a recovery of all of their respective attorneys' fees and related costs due to DEFENDANT COACHILLIN'S various breaches and continued breaches of the parties' respective *Vacant Land Purchase Agreements* on account of the fact that each such respective *Vacant Land Purchase Agreement* specifically entitles PLAINTIFFS to a recovery of such fees and related costs in the event that a legal action is commenced which arises out of the parties' respective *Vacant Land Purchase Agreements*.

## SECOND CAUSE OF ACTION

### Breach of CC&RS

All PLAINTIFFS against DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, KIRSTEN and DOES 1 through 50, Inclusive

179.    PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 178, inclusive, as if the same were fully set forth herein.

COMPLAINT FOR DAMAGES          Exh. A  Page 103

180.     As is set forth herein, at the time that each of the PLAINTIFFS and/or their respective assignors entered into their respective *Vacant Land Purchase Agreements* and closed upon the respective transactions relating thereto, PLAINTIFFS and/or their respective assignors each understood that the Development, including each of their respective parcels of land therein, would be governed pursuant to the initial CC&R's, which have since been amended and superseded by the present CC&R's.

181.     PLAINTIFFS have each performed all of the conditions, covenants, obligations, and/or other promises required of them under the CC&R's, except for those which have been waived, excused, and/or rendered impossible by the conduct, acts, or inactions of DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, and KIRSTEN.

182.     PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, and KIRSTEN have breached and continue to breach and violate the terms and conditions of the CC&R's which govern the Development, including without limitation, by levying assessments and fees on all parcel owners located therein, including upon each of the PLAINTIFFS, all in an effort to fund DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S construction of Initial Common Infrastructure, as well as Common Area Expenses, as is set forth within this Complaint.  Further, PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, and KIRSTEN have and continue to breach and violate the CC&R's by attempting to levy impermissible and improper assessments and fees upon all lot owners, including each of the PLAINTIFFS for the DEFENDANTS' own personal expenses and benefits, including without limitation, those expenses relating to such DEFENDANTS' dust mitigation measures within the Development, legal fees related to such DEFENDANTS' own personal matters, as well as the DEFENDANTS' self-dealing and interested transactions, all as is set forth herein.  Moreover, DEFENDANT POA, as well as DEFENDANTS KIRSTEN and KATHERINE, as managing agents of the POA, have further breached and violated the CC&R's by permitting, agreeing, and acquiescing in DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S efforts to so dominate and control the

CC&R's such that the POA was derelict in its duties to manage and enforce the CC&R's, and thereby allowed DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to treat the Development as their own, engage in self-dealing and self-interested transactions, and act in disregard for the other members of the POA, including each of the PLAINTIFFS.

183.   As a direct and proximate result of DEFENDANTS POA'S, COACHILLIN'S, KENNETH'S, WILLIAM'S, KATHERINE'S, and KIRSTEN'S conduct, actions, and/or inactions in breaching and violating the CC&R's, as is set forth and established within this Complaint, each of the PLAINTIFFS were caused and continue to be caused to be harmed and have suffered damages in a sum in an amount according to proof at the time of trial, but which is in excess of this Court's minimal jurisdictional amount. Additionally, PLAINTIFFS are informed and believe and thereon allege that due to the respective DEFENDANTS breach of the CC&Rs, as is set forth within this Complaint, said CC&Rs specifically entitle each of the PLAINTIFFS to a recovery of all of their respective attorneys' fees and related costs.

## **THIRD CAUSE OF ACTION**

### **Breach of Fiduciary Duty**

All PLAINTIFFS against DEFENDANTS POA, KATHERINE, KIRSTEN

and DOES 1 through 50, Inclusive

184.   PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 183, inclusive, as if the same were fully set forth herein.

185.   PLAINTIFFS are informed and believe and thereon allege that DEFENDANT POA, as well as DEFENDANTS KIRSTEN and KATHERINE, as the Executive  Director and Secretary for DEFENDANT POA, owed fiduciary duties to each of the members of the association, including to each of the PLAINTIFFS.  Such fiduciary duties owed by said DEFENDANTS to the PLAINTIFFS include but are not limited to: (i) act in the association's member's best interest; (ii) use reasonable care in managing the property and financial affairs of the Development, POA, and all parcel owners; (iii) treat all members of the association fairly and

equally; (iv) act reasonably in the exercise of the association's discretionary powers, including rule-making and enforcement; (v) not favor one member over other members of the association; (vi) not engage in self-dealing and conflicted transactions; (vii) keep and maintain accurate corporate records and books of all of the association's transactions; (viii) ensure that proper associational meetings were noticed, held, and appropriately documented; and (ix) provide equal access to all such documents, data, and information concerning the association to all of its members, and thus, not just to DEFENDANTS COACHILLIN, KENNETH, and WILLIAM.

186.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS POA, KIRSTEN, and KATHERINE violated their fiduciary duties owed to each of the PLAINTIFFS when they permitted, agreed, acquiesced, and conspired with DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to so dominate and control the POA's affairs such that the POA levied excessive, unreasonable, unapproved, and improper assessments and fees on all parcel owners, including upon each of the PLAINTIFFS, in order to fund the Development's Initial Common Infrastructure and Common Area Expenses which were and continue to be the sole and exclusive obligation of DEFENDANTS COACHILLIN, KENNETH, and WILLIAM. Moreover, DEFENDANTS POA, KIRSTEN, and KATHERINE have further violated their fiduciary duties owed to each of the PLAINTIFFS when they permitted, agreed, acquiesced, and conspired with DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to so dominate and control the POA's affairs such that the POA levied excessive, unreasonable, unapproved, and improper assessments and fees on all parcel owners, including upon each of the PLAINTIFFS for the DEFENDANTS' own personal expenses and benefits, including without limitation, those expenses relating to such DEFENDANTS' dust mitigation measures within the Development, legal fees related to such DEFENDANTS' own personal matters, as well as the DEFENDANTS self-dealing and interested transactions, all as is set forth herein.  Furthermore, DEFENDANTS POA, KIRSTEN, and KATHERINE have further violated their fiduciary duties owed to each of the PLAINTIFFS when they permitted, agreed, acquiesced, and conspired with DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to so dominate and control the POA's affairs such that the POA unilaterally attempted to assess Special Assessments to PLAINTIFF HAPPY

HOURS in a completely unsubstantiated and arbitrary amount of $50,000.00, which was also never approved by the Board of the POA, in relation to the aforementioned spillage of raw sewage at Parcel 10, as is more fully set forth within this Complaint.

187.   PLAINTIFFS have been and continue to be damaged as a result of DEFENDANTS POA'S, KIRSTEN'S, and KATHERINE'S breach and violation of their fiduciary duties, and that such breach of their fiduciary duties by said DEFENDANTS have now and continue to interfere with the PLAINTIFFS' property interests and have reduced and will continue to reduce the value and marketability of their respective properties at the Development. Moreover, due to such DEFENDANTS dereliction of their duties, as is set forth herein, it has allowed and is continuing to allow DEFENDANTS COACHILLIN, KENNETH, and WILLIAM to have ultimate control and management of the POA to the detriment of its members, including each of the PLAINTIFFS.  As a result and in addition to all damages sought by the PLAINTIFFS, the PLAINTIFFS further seek a full and complete accounting from the POA as to all fees and costs which have been incurred, all monies which have been paid and spent, all original and unmodified invoices which have been issued, payments received, all communications between the POA, KIRSTEN, KATHERINE, KENNETH, and WILLIAM, inspection of all of the association's records and books, and an explanation of the fees and costs which the DEFENDANTS are attempting to assert and levy against each of the PLAINTIFFS.

188.   As a direct and proximate result of DEFENDANTS POA'S, KIRSTEN'S, and KATHERINE'S breach and violation of their fiduciary duties, as is set forth herein, PLAINTIFFS have been damaged and continue to be damaged in a sum according to proof at the time of trial, but which is in excess of this Court's minimum jurisdictional amount.

///

///

///

///

///

///

99

**FOURTH CAUSE OF ACTION**

**Breach of Fiduciary Duty**

All PLAINTIFFS against DEFENDANTS KENNETH and DOES 1 through 50, Inclusive

189.   PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 188, inclusive, as if the same were fully set forth herein.

190.   PLAINTIFFS are informed and believe and thereon allege that DEFENDANT KENNETH, as a Board Member of the POA and as the Declarant in the CC&R's, as well as one of the managing agents of DEFENDANT COACHILLIN owed fiduciary duties to the members of the association, including to each of the PLAINTIFFS, which include but are not limited to always: (i) act in good faith, in compliance with all such applicable laws and documents governing the Development; (ii) deal fairly with the association and each of its members and not seek his own financial and personal interests and benefit, to the detriment of the PLAINTIFFS; (iii) not engage in self-dealing and conflict of interest transactions; and (iv) use ordinary care and prudence in performing his functions.

191.   PLAINTIFFS are informed and believe and thereon allege that DEFENDANT KENNETH has violated his fiduciary duties owed to each of the PLAINTIFFS when he interfered with and controlled the POA by demanding that the POA as well as DEFENDANTS KIRSTEN and KATHERINE, levy and assess excessive, unreasonable, unapproved, and improper assessments on all parcel owners, including upon each of the PLAINTIFFS, in order to fund the Development's Initial Common Infrastructure as well as Common Area Expenses, which were owed solely and exclusively by DEFENDANTS COACHILLIN, KENNETH, and WILLIAM, as well as also seeking to impose significant additional charges and fees upon the PLAINTIFFS, which were never agreed upon, all as is set forth herein.  Moreover, as is also set forth within this Complaint, DEFENDANT KENNETH has engaged in and will continue to engage in egregious self-dealing and conflict of interest transactions while acting in his capacity as the Declarant of the Development while at the same time unilaterally entering into various agreements with unfavorable terms for the POA and the Development with companies that he

COMPLAINT FOR DAMAGES          Exh. A  Page 108

himself owns and controls, and as such, personally benefits from.  Furthermore, as is also set forth within this Complaint, DEFENDANT KENNETH has directed, dominated, and used the POA for his own benefit and the benefit of his family members by hiring his family members to operate and manage the POA while concurrently working for his other conflicted business entities and also failing to properly apply association-related fees and dues to those parcels of land which are owned and controlled by DEFENDANTS COACHILLIN, KENNETH, and WILLIAM.

192.   PLAINTIFFS have been and will continue to be damaged as a result of DEFENDANT KENNETH'S breach and violation of his fiduciary duties which are and continue to be owned to each of the PLAINTIFFS.

193.   As a direct and proximate result of DEFENDANT KENNETH'S breach and violation of his fiduciary duties, as is set forth herein, PLAINTIFFS were and continue to be damaged in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.

## **FIFTH CAUSE OF ACTION**

### **Fraud – Intentional Misrepresentation**

All PLAINTIFFS against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, Inclusive

194.   PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 193, inclusive, as if the same were fully set forth herein.

195.   As is previously set forth herein, PLAINTIFFS are informed and believe and thereon allege that prior to and throughout each stage of the respective transactions being set forth herein for the purchase of each of the PLAINTIFFS' respective parcels of land within the Development, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL each intentionally set forth and/or otherwise directed the other DEFENDANTS and/or their respective agents to intentionally set forth a series of various oral and written material misrepresentations to each of the PLAINTIFFS and/or their respective authorized agents, all in a

concerted and intentional effort to fraudulently induce each of the PLAINTIFFS and/or their respective assignors to enter into those respective *Vacant Land Purchase Agreements* for the purchase of the PLAINTIFFS' respective parcels of land within the Development.

196.   PLAINTIFFS are informed and believe and thereon allege that said numerous material misrepresentations that were rendered by and/or on behalf of DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL to each of the PLAINTIFFS and/or their respective authorized agents, include but are not limited to those material misrepresentations that COACHILLIN would be developing, constructing, and/or otherwise installing the entire infrastructure for the Development at their own expense, including all roads, electricity, gas, water, and sewer, as well as all such represented Amenities within the Development by such specifically represented dates and timelines, all as are delineated herein. Additionally, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL made and/or directed such other DEFENDANTS to make additional material misrepresentations to each of the PLAINTIFFS and/or their respective authorized agents that each such respective parcel of land would be partially improved by DEFENDANT COACHILLIN with all such electricity, gas, water, and sewer-related utilities stubbed-into each such respective parcel which are now owned by the PLAINTIFFS and that each of the respective parcel would be ready for construction, all at DEFENDANT COACHILLIN's cost and expense, and thus, not at the cost and expense of any of the PLAINTIFFS, as is set forth herein.

197.   PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL intentionally represented and/or directed and continued to intentionally represent and/or direct the DEFENDANTS to set forth each of the above-referenced material representations to each of the PLAINTIFFS and/or their respective authorized agents throughout the course of their dealings, even though said DEFENDANTS knew that such above-referenced material representations being rendered by them were, in fact, false and misleading.  PLAINTIFFS are informed and believe and thereon allege that during all relevant times herein, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL harbored a secret intent to intentionally

COMPLAINT FOR DAMAGES          Exh. A  Page 110

and knowingly induce each of the PLAINTIFFS and/or their respective assignors to enter into their respective *Vacant Land Purchase Agreements* with DEFENDANT COACHILLIN and to pay DEFENDANT COACHILLIN all such substantial monies set forth therein in furtherance of each of those above-referenced material representations being made by or on behalf of each such DEFENDANT, all to the benefit of such DEFENDANTS and at the PLAINTIFFS' and/or their respective assignor's expense and detriment.

198.    PLAINTIFFS are informed and believe and thereon allege that said DEFENDANTS intentionally, deceptively, and dishonestly assured each of the PLAINTIFFS and/or their respective agents that said DEFENDANTS would abide by the terms and conditions of the parties' respective *Vacant Land Purchase Agreements* as well as those various representations being made by and/or on behalf of each such DEFENDANT, despite such DEFENDANTS never actually having any intention and/or ability to even do so.

199.    PLAINIFFS are informed and believe and thereon allege that at all times relevant herein, each of the PLAINTIFFS and/or their respective representatives relied upon those material representations being proffered by and/or on behalf of DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL, as are set forth herein, and that each of the PLAINTIFFS and/or their respective representatives believed such material representations being set forth by and/or on behalf of said DEFENDANTS to be true.  Moreover, albeit fraudulent and deceitful, such oral and written representations were made by and/or on behalf of each such applicable DEFENDANT with the intent of inducing each of the PLAINTIFFS and/or their respective representatives to rely upon them, and such representations were material and vital to the respective transactions between the parties, as are set forth within this Complaint. PLAINTIFFS and/or their respective representatives reasonably and justifiably relied upon each of those written and oral representations being rendered by and/or on behalf of DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL, and in furtherance of such reasonable and justified reliance, each of the PLAINTIFFS and/or their respective representatives entered into such respective *Vacant Land Purchase Agreements* and thereafter

103

1   provided DEFENDANT COACHILLIN with substantial sums of monies in furtherance thereof,

2   all as is set forth and established herein.

3        200.    PLAINTIFFS are informed and believe and thereon allege that at all times

4   relevant herein, each of them and/or their respective representatives were unaware of the falsity

5   of DEFENDANTS COACHILLIN'S, KENNETH'S, KATHERINE'S, WILLIAM'S and

6   MICHAEL'S representations and that the PLAINTIFFS and/or their respective representatives

7   did not know such DEFENDANTS' true intentions at the time that such parties and/or their

8   respective assignors entered into their respective *Vacant Land Purchase Agreements* and/or when

9   said PLAINTIFFS and/or their respective assignors thereafter provided DEFENDANT

10  COACHILLIN with substantial sums of monies in furtherance thereof.

11       201.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS

12  COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and each of their

13  respective representatives knew, at all relevant times herein, that their representations to each of

14  the PLAINTIFFS and/or their respective authorized representatives were material and deceptive

15  when they made such dishonest representations and concealed their continuing course of illegal

16  conduct, as such fraudulent representations and concealment of illegal conduct was necessary to

17  induce and thereby cause each of the PLAINTIFFS and/or their respective assignors to enter into

18  their respective *Vacant Land Purchase Agreements* with DEFENDANT COACHILLIN and

19  thereafter provide DEFENDANT COACHILLIN with substantial sums of monies in furtherance

20  thereof.

21       202.    PLAINTIFFS are informed and believe and thereon allege that as a direct and

22  proximate result of DEFENDANTS COACHILLIN'S, KENNETH'S, KATHERINE'S,

23  WILLIAM'S, and MICHAEL'S intentional and malicious fraud and deceit, as is set forth within

24  this Complaint, each of the PLAINTIFFS have been harmed and continue to be damaged in an

25  amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional

26  amount.

27       203.    PLAINTIFFS are informed and believe and thereon allege that the conduct of

28  DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL, as

COMPLAINT FOR DAMAGES     

described within this Complaint, was at all times relevant herein, intentional, willful, fraudulent, and induced the reliance of each of the PLAINTIFFS and/or their respective representatives, and at all times, each of the PLAINTIFFS are and have remained harmed due to such intentional fraudulent, deceitful, and reckless conduct of such DEFENDANTS. Consequently, PLAINTIFFS are each entitled to general, punitive, and exemplary damages against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL in an amount to be determined at the time of trial.

### SIXTH CAUSE OF ACTION

**Negligent Misrepresentation**

All PLAINTIFFS against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, Inclusive

204.    PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 203, inclusive, as if the same were fully set forth herein.

205.    As delineated herein, each of the PLAINTIFFS are informed and believe and thereon allege that prior to and at the time of the parties engaging in their respective transactions for the purchase and sale of the PLAINTIFFS' respective parcels of land within the Development, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM and MICHAEL each set forth and/or otherwise directed said DEFENDANTS to set forth a series of various oral and written material misrepresentations to each of the PLAINTIFFS and/or their respective authorized representatives concerning the Development. Although each of the aforementioned representations were expressly represented by and/or otherwise on behalf of and/or otherwise under the direction of each such DEFENDANT to the PLAINTIFFS and/or their respective authorized representatives as a true fact in an effort to induce and thereby cause each of the PLAINTIFFS and/or their respective representatives to enter into their respective *Vacant Land Purchase Agreements* with DEFENDANT COACHILLIN and thereafter provide DEFENDANT COACHILLIN with substantial sums of monies in furtherance thereof, such written and oral

representations being rendered by and/or otherwise under the direction of DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL were actually false.

206.    In the alternative to the allegations set forth within this Complaint, PLAINTIFFS are otherwise informed and believe and thereon allege that while DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM and MICHAEL may have honestly believed that such oral and written representations were true, that said DEFENDANTS, as the parties who would have actual knowledge of the truth of all such factual representations, had no actual reasonable grounds to believe that such representations were true.

207.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL intended to induce each of the PLAINTIFFS and/or their respective authorized representatives in entering into the transactions set forth within this Complaint and thereby provide DEFENDANT COACHILLIN with substantial sums of monies in furtherance thereof, in reliance upon their material misrepresentations.  PLAINTIFFS are informed and believe and thereon allege that each such DEFENDANTS knew or should have known that because of their respective representations, PLAINTIFFS and/or their respective representatives would rely upon said representations being made to them by and/or on behalf of said DEFENDANTS and thereby agreed to enter into the transactions set forth within this Complaint in reliance upon said misrepresentations.

208.    PLAINTIFFS are informed and believe and thereon allege that at all times relevant herein, each of the PLAINTIFFS were unaware of the falsity of DEFENDANTS COACHILLIN'S, KENNETH'S, KATHERINE'S, WILLIAM'S, and MICHAEL'S representations at the time they were made, and thus, each of the PLAINTIFFS and/or their respective representatives reasonably relied upon said DEFENDANTS' representations.

209.    PLAINTIFFS are informed and believe and thereon allege that as a direct and proximate result of DEFENDANTS COACHILLIN'S, KENNETH'S, KATHERINE'S, WILLIAM'S, and MICHAEL'S misrepresentations, as are set forth within this Complaint, each of the PLAINTIFFS have been harmed and continue to be damaged in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.

210.    PLAINTIFFS are informed and believe and thereon allege that the misrepresentations of said DEFENDANTS, as described within this Complaint, induced the reliance of each of the PLAINTIFFS and/or their respective authorized representatives, and at all times set forth herein, the PLAINTIFFS are and continue to remain harmed.  Consequently, each of the PLAINTIFFS are entitled to general and compensatory damages against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL in an amount to be determined at the time of trial.

## SEVENTH CAUSE OF ACTION

### Fraud - Concealment

All PLAINTIFFS against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, Inclusive

211.    PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 210, inclusive, as if the same were fully set forth herein.

212.    As is previously set forth herein, PLAINTIFFS are the owners of those parcels of land within the Development commonly known as "Parcel 10," "Parcel 11," and "Parcel 12."

213.    Prior to such dates that each of the PLAINTIFFS and/or their respective assignors entered into their respective *Vacant Land Purchase Agreements* for the purchase and sale of their respective parcels of land within the Development, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL intentionally concealed and/or otherwise caused such other DEFENDANTS and/or their respective agents to conceal from each of the PLAINTIFFS and/or their respective representatives a series of material facts concerning their potential purchases of land as well as that which was to occur within the Development.  For example, as is set forth throughout this Complaint, at all relevant times set forth herein, such DEFENDANTS concealed, suppressed, and/or otherwise withheld the material fact that such DEFENDANTS would not actually be developing, constructing, and/or otherwise installing all such previously represented Amenities, in the manner and within the timelines previously represented, nor were

COMPLAINT FOR DAMAGES          Exh. A  Page 115

such DEFENDANTS actually going to be developing, constructing, and/or otherwise installing all such requisite and previously represented and agreed-upon infrastructure for the Development and that it was said DEFENDANTS' actual intent to thereafter attempt to require and demand that each of the PLAINTIFFS pay significant additional monies and fees, all of which were further concealed, suppressed, and/or otherwise intentionally not disclosed to any of the PLAINTIFFS throughout the process of their respective purchases of land within the Development.

214. Additionally, as is further set forth herein, throughout the process of each of the PLAINTIFFS' respective purchases of land within the Development, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL further intentionally concealed and/or otherwise caused such other DEFENDANTS and/or their respective agents to conceal from each of the PLAINTIFFS and/or their respective representatives the actual status of and the inability for such DEFENDANTS to actually obtain and/or otherwise have access to the requisite utilities and other infrastructure which was necessary for each of the PLAINTIFFS to use so as to be able to sufficiently develop and construct the requisite improvements upon their parcels of land in order to be able to further their business operations.  For example, PLAINTIFFS are informed and believe and thereon allege that, despite representing to each of the PLAINTIFFS and/or their respective representatives that each such PLAINTIFF would have access to electrical utilities promptly following the close of their respective purchases of land, such DEFENDANTS knew that it was actually an impossibility for each of the PLAINTIFFS to obtain such electrical access within the time-periods previously represented by said DEFENDANTS to each of the PLAINTIFFS and/or their respective representatives, and thus, such DEFENDANTS concealed and/or otherwise caused such other DEFENDANTS and/or their respective agents to conceal such material facts from each of the PLAINTIFFS and/or their respective representatives.

215. PLAINTIFFS are informed and believe and thereon allege that due to the nature of the relationship and actions and/or inactions of the parties, as are set forth herein, all such factual occurrences which were and/or were otherwise caused to be concealed and suppressed by DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL were

solely known by said DEFENDANTS, and thus, could not reasonably be discovered by any of the PLAINTIFFS.

216.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL knowingly, intentionally, and willfully concealed and/or otherwise caused such DEFENDANTS and/or their respective agents to conceal and suppress such material facts from each of the PLAINTIFFS and/or their respective representatives as such DEFENDANTS knew that if they had not concealed and suppressed such material information from the PLAINTIFFS and/or their representatives, that PLAINTIFFS and/or their respective representatives would not have acted in the manner that they had, including without limitation, purchasing their respective parcels of land for such agreed-upon purchase prices. As such, said DEFENDANTS all acted in a concerted and intentional effort to substantially benefit themselves and their respective interests to the significant detriment of each of the PLAINTIFFS.

217.    PLAINTIFFS are informed and believe and thereon allege that, as is set forth herein, PLAINTIFFS and/or their respective representatives were unaware of the concealed and suppressed facts relating to the DEFENDANTS' actual intentions, the overall Development, and each of their respective parcels of land located therein.  Moreover, had the PLAINTIFFS and/or their respective representatives known and/or otherwise been apprised of all such facts which were and/or were otherwise caused to be intentionally and deliberately concealed, suppressed, and withheld by DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL, each of the PLAINTIFFS and/or their respective representatives would not have acted in the manner that they did.  Specifically, had such DEFENDANTS disclosed each of those material facts to the PLAINTIFFS and/or their respective representatives, said parties would not have chosen to close upon their respective purchases of land within the Development upon the terms and conditions set forth within each of their respective *Vacant Land Purchase Agreements*.

218.    As a direct and proximate result of DEFENDANTS COACHILLIN'S, KENNETH'S, KATHERINE'S, WILLIAM'S, and MICHAEL'S intentional and deliberate concealment and suppression of all such material facts, as is set forth herein, PLAINTIFFS have

COMPLAINT FOR DAMAGES          Exh. A  Page 117

1  and continue to be harmed.  Consequently, PLAINTIFFS are entitled to general, punitive, and

2  exemplary damages against DEFENDANTS COACHILLIN, KENNETH, KATHERINE,

3  WILLIAM, and MICHAEL, in an amount to be determined at trial.

4

5  **EIGHTH CAUSE OF ACTION**

6  **Violation of Racketeering Influenced and Corruption Organization Act ("RICO")**

7  **[18 U.S.C. §1961 *et seq*.]**

8  All PLAINTIFFS against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA,

9  KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL

10  and DOES 1 through 50, Inclusive

11

12  219.    PLAINTIFFS reallege and incorporate by reference each and every allegation

13  contained within paragraphs 1 through 218, inclusive, as if the same were fully set forth herein.

14  220.    PLAINTIFFS and DEFENDANTS COACHILLIN, ENERGY, ECOMASTER,

15  KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL are each "persons," as that term

16  is defined in 18 U.S.C. § 1961(3).

17  221.    PLAINTIFFS are informed and believe and thereon allege that at all relevant

18  times, in violation of 18 U.S.C. § 1962(c), DEFENDANTS COACHILLIN, ENERGY,

19  ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL

20  engaged and/or participated, directly and/or indirectly, in the affairs of an association-in-fact

21  enterprise identified herein, the affairs of which affected interstate commerce through a pattern

22  of racketeering activity.

23  222.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS

24  COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN,

25  KATHERINE, and MICHAEL, by and through their own conduct and participation and/or

26  through their associations in fact, engaged and/or participated in, directly or indirectly, a pattern

27  of racketeering activity as defined in 18 U.S.C. § 1961(1). Such racketeering activity includes,

28  but is not limited to, violation on at least two occasions of 18 U.S.C. §§ 1951 (extortion), 1341

(mail fraud), 1343 (wire fraud), 1513 (retaliating against a victim), all during the relevant time periods as set forth within this Complaint, by and through, among other things, using the mails, telephone, internet communications, e-mail, and/or other devices and methods to threaten PLAINTIFFS.

223.   DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, POA'S, KENNETH'S, WILLIAM'S, KIRSTEN'S, KATHERINE'S, and MICHAEL'S association in fact with one another in the continued conduct of their business, as is more fully set forth within this Complaint, constitutes an "Enterprise" within the meaning of RICO.

224.   PLAINTIFFS are informed and believes and thereon allege that DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, POA'S, KENNETH'S, WILLIAM'S, KIRSTEN'S, KATHERINE'S, and MICHAEL'S conduct, actions, and/or inactions, as more fully described herein, establishes that all such DEFENDANTS devised and/or intended to devise a scheme or artifice to defraud and/or injure, as alleged herein, through the use of the United States mails and wires in interstate and foreign commerce and otherwise used fraudulent and deceptive means as herein alleged to unlawfully obtain the property and/or monies of each of the PLAINTIFFS.

225.   PLAINTIFFS are informed and believe and thereon allege that, at all relevant times herein, each of the DEFENDANT members of the Enterprise were involved in the continuing coordination of activities between the Individual DEFENDANTS and the Enterprise. As to each DEFENDANT, there was a common communication network by which information concerning the Enterprise was exchanged on a regular basis. PLAINTIFFS are informed and believe and thereon allege that typically such communication occurred by the use of electronic mail, text message, and/or the telephone in which each such DEFENDANT planned and coordinated the operation of the Enterprise alleged herein and ran its continuing operation.

226.   PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS' illegal conduct and wrongful practices were carried out by an array of employees, as well as by consultants, agents, and co-conspirators of said DEFENDANTS, who also necessarily relied upon frequent transfers of documents and information and funds by the use of U.S. mails and

interstate wire facilities, which included without limitation, the use of electronic mail, text message, and/or the telephone.

227.    PLAINTIFFS are informed and believe and thereon allege that each of the DEFENDANTS' intentional, malicious, deceptive, and concerted attempts to gain substantial monies from the PLAINTIFFS that the DEFENDANTS were otherwise never entitled to, all through their unlawful conduct as is alleged within this Complaint, is an act of wire and mail fraud.   Alleging each of the precise dates each of the intentional, malicious, deceptive, and concerted efforts by the DEFENDANTS would be unreasonably burdensome and to some extent not possible without conducting discovery.  Many of the precise dates of said DEFENDANTS' uses of the U.S. mails and interstate wire facilities (and corresponding RICO predicate acts of violations of 18 U.S.C. Section 1951 (extortion), and violations of 18 U.S.C. Section 1341 (mail fraud), and violations of 18 U.S.C. Section 1343 (wire fraud) and violations of 18 U.S.C. Section 1513 (retaliating against a victim) have been hidden and cannot be alleged without access to the each of the DEFENDANTS' books and records.  Indeed, an essential part of the successful operation of the Enterprise alleged herein depended upon secrecy and said DEFENDANTS took deliberate steps to conceal their wrongdoing and to pressure and influence those operating outside of the Enterprise to not reveal information learned or revealed to them by unlawful means. PLAINTIFFS have, however, described herein more than two occasions on which the RICO predicate acts of mail fraud, wire fraud, extortion, and retaliation against each of the PLAINTIFFS occurred as well as how those acts by said DEFENDANTS were in furtherance of the Enterprise.

228.    Under the provisions of 18 U.S.C. § 1964(c), DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL are jointly and severally liable to each of the PLAINTIFFS for three times the damages that each such PLAINTIFF has sustained, plus all such additional costs and fees incurred by said PLAINTIFFS in bringing this suit, including all reasonable attorneys' fees.

229.    As a direct and proximate result of DEFENDANTS COACHILLIN'S, ENERGY'S,   ECOMASTER'S,   POA'S,   KENNETH'S,   WILLIAM'S,   KIRSTEN'S,

112

KATHERINE'S, and MICHAEL'S racketeering activities as described herein, PLAINTIFFS have each suffered injury to their businesses and respective property in an amount to be proven at trial, but which exceeds this Court's minimum jurisdictional amount.

**NINTH CAUSE OF ACTION**

**Conspiracy To Violate RICO**

All PLAINTIFFS against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL

and DOES 1 through 50, Inclusive

230.    PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 229, inclusive, as if the same were fully set forth herein.

231.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL conspired and agreed among themselves to violate 18 U.S.C. §1962 as set forth in the Eighth Cause of Action above.

232.    PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL further agreed to violate said statute for the purpose of destroying and/or diminishing PLAINTIFFS' business and financial interests and to otherwise injure the PLAINTIFFS, all to the benefit of said DEFENDANTS so as to enrich themselves.

233.    PLAINTIFFS are informed and believe and thereon allege that at all times relevant herein, DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL, did and engaged in all such conduct, actions and/or inactions as alleged herein pursuant to, and in furtherance of, their conspiracy and their above-alleged agreement.

234.    PLAINTIFFS are informed and believe, and thereon allege that each of the aforementioned DEFENDANTS furthered the conspiracy by cooperation with, and/or lent aid

113

and encouragement to, and/or ratified and adopted the conduct, actions and/or inactions, as alleged herein, of each of the other DEFENDANTS.   DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL are therefore liable for all of the acts, omissions, and/or breaches of the others, all of which were done in furtherance of the conspiracy and for the benefit of any or all of the co-conspirators.

235.   PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and MICHAEL continue through the present to commit overt acts in furtherance of the above described conspiracy.   As a direct and proximate result of this conspiracy and agreement, PLAINTIFFS have been damaged, and continue to be damaged, all in an amount to be proven at the time of trial, but which is in excess of this Court's minimum jurisdictional amount.

## **TENTH CAUSE OF ACTION**

### **Trespass**

PLAINTIFF HAPPY HOURS against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, RICKY, and DOES 1 through 50, Inclusive

236.   PLAINTIFF HAPPY HOURS realleges and incorporates by reference each and every allegation contained within paragraphs 1 through 235, inclusive, as if the same were fully set forth herein.

237.   As is set forth herein, PLAINTIFF HAPPY HOURS is the sole and exclusive owner of that certain real property within the Development commonly known as "Parcel 10" and/or 18194 Blue Dream Crossing, Desert Hot Springs, California 92240.

238.   PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that on or about October 14, 2021, without any notice or advance warning to PLAINTIFF HAPPY HOURS of any such specific actions, DEFENDANTS COACHILLIN, ENERGY,

_____

COMPLAINT FOR DAMAGES          Exh. A  Page 122

ECOMASTER, and/or KENNETH intentionally and specifically instructed and directed DEFENDANT RICKY to go into the sewage system that is connected to PLAINTIFF HAPPY HOURS' property and insert a plug into PLAINTIFF HAPPY HOURS' sewage line, all in an intentional effort to block and redirect any and all flow of sewage discharge from such line. PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that due to such intentional actions being engaged in by such DEFENDANTS, an unlawful backflow and spillage of raw sewage and related wastewater was caused to enter into and upon PLAINTIFF HAPPY HOURS' respective parcel of land and within the improvements built thereon.

239.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that as a result of this intentional conduct and blockage of PLAINTIFF HAPPY HOURS' sewage lines emanating from its property by such DEFENDANTS, such intentional conduct caused a redirection, backup, backflow, and egregious spill of raw sewage and related wastewater to enter into and upon PLAINTIFF HAPPY HOURS' property and the improvements built thereon, all of which resulted in significant damage to PLAINTIFF HAPPY HOURS' property as well as to PLAINTIFF HAPPY HOURS' equipment, materials, and other contents located therein.

240.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that at the time that such DEFENDANTS engaged in such intentional conduct, such DEFENDANTS had also knowingly, intentionally, maliciously, and willfully placed a backhoe tractor directly on top of the sewage manhole cover in the middle of the road that is adjacent to PLAINTIFF HAPPY HOURS' property, all in a further intentional effort to ensure that no one would be able to physically access the plug which such DEFENDANTS intentionally placed in PLAINTIFF HAPPY HOURS' sewage line.  PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that said backhoe tractor was intentionally left in the street and/or otherwise intentionally caused to be stationary at such location without care or concern by the DEFENDANTS of how such actions would or could impede access to any of the PLAINTIFFS' properties within the Development and/or otherwise interrupt such PLAINTIFFS' business operations being conducted therein.

COMPLAINT FOR DAMAGES          Exh. A  Page 123

241.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that at or around the same time that such DEFENDANTS intentionally blocked PLAINTIFF HAPPY HOURS access to the sewage pipes, as is set forth herein, DEFENDANT KENNETH further made a series of additional threats and other demands to PLAINTIFF HAPPY HOURS.  For example, DEFENDANT KENNETH threatened PLAINTIFF HAPPY HOURS in demanding that neither it nor any of its agents were allowed to attempt to move the DEFENDANTS' backhoe tractor, access the sewage line, or even attempt to remove the plug from their sewage line, or they would suffer dire consequences.  PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that said DEFENDANTS intentionally caused such backhoe tractor to remain in the middle of the street, thereby significantly impeding each of the PLAINTIFFS' business operations as well as their access to their own properties for approximately four (4) consecutive weeks.  In furtherance of the foregoing, PLAINTIFF HAPPY HOURS is further informed and believes and thereon alleges that such DEFENDANTS, by and through their use of armed guards within the Development, also specifically precluded MSWD's assigned representative from accessing the Development in an effort to conduct its inspection of the Development and the backflow of raw sewage and related wastewater into and upon PLAINTIFF HAPPY HOURS' property.

242.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that such intentional conduct of the DEFENDANTS, as is set forth herein, as well as the subsequent threats of such DEFENDANTS prevented any efforts by PLAINTIFF HAPPY HOURS to mitigate the significant damages which were caused as a direct and proximate result of the DEFENDANTS' actions.

243.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that at no time did and/or otherwise has PLAINTIFF HAPPY HOURS ever granted permission to DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH and/or RICKY to: (i) access its sewage lines; (ii) cause any water, sewage, and/or other substances to be redirected and enter upon and/or otherwise trespass upon PLAINTIFF HAPPY HOURS' property; and/or (iii) impede and/or otherwise restrict PLAINTIFF HAPPY HOURS' and/or any of its respective

116

representatives', agents', business associates', and/or vendors' ability and right to freely access PLAINTIFF HAPPY HOURS' property.

244.    As a direct and proximate result of such DEFENDANTS' intentional conduct, as is set forth herein, PLAINTIFF HAPPY HOURS was issued an Administrative Citation from the City of Desert Hot Springs who imposed significant fines and/or other penalties against PLAINTIFF HAPPY HOURS.

245.    PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that DEFENDANT COACHILLIN'S, ENERGY'S, ECOMASTER'S, KENNETH'S, and RICKY'S conduct, as is set forth herein, was a substantial factor in causing the harms and damages being suffered by PLAINTIFF HAPPY HOURS.

246.    As a direct and proximate result of this impermissible trespass by such DEFENDANTS, PLAINTIFF HAPPY HOURS has been significantly harmed and damaged in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.

247.    Additionally, as a result of DEFENDANT COACHILLIN'S, ENERGY'S, ECOMASTER'S, KENNETH'S, and RICKY'S conduct, as is set forth herein, PLAINTIFF HAPPY HOURS is further entitled to a recovery of punitive and/or exemplary damages as well as its attorneys' fees and related costs against such DEFENDANTS.  Consequently, PLAINTIFF is entitled to general, punitive, and exemplary damages against DEFENDANT COACHILLIN, ENERGY, ECOMASTER, KENNETH and RICKY, in an amount to be determined at the time of trial.

///
///
///
///
///
///
///

COMPLAINT FOR DAMAGES          Exh. A  Page 125

1

**ELEVENTH CAUSE OF ACTION**

2

**Private Nuisance.**

3

PLAINTIFF HAPPY HOURS against DEFENDANTS COACHILLIN, ENERGY,

4

ECOMASTER, KENNETH, RICKY, and DOES 1 through 50, Inclusive

5

6   248.   PLAINTIFF HAPPY HOURS realleges and incorporates by reference each and

7   every allegation contained within paragraphs 1 through 247, inclusive, as if the same were fully

8   set forth herein.

9   249.   As is previously set forth herein, PLAINTIFF HAPPY HOURS is the sole and

10  exclusive owner of that certain real property within the Development commonly known as "Parcel

11  10" and/or 18194 Blue Dream Crossing, Desert Hot Springs, California 92240.

12  250.   PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that

13  by DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, and RICKY

14  intentionally engaging in conduct to plug and block PLAINTIFF HAPPY HOURS' sewage line,

15  thereby redirecting all such sewage therein, and then subsequently intentionally blocking any

16  access to such sewage line both due to such DEFENDANTS' actual physical conduct as well as

17  through their threatening conduct, as is set forth herein, such DEFENDANTS created a condition

18  to exist that not only was harmful to health and was offensive to the senses, but also unlawfully

19  obstructed and interfered with PLAINTIFF HAPPY HOURS' free use of its property, so as to

20  interfere with the comfortable enjoyment of such property.

21  251.   PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that

22  by DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, and RICKY

23  intentionally engaging in conduct to plug and block any access to such sewage line as well as

24  redirect all sewage therein, such conduct also created an extremely serious health hazard, as raw

25  sewage and related wastewater was caused by such DEFENDANTS to trespass upon and thereby

26  flood PLAINTIFF HAPPY HOURS' property, all without PLAINTIFF HAPPY HOURS having

27  any ability to immediately mitigate any such damages being caused by such DEFENDANTS'

28  egregious, unlawful, and despicable actions, as is set forth herein.

118

252.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, KENNETH'S, and RICKY'S intentional and unlawful conduct, as is set forth within this Complaint, also created an abnormally dangerous condition on and around PLAINTIFF HAPPY HOURS' property.

253.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that the conditions created by DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH and RICKY substantially interfered with PLAINTIFF HAPPY HOURS' use and enjoyment of their property.

254.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that the conditions created by DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, KENNETH'S, and RICKY'S conduct, as is set forth herein, would reasonably disturb and annoy an ordinary person.

255.     PLAINTIFF HAPPY HOURS never consented, in any manner whatsoever, whether express or implied, to DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, KENNETH'S, and RICKY'S conduct, as set forth herein.

256.     As a direct and proximate result of such DEFENDANTS' unlawful conduct, PLAINTIFF HAPPY HOURS has been significantly harmed and damaged in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.

257.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that such DEFENDANTS' conduct, as is set forth herein, was a substantial factor in causing PLAINTIFF HAPPY HOURS to suffer such harms and damages.

258.     PLAINTIFF HAPPY HOURS is informed and believes and thereon alleges that the seriousness of the harms and damages caused by such DEFENDANTS outweighs any public benefit of DEFENDANTS COACHILLIN'S, ENERGY'S, ECOMASTER'S, KENNETH'S, and RICKY'S conduct.

///

///

///

COMPLAINT FOR DAMAGES          Exh. A  Page 127

1

**TWELFTH CAUSE OF ACTION**

2

**Real Estate Seller's Nondisclosure of Material Facts**

3

All PLAINTIFFS against DEFENDANTS COACHILLIN, KENNETH, KATHERINE,

4

WILLIAM, MICHAEL, and DOES 1 through 50, Inclusive

5

6

259.    PLAINTIFFS reallege and incorporate by reference each and every allegation

7

contained within paragraphs 1 through 258, inclusive, as if the same were fully set forth herein.

8

260.    As is delineated herein, PLAINTIFFS are the owners of those parcels of land

9

within the Development commonly known as "Parcel 10," "Parcel 11," and "Parcel 12."

10

PLAINTIFFS and/or their respective assignors purchased said parcels of land from

11

DEFENDANT COACHILLIN.

12

261.    Prior to each of the PLAINTIFFS and/or their respective assignors entering into

13

their respective *Vacant Land Purchase Agreements* for the purchase and sale of their respective

14

parcels of land within the Development, DEFENDANTS COACHILLIN, KENNETH,

15

KATHERINE, WILLIAM, and MICHAEL failed to disclose and/or otherwise caused such other

16

DEFENDANTS to fail to disclose to the PLAINTIFFS a series of material facts concerning their

17

respective purchases of land as well as that which was to occur within the Development.  For

18

example, each such DEFENDANT failed to disclose to the PLAINTIFFS and/or their respective

19

representatives that said DEFENDANTS would not actually be developing, constructing, and/or

20

otherwise installing all such represented Amenities in the manner and within the timelines

21

previously represented, nor were such DEFENDANTS actually going to be developing,

22

constructing, and/or otherwise installing all such requisite, represented, and agreed-upon

23

infrastructure for the Development, and that said DEFENDANTS actually intended to thereafter

24

attempt to require and demand that each of the PLAINTIFFS pay significant additional monies

25

and fees, which were also never disclosed, in an effort to pay for portions of the Development's

26

requisite infrastructure.

27

262.    PLAINTIFFS are informed and believe and thereon allege that the material

28

information being intentionally undisclosed by such DEFENDANTS from the PLAINTIFFS has

120

and continues to significantly affect the value of each of the PLAINTIFFS' respective parcels of land as well as each of the PLAINTIFFS' desire to purchase said parcels of land.  PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL each knew that the material facts being intentionally undisclosed by them to the PLAINTIFFS would significantly reduce the value, desirability, and/or marketability of the PLAINTIFFS' respective parcels of land, as well as PLAINTIFFS' ability to sufficiently and timely construct and use improvements upon their respective parcels, and thus, said DEFENDANTS intentionally failed to disclose and/or otherwise caused such other DEFENDANTS to fail to disclose such material facts to the PLAINTIFFS, all in a concerted and intentional effort to substantially benefit themselves and their respective interests.

263.    PLAINTIFFS are informed and believe and thereon allege that prior to the closing of each of the transactions which are set forth within this Complaint, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL knowingly and intentionally deceived each of the PLAINTIFFS and/or otherwise knowingly and intentionally did not disclose material facts and/or otherwise caused for the nondisclosure of such material facts from the PLAINTIFFS, all to the significant detriment and damage of each of the PLAINTIFFS.

264.    PLAINTIFFS are informed and believe and thereon allege that at no time prior to the closing of each of the transactions set forth within this Complaint did any of the PLAINTIFFS and/or their respective representatives know of nor could they reasonably have discovered the existence of such material facts which were being knowingly and intentionally undisclosed by and/or on behalf of such DEFENDANTS.

265.    PLAINTIFFS are informed and believe and thereon allege that at all times relevant herein, DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL each knew that the PLAINTIFFS did not know nor could they have reasonably discovered all such material facts being undisclosed by said DEFENDANTS.

266.    PLAINTIFFS are informed and believe and thereon allege that had DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL

disclosed all such previously undisclosed material facts to the PLAINTIFFS prior to such time that each of the PLAINTIFFS and/or their respective assignors entered into their respective *Vacant Land Purchase Agreements* that the PLAINTIFFS and/or their respective assignors would not have entered into their respective *Vacant Land Purchase Agreements* based upon the terms and conditions set forth therein.

267.  As a direct and proximate result of such DEFENDANTS' intentional nondisclosure of material facts to the PLAINTIFFS, as is set forth herein, each of the PLAINTIFFS have been harmed and continue to be damaged in an amount to be determined at trial, but which is in excess of this Court's minimum jurisdictional amount.  Further, as is set forth herein, each of the PLAINTIFFS have been and continue to be harmed and damaged by such DEFENDANTS unlawful and improper attempts to charge significant additional, unfounded, and unilaterally imposed infrastructure-related charges upon each of the PLAINTIFFS despite the fact that such DEFENDANTS have never even provided, nor intended to ever provide, the requisite onsite interim sewage septic system which was to service the PLAINTIFFS' respective parcels of land.

268.  PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS COACHILLIN'S, KENNETH'S, KATHERINE'S, WILLIAM'S, and MICHAEL'S conduct in failing to disclose and/or otherwise causing for such failure to disclose all such material facts to the PLAINTIFFS, as is set forth herein, was and continues to be a substantial factor in causing each of the PLAINTIFFS' harms and damages.

269.  The conduct, actions, and/or inactions of DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL, as are set forth within this Complaint, were, have been, and continue to be despicable and were intentionally carried on by each of them with willful and conscious disregard for the PLAINTIFFS' rights and/or interests. DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL were aware of the probable consequences of their conduct and willfully and deliberately failed to engage in actions to avoid these consequences.  The conduct, actions, and/or inactions of DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL

constitutes malice, oppression, and/or fraud such that PLAINTIFFS are each entitled to recover punitive damages against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL.  As the owners, principles, directors, and managing agents of DEFENDANT COACHILLIN, the conduct, actions, and/or inactions of DEFENDANT COACHILLIN were known, ratified, approved, directed, and supported by DEFENDANTS KENNETH and WILLIAM.  Consequently, PLAINTIFFS are each entitled to general, punitive, and exemplary damages against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, and MICHAEL in an amount to be determined at the time of trial.

## **THIRTEENTH CAUSE OF ACTION**

### **Declaratory Relief**

All PLAINTIFFS against DEFENDANTS COACHILLIN, POA, KENNETH, WILLAIM, KIRSTEN, KATERINE, and DOES 1 through 50, Inclusive

270.    PLAINTIFFS reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 269, inclusive, as if the same were fully set forth herein.

271.    As is set forth herein, PLAINTIFFS and/or their respective assignors and DEFENDANT COACHILLIN, as well as DEFENDANT KENNETH on behalf of DEFENDANT COACHILLIN, entered into those *Vacant Land Purchase Agreements* for the purchase and sale of those parcels of land within the Development commonly known as "Parcel 10," "Parcel 11," and "Parcel 12."

272.    As is set forth herein, to date, PLAINTIFFS have received and continue to receive demands by the DEFENDANTS for the payment of substantial fees and costs that the PLAINTIFFS are not even legally obligated to pay pursuant to any of their respective *Vacant Land Purchase Agreements*, the CC&R's, as well as those other documents governing the Development.

273.    PLAINTIFFS have further been levied excessive assessments and fees by DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KIRSTEN, and KATHERINE

1    in order to fund DEFENDANTS COACHILLIN'S, KENNETH'S, and WILLIAM'S Initial

2    Common Infrastructure and Common Area Expenses at the Development.

3        274.    An actual controversy has now arisen and exists between DEFENDANTS POA,

4    COACHILLIN, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and each of the

5    PLAINTIFFS concerning their respective rights and obligations associated with their respective

6    *Vacant Land Purchase Agreements* and the CC&R's, as well as the parties' obligations to pay

7    for assessments, costs, and/or other fees concerning the Development.  PLAINTIFFS each

8    contend that pursuant to each of their respective *Vacant Land Purchase Agreements* they are only

9    obligated to pay the agreed upon Purchase Prices and costs as are delineated therein.

10   DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KIRSTEN, and KATHERINE

11   contend that each of the PLAINTIFFS are also required to pay substantial additional fees and

12   costs which were never disclosed to any of the PLAINTIFFS, including without limitation, those

13   relating to "stub-in" connection fees.

14       275.    There exists a substantial controversy of sufficient immediacy and reality to

15   warrant declaratory relief in favor of the PLAINTIFFS.

16       276.    A judicial declaration is necessary and appropriate pursuant to Cal. Civ. Proc.

17   Code Section 1060.

18

19                        **FOURTEENTH CAUSE OF ACTION**

20                    **Unlawful and Unfair Business Acts and Practices**

21                    **CA Bus. & Prof. Code §17200, *et seq.***

22             All PLAINTIFFS against DEFENDANTS COACHILLIN, ECOMASTER,

23                  ENERGY, KENNETH and DOES 1 through 50, Inclusive

24

25       277.    PLAINTIFFS reallege and incorporate by reference each and every allegation

26   contained within paragraphs 1 through 276, inclusive, as if the same were fully set forth herein.

27       278.    The primary purpose of California's Unfair Competition Law ("UCL") is to

28   preserve fair business competition.

279.    By engaging in the acts, inactions, and/or practices as alleged throughout this Complaint, DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, and KENNETH have committed acts of unfair competition, as that term is defined and used in Cal. Bus. & Prof. Code §17200, *et seq.*, which prohibits *"any unlawful, unfair, or fraudulent business act or practice…"*

280.    The UCL imposes strict liability.  As such, PLAINTIFFS need not prove that DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, and/or KENNETH intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices, but rather, only that such practices occurred.

281.    Under the UCL, a business act or practice is "unfair" if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of such act or practice against the impact or gravity of the harm to the alleged victims.

282.    Under the UCL, a business act or practice is "fraudulent" if it is likely to deceive members of the consuming public.

283.    Under the UCL, a business act or practice is "unlawful" if it is forbidden by law.

284.    PLAINTIFFS are within the class intended to be protected by Cal. Bus. & Prof. Code §17200, *et seq.*

285.    As is alleged herein DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, and KENNETH have engaged in a series of unlawful and unfair business practices which have not only caused and continue to cause each of the PLAINTIFFS to be substantially harmed and damaged, but which also have caused the general public to be substantially harmed and damaged. For example, as is previously set forth herein by the PLAINTIFFS, each of the PLAINTIFFS are informed and believe and thereon allege that despite DEFENDANT COACHILLIN being expressly obligated by multiple governmental agencies to develop and construct the overall Development and all infrastructure relating thereto in accordance with those specific requirements which are set forth within the above-referenced Development-related permits, plans, orders, agreements, and/or the like, DEFENDANT COACHILLIN has failed and continues to fail to do so.  Moreover, as is also set forth herein, PLAINTIFFS are informed and

believe and thereon allege that DEFENDANTS COACHILLIN, ECOMASTER, and KENNETH have been and continue to unlawfully dispose of and/or otherwise knowingly allow for the unlawful disposal of contaminated cannabis wastewater and used / fertilized cannabis soil by spraying and/or otherwise dumping all such contaminated cannabis waste throughout the Development as well as upon those lands which are adjacent to the Development, all of which is not only extremely detrimental and damaging to the Development as well as the health and safety of those within the Development, but which is also extremely detrimental and harmful to local environmental conditions and can have grave negative consequences for the local community as a whole should such contaminated and unlawfully disposed of cannabis waste infiltrate the local ground water wells and airways.

286.    Additionally, as is also set forth herein, PLAINTIFFS are informed and believe, and thereon allege that DEFENDANT ENERGY has been and continues to operate that Offsite Wastewater Treatment and Disposal System, which is not even properly and/or fully permitted by all necessary governmental agencies, nor is DEFENDANT ENERGY even the "permitted Discharger" to operate said Offsite Wastewater Treatment and Disposal System, and thus, DEFENDANT ENERGY is engaging in unlawful business practices.

287.    By engaging in the acts and practices that are alleged throughout this Complaint, DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, and KENNETH have committed acts of unfair competition, as that term is defined and used in the UCL.

288.    Pursuant to the UCL, PLAINTIFFS are entitled to preliminary and permanent injunctive relief and order against DEFENDANTS COACHILLIN, ECOMASTER, ENERGY, and KENNETH to cause each of them to cease their unlawful acts and practices, as well as any remedies that the Court may find equitable.

///
///
///
///
///

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

**WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS and DOES 1 through 50, jointly and severally, as follows:**

I.      On the First Cause of Action for Breach of Contract Against DEFENDANT COACHILLIN and DOES 1 through 50, inclusive**:**

1.  For compensatory and general damages in an amount according to proof;

2.  For special and consequential damages in an amount according to proof;

3.  For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

4.  For equitable remedies as provided by law;

5.  For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6.  For cost of suit incurred; and

7.  For other and further relief as the Court deems just

II.      On the Second Cause of Action for Breach of CC&Rs Against DEFENDANTS POA, COACHILLIN, KENNETH, WILLIAM, KATHERINE, KIRSTEN, and DOES 1 through 50, inclusive:

1.  For compensatory and general damages in an amount according to proof;

2.  For special and consequential damages in an amount according to proof;

3.  For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

4.  For equitable remedies as provided by law;

5.  For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6.  For cost of suit incurred; and

7.  For other and further relief as the Court deems just

///

///

///

COMPLAINT FOR DAMAGES          Exh. A  Page 135

III.     On the Third Cause of Action for Breach of Fiduciary Duty Against DEFENDANTS POA, KATHERINE, KIRSTEN, and DOES 1 through 50, inclusive:

    1.   For compensatory and general damages in an amount according to proof;

    2.   For special and consequential damages in an amount according to proof;

    3.   For exemplary and punitive damages in an amount according to proof;

    4.   For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

    5.   For equitable remedies as provided by law;

    6.   For cost of suit incurred; and

    7.   For other and further relief as the Court deems just

IV.     On the Fourth Cause of Action for Breach of Fiduciary Duty Against DEFENDANTS KENNETH and DOES 1 through 50, inclusive:

    1.   For compensatory and general damages in an amount according to proof;

    2.   For special and consequential damages in an amount according to proof;

    3.   For exemplary and punitive damages in an amount according to proof;

    4.   For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

    5.   For equitable remedies as provided by law;

    6.   For cost of suit incurred; and

    7.   For other and further relief as the Court deems just

V.     On the Fifth Cause of Action for Fraud – Intentional Misrepresentation against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, inclusive:

    1.   For compensatory and general damages in an amount according to proof;

    2.   For special and consequential damages in an amount according to proof;

    3.   For exemplary and punitive damages in an amount according to proof;

128

4.  For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5.  For equitable remedies as provided by law;

6.  For cost of suit incurred; and

7.  For other and further relief as the Court deems just

VI.  On the Sixth Cause of Action for Negligent Misrepresentation against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, inclusive:

1.  For compensatory and general damages in an amount according to proof;

2.  For special and consequential damages in an amount according to proof;

3.  For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

4.  For equitable remedies as provided by law;

5.  For cost of suit incurred; and

6.  For other and further relief as the Court deems just

VII.  On the Seventh Cause of Action for Fraud – Concealment against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, inclusive:

1.  For compensatory and general damages in an amount according to proof;

2.  For special and consequential damages in an amount according to proof;

3.  For exemplary and punitive damages in an amount according to proof;

4.  For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5.  For equitable remedies as provided by law;

6.  For cost of suit incurred; and

7.  For other and further relief as the Court deems just

129

VIII.   <u>On the Eighth Cause of Action for Violation of Racketeering Influenced and Corruption Organization Act ("RICO") against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and DOES 1 through 50, inclusive:</u>

1.   For compensatory and general damages in an amount according to proof;

2.   For special and consequential damages in an amount according to proof;

3.   For treble damages as provided in 18 U.S.C. §1964(c);

4.   For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5.   For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6.   For cost of suit incurred; and

7.   For other and further relief as the Court deems just

IX.   <u>On the Ninth Cause of Action for Conspiracy to Violate RICO against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, MICHAEL, and DOES 1 through 50, inclusive:</u>

1.   For compensatory and general damages in an amount according to proof;

2.   For special and consequential damages in an amount according to proof;

3.   For treble damages as provided in 18 U.S.C. §1964(c);

4.   For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5.   For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6.   For cost of suit incurred; and

7.   For other and further relief as the Court deems just

X.   <u>On the Tenth Cause of Action for Trespass against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, RICKY, and DOES 1 through 50, inclusive:</u>

1.   For compensatory and general damages in an amount according to proof;

130

2. For exemplary and punitive damages in an amount according to proof;

3. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof

4. For equitable remedies as provided by law;

5. For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6. For cost of suit incurred; and

7. For other and further relief as the Court deems just

XI. <u>On the Eleventh Cause of Action for Private Nuisance against DEFENDANTS COACHILLIN, ENERGY, ECOMASTER, KENNETH, RICKY, and DOES 1 through 50, inclusive:</u>

1. For compensatory and general damages in an amount according to proof;

2. For exemplary and punitive damages in an amount according to proof;

3. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof

4. For equitable remedies as provided by law;

5. For Attorneys' fees and costs incurred in this suit, to the extent provided by law;

6. For cost of suit incurred; and

7. For other and further relief as the Court deems just

XII. <u>On the Twelfth Cause of Action for Real Estate Seller's Nondisclosure of Material Facts against DEFENDANTS COACHILLIN, KENNETH, KATHERINE, WILLIAM, MICHAEL, and DOES 1 through 50, inclusive:</u>

1. For compensatory and general damages in an amount according to proof;

2. For special and consequential damages in an amount according to proof;

3. For exemplary and punitive damages in an amount according to proof;

4. For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

131

1       5.   For equitable remedies as provided by law;

2       6.   For cost of suit incurred; and

3       7.   For other and further relief as the Court deems just

5   XIII.   <u>On the Thirteenth Cause of Action for Declaratory Relief Against DEFENDANTS</u>

6      <u>COACHILLIN, POA, KENNETH, WILLIAM, KIRSTEN, KATHERINE, and DOES</u>

7      <u>1 through 50, inclusive:</u>

8       1.   For injunctive relief and judicial declaration by the Court;

9       2.   For equitable remedies as provided by law;

10      3.   For costs of suit incurred; and

11      4.   For other and further relief as the Court deems just

13   XIV.   <u>On the Fourteenth Cause of Action for Unlawful and Unfair Business Acts and</u>

14      <u>Practices CA Bus. & Prof. Code §17200, *et seq.* against DEFENDANTS</u>

15      <u>COACHILLIN, ECOMASTER, ENERGY, KENNETH and DOES 1 through 50,</u>

16      <u>inclusive:</u>

17       1.   For equitable remedies as provided by law;

18      2.   For cost of suit incurred; and

19      3.   For other and further relief as the Court deems just

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

COMPLAINT FOR DAMAGES      Exh. A  Page 140

1

## DEMAND FOR JURY TRIAL

2

PLAINTIFFS each hereby demand trial by jury on all matters and issues triable by jury.

3

4
Dated:   March 25, 2022

THE HAKALA LAW GROUP, P.C.
BRAD A. HAKALA

5

6

7

8
Brad A. Hakala

9
Ryan N. Ostrowski
Attorneys for Plaintiffs

10
HAPPY HOURS, LLC; DHS LOT 11
HOLDINGS, LLC; and MOON LEV
INVESTMENTS, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

133

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Brad A. Hakala | SBN: 236709<br>The Hakala Law Group, P.C.<br>1 World Trade Center Ste 1870   Long Beach, CA 926182933<br><br>TELEPHONE NO.: (562) 432-5023 | FAX NO. | E-MAIL ADDRESS *(Optional)*: bhakala@hakala-law.com<br>ATTORNEY FOR *(Name)*: Plaintiffs: Happy Hours, LLC; et al. | *FOR COURT USE ONLY* |
|---|---|

| **Riverside County Superior Court** |
|---|
| STREET ADDRESS: 3255 E Tahquitz Canyon Way |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Palm Springs, CA 92262 |
| BRANCH NAME: Palm Springs |

| PLAINTIFF: Happy Hours, LLC; et al. | CASE NUMBER: |
|---|---|
| DEFENDANT: Coachillin Holdings, LLC; et al. | CVPS2201196 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Coachillin Holdings, LLC |
|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   - a. ☑ Summons
   - b. ☑ Complaint
   - c. ☑ Alternative Dispute Resolution (ADR) package
   - d. ☐ Civil Case Cover Sheet  *(served in complex cases only)*
   - e. ☐ Cross-complaint
   - f. ☑ other *(specify documents)*: **Civil Case Cover Sheet; Certificate Of Counsel; Notice of Case Management Conference; Certificate of Mailing; Notice of Department Assignment**
3. a. Party served *(specify name of party as shown on documents served)*:
   **Coachillin Holdings, LLC, a California Limited Liability Company**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   **Kenneth Dickerson  - CEO**

   | **Age: 58 yrs** | **Weight: 195 lbs** | **Hair: Blonde/Silver** | **Sex: Male** |
   |---|---|---|---|
   | **Height: 6'0"** | **Eyes:** | **Race: African American** | |

4. Address where the party was served:   **71713 Hwy 111, Suite 103**
   **Rancho Mirage, CA 92270**

5. I served the party *(check proper box)*
   - a. ☑ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **4/25/2022**   (2) at *(time)*: **3:30 PM**

   - b. ☐ **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:
     - (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.
     - (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
     - (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.
     - (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date)*: from *(city)*: **or** ☐ a declaration of mailing is attached.
     - (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>**POS010-1/274171** |
|---|---|---|

Exh. A  Page 142

PETITIONER: Happy Hours, LLC; et al.

RESPONDENT: Coachillin Holdings, LLC; et al.

CVPS2201196

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*                                                        (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **Coachillin Holdings, LLC, a California Limited Liability Company**

under the following Code of Civil Procedure section:

☐ 416.10 (corporation)              ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)
☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                                    ☑ other: **LLC**

7. **Person who served papers**

a. Name: **Lyndsey Warn - DDS Legal Support**

b. Address: **2900 Bristol Street  Costa Mesa, CA 92626**

c. Telephone number: **(714) 662-5555**

d. **The fee** for service was: **$ 114.35**

e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☑ registered California process server:

(i) ☐ owner  ☐ employee  ☑ independent contractor.

(ii) Registration No.: **1975**

(iii) County: **Riverside**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **4/27/2022**

**DDS Legal Support**
**2900 Bristol Street**
**Costa Mesa, CA 92626**
**(714) 662-5555**
**www.ddslegal.com**

*L. Warn*

_____
**Lyndsey Warn**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶